Daniel E. Garrison (Bar No. 021495)
Jessica Kenney Bonteque  (Bar No. 026615)
**ANDANTE LAW GROUP, PLLC**
Scottsdale Financial Center I
4110 North Scottsdale Road, Suite 330
Scottsdale, AZ  85251
Phone: (480) 421-9449
Fax: (480) 522-1515
Email: dan@andantelaw.com
Email: jessica@andantelaw.com
*Attorneys for Gilbert Hospital, LLC*

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **In Re:** | **Chapter 11** |
| **FLORENCE HOSPITAL AT ANTHEM, LLC,** | **Case No.: 4:13-bk-03201-BMW** |
| Debtor. | **Jointly Administered for the limited purpose of plan confirmation and related proceedings with:** |
| **In Re:** | |
| **GILBERT HOSPITAL, LLC,** | **Case No.:2:14-bk-01451-MCW** |
| Debtor. | **NOTICE OF FILING PLAN** |
| **This filing applies to:**[1] | |
| ☐ **Gilbert Hospital, LLC** | |
| ■ **Florence Hospital at Anthem, LLC** | |
| ☐ **All Debtors** | |

NOTICE IS HEREBY GIVEN that the "Second Amended and Restated Joint Plan of Reorganization for Gilbert Hospital, LLC and Florence Hospital at Anthem, LLC Proposed by Gilbert Hospital, LLC and Bank SNB Dated May 4, 2015 (As Amended and Restated on June 25, 2015, July 17, 2015, August 2, 2015, and August 18, 2015)" ("Plan") is attached hereto as **Exhibit "A"**.  Copies of this Plan were included in the solicitation packets approved in this matter as

---

[1] All papers filed during the pendency of the joint administration that do not relate to confirmation of the Joint Plan should be filed in the respective Debtor's case, which should be notated by selecting the box that indicates the relevant debtor in the caption of the filed document.

described in detail at docket entry 1093.

DATED October 7, 2015.

**ANDANTE LAW GROUP, PLLC**

By: */s/ Jessica Kenney Bonteque*
         Daniel E. Garrison
         Jessica Kenney Bonteque
         *Attorneys for Gilbert Hospital, LLC*

This is to certify that the foregoing was e-filed on October 7 2015 in the United States Bankruptcy Court, and **COPIES** served the same day via ECF Notice.

By: */s/ Kara Gibson Schrader*

Daniel E. Garrison (Bar No. 021495)
Jessica Kenney Bonteque (Bar No. 026615)
**ANDANTE LAW GROUP, PLLC**
Scottsdale Financial Center I
4110 North Scottsdale Road, Suite 330
Scottsdale, AZ 85251
Telephone: (480) 421-9449
Email: dan@andantelaw.com
Email: jessica@andantelaw.com
*Attorneys for Gilbert Hospital, LLC*

Bryce A. Suzuki, Esq. (Bar No. 022721)
Kyle S. Hirsch, Esq. (Bar No. 024155)
**BRYAN CAVE LLP**
Two North Central Avenue, Suite 2200
Phoenix, Arizona 85004-4406
Telephone: (602) 364-7000
Email: bryce.suzuki@bryancave.com
Email: kyle.hirsch@bryancave.com
*Attorneys for Bank SNB an Oklahoma state
banking corporation, successor by conversion
to Bank SNB, National Association, formerly
known as Stillwater National Bank and Trust*

## IN THE UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re: | Chapter 11 |
| **FLORENCE HOSPITAL AT ANTHEM, LLC,** | Case No.: **4:13-bk-03201-BMW** |
| **Debtor.** | |

## SECOND AMENDED AND RESTATED JOINT PLAN OF REORGANIZATION FOR GILBERT HOSPITAL, LLC AND FLORENCE HOSPITAL AT ANTHEM, LLC PROPOSED BY GILBERT HOSPITAL, LLC AND BANK SNB DATED MAY 4, 2015 (AS AMENDED AND RESTATED ON JUNE 25, 2015, JULY 17, 2015, AUGUST 2, 2015, AND AUGUST 18, 2015)

| TABLE OF CONTENTS | |
|---|---|
| I.  Introduction | 5 |
|   A.  Plan Proponents | 5 |
|   B.  Summary of Plan | 5 |
| II.  Special Terms and Names | 7 |
|   A.  Defined Terms | 7 |
| III.  Classification of Claims and Interests | 20 |
|   A.  Priority Claims (Class 1—but not formally classified) | 20 |
|     1.  Class 1.1—Administrative Claims | 20 |
|     2.  Class 1.2—Wage Claims | 20 |
|     3.  Class 1.3—Plan Benefit Claims | 20 |
|     4.  Class 1.4—Priority Tax Claims | 20 |
|   B.  Secured Claims (Class 2) | 20 |
|     1.  Class 2.1.FHA—FHA Bank SNB Debt and LOC Claim | 20 |
|     2.  Class 2.2.GH—GH Bank SNB Claim | 21 |
|     3.  Class 2.3.FHA—FHA Pinal County, Arizona Claim | 21 |
|     4.  Class 2.4.GH—GH Maricopa County, Arizona Claim | 21 |
|     5.  Class 2.5.FHA—FHA Covidien-Mallinckrodt Claim | 21 |
|     6.  Class 2.6.FHA—FHA Johns Claim | 21 |
|     7.  Class 2.7.GH—GH Iron Mountain Claim | 21 |
|     8.  Class 2.8.GH—GH Secured 409A Participants | 21 |
|   C.  General Unsecured Claims (Class 3) | 21 |
|     1.  Class 3.1.FHA—Unsecured Claims against FHA | 21 |
|     2.  Class 3.2.GH—Unsecured Claims against GH | 21 |
|   D.  Membership Interests (Class 4) | 21 |
|     1.  Class 4.1.FHA—Membership Interests to FHA | 21 |
|     2.  Class 4.2.GH—Membership Interests in GH | 21 |
| IV.  Treatment of Classified Claims and Interests | 21 |
|   A.  Priority Claims (Class 1—but not formally classified) | 22 |
|     1.  Class 1.1—Administrative Claims | 22 |
|     2.  Class 1.2—Wage Claims | 23 |
|     3.  Class 1.3—Plan Benefit Claims | 24 |
|     4.  Class 1.4—Priority Tax Claims | 25 |
|   B.  Secured Claims | 26 |
|     1.  Class 2.1.FHA—FHA Bank SNB Debt and LOC Claim | 26 |
|     2.  Class 2.2.GH—GH Bank SNB Claim | 29 |
|     3.  Class 2.3.FHA—FHA Pinal County, Arizona Claim | 30 |
|     4.  Class 2.4.GH—GH Maricopa County, Arizona Claim | 31 |
|     5.  Class 2.5.FHA—FHA Covidien-Mallinckrodt Claim | 31 |
|     6.  Class 2.6.FHA—FHA Johns Claim | 31 |
|     7.  Class 2.7.GH—GH Iron Mountain Claim | 31 |
|     8.  Class 2.8.GH—GH Secured 409A Participants | 32 |
|   C.  General Unsecured Claims (Class 3) | 32 |
|     1.  Class 3.1.FHA—General Unsecured Claims against FHA | 34 |
|     2.  Class 3.2.GH—General Unsecured Claims against GH | 37 |
|   D.  Equity Interest (Class 4) | 41 |

| | |
|---|---|
| 1. Class 4.1.FHA—Membership Interests in FHA | 41 |
| 2. Class 4.2.GH—Membership Interests in GH | 41 |
| V. Implementation of the Amended Joint Plan | 42 |
| A. Restructuring of FHA and GH | 42 |
| 1. Creation of Holding Company | 42 |
| 2. Corporate Governance | 42 |
| 3. Reorganized Debtors' Management | 42 |
| 4. Cancellation of Existing Membership Interests and Issuance of New Membership Interests | 43 |
| 5. Senior Management Equity Pool and Employment Contracts | 43 |
| 6. Tax Distributions | 44 |
| B. Impact of the Settlement of the GH Lawsuits | 44 |
| C. Interdebtor Claims | 44 |
| D. Operation of Holdco and the Reorganized Debtors During the Term of the Amended Joint Plan | 45 |
| 1. Operation of the Business of the Reorganized Debtors | 45 |
| 2. Maintenance of Separate Financial Statements | 45 |
| 3. Accountability Provisions | 45 |
| 4. Establishment, Maintenance, and Increase of Reserves | 45 |
| E. Settlement and Compromise of GH Claims against Bank SNB and Consolidation and Restructuring of Bank SNB Claims | 46 |
| 1. Resolution of GH/Bank SNB Disputes | 46 |
| 2. New Revolving Line of Credit | 48 |
| 3. Pre-Payment Option | 48 |
| F. Funding for the Amended Joint Plan | 48 |
| 1. Operational Cash Flows and Distributable Cash | 48 |
| 2. Swept Funds | 48 |
| 3. Net Assets of the GH 409A Plans | 49 |
| 4. New Value Election | 49 |
| 5. Distributable Real Estate Proceeds | 49 |
| 6. Distributable Net Refinancing Proceeds | 50 |
| 7. Enterprise Liquidation Proceeds | 50 |
| G. Establishment of the FHA Liquidating Trust | 50 |
| H. Establishment of GH USC Trust | 52 |
| I. Consummation of the Amended Joint Plan | 53 |
| VI. Claims | 53 |
| A. Objections and Deadlines | 53 |
| B. Settlement of Claims | 53 |
| C. Calculation and Payment of Pro Rata Distributions | 54 |
| D. Penalties and Fines | 54 |
| E. Leases and Executory Contracts | 54 |
| VII. Other Provisions | 55 |
| A. Conditions Precedent to Effective Date | 55 |
| B. Retention of Jurisdiction | 55 |
| 1. Claims Determination | 56 |
| 2. Estate Assets | 56 |

| | |
|---|---|
| 3.   Executory Contracts | 57 |
| 4.   Unliquidated Claims | 57 |
| 5.   Plan Corrections | 57 |
| 6.   Plan Modifications | 57 |
| 7.   Adversary Proceedings | 57 |
| 8.   Plan Interpretation | 57 |
| 9.   Deadlines | 57 |
| 10. Enforcement of Discharge; Other Injunctive Relief | 57 |
| 11. Additional Matters | 58 |
| 12. Case Closing | 58 |
| C.  Modification of the Plan | 58 |
| D.  Conditions to Confirmation and Occurrence of the Effective Date | 58 |
| 1.   Confirmation | 58 |
| 2.   Effective Date | 58 |
| E.  Effect of Confirmation | 58 |
| 1.   Discharge of Claims | 58 |
| 2.   Vesting of Assets in the Reorganized Debtors | 59 |
| 3.   Plan-Based Injunction | 59 |
| 4.   Exculpation of Plan Proponents and Others | 59 |
| F.  Releases | 59 |
| 1.   Debtors' Release of Bank SNB | 59 |
| 2.   Bank SNB's Release of Debtors | 59 |
| G.  Administrative Claims Bar Date | 60 |
| H.  Miscellaneous | 60 |
| 1.   Time of the Essence | 60 |
| 2.   Headings | 60 |
| 3.   Exemption from Transfer Taxes | 60 |
| 4.   Notices | 60 |
| 5.   Confirmation without Acceptance of all Classes | 61 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I. INTRODUCTION

The following introduction presents a summary of the significant provisions and intent of this Amended Joint Plan. It is intended as a summary only, and is not intended nor shall it be construed to affect the interpretation or effect of the operative provisions of the Amended Joint Plan. Accordingly, interested parties are strongly encouraged to read the Amended Joint Plan and its accompanying Amended Joint DS, including all exhibits, in their entirety. Many capitalized terms are defined in section II of this Amended Joint Plan.

This Amended Joint Plan is filed in both the FHA Bankruptcy and the GH Bankruptcy and will restructure both entities.

### A. Plan Proponents

The proponents of the Amended Joint Plan are Gilbert Hospital, LLC and Bank SNB, an Oklahoma state banking corporation, successor by conversion to Bank SNB, National Association, formerly known as Stillwater National Bank and Trust. In the FHA Bankruptcy, the Plan Proponents are two of FHA's largest creditors. FHA no longer has the exclusive right to file a plan in the FHA Bankruptcy, and therefore, the Amended Joint Plan will proceed as a creditors' plan in that case.

In the GH Bankruptcy, GH is the debtor and debtor-in-possession and filed its plan during the exclusive period to a file a plan as extended by the Court, and maintains the exclusive right to solicit acceptances of a plan of reorganization until October 2, 2015.

### B. Summary of Plan

By this Amended Joint Plan, GH and Bank SNB propose: 1) to create a new holding company structure to own GH, with the current members of GH receiving membership interests in the new holding company; 2) to acquire ownership of FHA through the new holding company, cancelling its existing membership interests; 3) to fund a full recovery to the holders of administrative claims and unsecured claims against FHA, waiving GH's right to participate in either recovery and resolving all inter-debtor claims; 4) to resolve certain claims that GH believes exist against its senior, secured lender, Bank SNB, and in connection with the resolution of such claims, to restructure the direct indebtedness that it owes Bank SNB and GH's guaranty of the debt that FHA owes to Bank SNB; 5) to commit a substantial portion of going-forward income to the repayment in full of the allowed unsecured creditors of GH through a creditors' trust; and 6) to provide repayment in full to the allowed unsecured creditors of FHA from the proceeds of a liquidating trust.

As part of this overall restructuring of the bankruptcy estates of FHA and GH, the current members of FHA will be offered the opportunity to subscribe to a portion of the new membership interests to be issued in Reorganized FHA by making a New Value Election, the proceeds of which will be used to help fund this Amended Joint Plan. Finally, the corporate governance structure of the new holding company will be established, resolving a difficult history of conflict over the management of both FHA and GH, and thereby providing a more certain and reliable governance and operational structure for the future performance of this Amended Joint Plan and the Reorganized Debtors.

Funding for the Amended Joint Plan will come from several sources:

- <u>First</u>, the Amended Joint Plan will be funded by excess cash flows from the operation of the hospitals owned by each Debtor. During the pendency of GH's bankruptcy case, it has operated profitably and accumulated significant cash reserves (FHA also has accumulated some cash reserves); and it is anticipated that the joint operations of the Reorganized Debtors will continue to generate excess cash flows that also will be used to fund the Amended Joint Plan.

- <u>Second</u>, the assets of the FHA 409A Plan shall vest in the FHA Liquidating Trust. GH will use a portion of the assets of the GH 409A Trusts to fund the Amended Joint Plan. A portion of the GH 409A Trusts assets will be considered to be held in a constructive trust exclusively for the benefit of the Secured 409A Participants (and their respective beneficiaries), who do not meet the requirements to participate in a "top-hat plan" (as that phrase is used for purposes of 29 CFR §2520.104-23, regarding an alternative method of compliance for pension plans for certain selected employees). Holding a portion of the GH 409A Trusts assets in a constructive trust for the benefit of the Secured 409A Participants (and their respective beneficiaries) is required to comply with certain requirements of the Employee Retirement Income Security Act of 1974, as amended. As a consequence of treating a portion of the assets held by the GH 409A Trusts as held exclusively for the benefit of the Secured 409A Participants and their beneficiaries, only those assets of the GH 409A Trusts remaining after first paying in full the benefits owed to the Secured 409A Participants will be available to pay the claims of general creditors of the respective Debtors, and the remaining participants in these compensation plans will be repaid as unsecured creditors under the Amended Joint Plan.

- <u>Third</u>, pursuant to the overall settlement and restructuring with Bank SNB, GH will have returned to it approximately $1.08 million swept by Bank SNB from the hospital's deposit accounts in the few days preceding GH's filing for Chapter 11 protection, and this returned cash can be used to fund the Amended Joint Plan, subject to the conditions contained in the GH/Bank SNB Compromise.

- <u>Fourth</u>, any proceeds obtained from the New Value Election process for existing members of FHA will be used to fund the Amended Joint Plan.

- <u>Fifth</u>, if necessary, GH will liquidate certain real estate assets that it holds and use the proceeds of such sales to fund the Amended Joint Plan, including the potential sale of certain real property adjacent to Gilbert Hospital that Bank SNB will grant GH an option to purchase at an established price.

- <u>Sixth</u>, it is possible that GH will be able to obtain net proceeds from refinancing its debt to Bank SNB, which must occur no later than the fourth anniversary of the Effective Date of the Amended Joint Plan, and if net proceeds are available, they will be used to fund the Amended Joint Plan.

- <u>Seventh</u>, and finally, it is possible that having restructured the finances of FHA and GH under this Amended Joint Plan, and after the Reorganized Debtors have been operated successfully during the term of this Amended Joint Plan, one or both hospitals could be sold on favorable terms, and the proceeds of such sale(s) would be used to satisfy the balance of claims owed to the creditors of GH and return equity investments to the GH's members, as modified by the Amended Joint Plan.

As set forth in the accompanying Amended Joint DS, GH believes that this Amended Joint Plan is in the best interest of the creditors and interest holders of both GH and FHA. More particularly, GH believes that this Amended Joint Plan represents the best, and perhaps only, opportunity for the creditors of FHA to recover anything of value. GH also believes that if FHA were liquidated, or sold through the pending sale process proposed in the FHA Bankruptcy, the proceeds would be insufficient to satisfy FHA's debt to Bank SNB (potentially leaving little to nothing to pay FHA's unsecured creditors), resulting in Bank SNB's asserting a significant claim under GH's guaranty of that debt. GH believes that incurring that deficiency liability without also acquiring the revenue-generating potential of FHA's operations would threaten the ability of GH's creditors to be repaid in full, let alone in a reasonable period of time. Thus, the Amended Joint Plan presents an opportunity for the creditors of FHA to receive full payment of allowed claims and for willing members of FHA to recover some portion of their investments, and it maximizes GH's ability to pay its creditors in full in as short a time as possible—and also preserve a likely recovery of invested capital to its members.

## II.  SPECIAL TERMS AND NAMES

The Amended Joint Plan, the Amended Joint DS accompanying the Amended Joint Plan, and exhibits to the Amended Joint DS employ certain words and phrases with specific meanings and identify various persons and entities by specific names.

### A.  Defined Terms

The following definitions apply to this Amended Joint Plan, and any other capitalized terms used in this Amended Joint Plan that are not specifically defined herein shall have the meaning ascribed to them in the Bankruptcy Code and Bankruptcy Rules:

**1.** **Adjacent Property**: This term shall mean an approximately 15-acre parcel of real property adjacent to the GH Hospital Property, on which Bank SNB was granted a lien secured by a Deed Of Trust, Assignment Of Rents, Security Agreement, Fixture Filing And Financing Statement, which was recorded in the office of the Maricopa County Recorder at Recording Number 2007-1214970.

**2.** **Administrative Claims Bar Date**: This term shall mean the date for filing administrative claims no later than 30 days following the Effective Date.

**3.** **Administrative Claim**: This term shall mean a Claim(s) for costs and expenses of administration pursuant to Bankruptcy Code §§ 503(b), 507(a)(2), 507(b), or 1114(e)(2), including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the estate and operating the businesses of GH and/or FHA; (b) all fees and charges assessed against the estate of GH and/or FHA pursuant to section 1930 of chapter 123 of Title 28 of the United States Code; (c) all Claims for professional fees and expenses approved by the Bankruptcy Court; (d) any Cure Payment; and (e) all Allowed Claims for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Case pursuant to Bankruptcy Code §§ 503(b)(3), (4), and (5) approved by the Bankruptcy Court.

**4.** **Allowed**: This term shall mean, with respect to a Claim or Interest, that the Claim or Interest has been determined to be, or is expressly declared in this Amended Joint Plan to be, an Allowed Administrative Claim, an Allowed Claim, or an Allowed Interest.

**5.** **Allowed Administrative Claim**: Allowed Administrative Claim shall mean an Administrative Claim:

(a) with respect to which a request for payment or an application for professional compensation has been filed with the Bankruptcy Court within the applicable period of limitation fixed by any Order of the Bankruptcy Court setting a deadline, and to which no objection to the allowance of the Administrative Claim has been filed by a Debtor or any other party or as to which any such objection has been determined by a Final Order, or

(b) for goods or services provided to a Debtor in the ordinary course of business after the FHA Petition Date or the GH Petition Date, as applicable, and on or prior to the Effective Date; *provided, however*, that nothing in this Amended Joint Plan shall deprive the Debtors or the Reorganized Debtors of the benefits of any defense to payment of such an Administrative Claim under any agreement governing, instrument evidencing, or other document relating to an Allowed Administrative Claim or under applicable non-bankruptcy law.

**6.** **Allowed Claim**: Allowed Claim shall mean a Claim:

(a) with respect to which a proof of claim has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3003 or by any Order of the Bankruptcy Court setting a bar date, and to which no objection to the allowance of the Claim has been filed by a Debtor or any other party or as to which any such objection has been determined by a Final Order, or

(b) which is scheduled in the FHA Schedules or the GH Schedules, as applicable, and not listed as disputed, contingent or unliquidated.

An Allowed Claim shall not include unmatured or post-petition interest, penalties, fees or costs, unless specifically stated in the Amended Joint Plan. A Claim shall be Allowed only for the amount of money or money's worth actually paid or provided to a Debtor, plus any interest allowed by the Bankruptcy Court or agreed upon by the Debtor. Notwithstanding § 502(a) of the Bankruptcy Code and Bankruptcy Rules 3001 and 3003, for the purposes of the Amended Joint Plan, a Claim shall not be an Allowed Claim unless it satisfies the definition of Allowed Claim under this Amended Joint Plan.

**7.** **Allowed Interest**: An Interest in a Debtor held by a Person, as of the Effective Date, and as to which (a) such Interest was listed in the FHA Schedules or the GH Schedules, as applicable, and no objection has been made within the time allowed for the making of objections, (b) a Final Order has been entered allowing such Interest, or (c) a timely and proper proof of interest has been filed, and as to which no objection to the allowance of the Interest has been filed by the Debtor or any other party, or as to which any such objection has been determined by a Final Order.

**8.** **Amended Joint DS**: The Amended Joint Disclosure Statement relating to this Amended Joint Plan, and any amendments and supplements thereto as approved by an order of the Bankruptcy Court.

**9.**     **Amended Joint Plan**: This Second Amended Joint Plan of Reorganization Dated May 4, 2015 as further amended and restated June 25, 2015, further amended and restated July 17, 2015 and further amended and restated on August 2, 2015, and further amended and restated on August 18, 2015, any further amendments or supplements thereto.

**10.**     **Bankruptcy Code**: 11 U.S.C. §§ 101, *et seq*.

**11.**     **Bankruptcy Court**: The United States Bankruptcy Court for the District of Arizona or any other court which may have jurisdiction over this case or any proceeding arising under, in, or relating to this case.

**12.**     **Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure in effect as of the Petition Date.

**13.**     **Bank Released Parties**:  This term has the meaning given to it in section VII.F.1 below.

**14.**     **Bank SNB**: This term shall mean Bank SNB, an Oklahoma state banking corporation, successor by conversion to Bank SNB, National Association, formerly known as Stillwater National Bank and Trust Company.

**15.**     **Chapter 11**: Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101, *et seq*.

**16.**     **Claim**: (a) A right to payment, whether or not such right is reduced to judgment, liquidated, un-liquidated, fixed, contingent, matured, un-matured, disputed, undisputed, legal, equitable, secured or unsecured, which right arose or accrued prior to the Confirmation Date; (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, un-matured, disputed, undisputed, secured, or unsecured, where such right arose or accrued prior to Confirmation; or (c) a right to payment arising under 11 U.S.C. § 502(g).

**17.**     **Claimant or Creditor**: Any person or entity that asserts a Claim.

**18.**     **Confirmation**: The signing by the Court of the Confirmation Order.

**19.**     **Confirmation Date**: The date upon which the Confirmation Order is entered upon the Bankruptcy Court's docket.

**20.**     **Confirmation Order**: The Order signed by the Bankruptcy Court pursuant to 11 U.S.C. § 1129 confirming this Amended Joint Plan.

**21.**     **Contingent Claim**: Any Claim for which a proof of claim has been filed with the Bankruptcy Court: (a) which was not filed in a sum certain, or which has not accrued and is dependent on a future event that has not occurred and may never occur, and (b) which has not been allowed on or before the Confirmation Date.

**22.**     **Contracts**: This term has the meaning given to it in section VI.E below.

23. **Court**: The Bankruptcy Court.

24. **Covidien**: Covidien-Mallinckrodt, a secured creditor of FHA.

25. **Covidien Collateral**: That certain Optivantage Injector complete start-up kit with all accessories, serial no. CI1211B535.

26. **Cure Payment**: This term shall mean any payment required under 11 U.S.C. § 365 to assume an executory contact or unexpired lease.

27. **Debtor or Debtors**: Refers, individually or collectively, to GH and/or FHA.

28. **Debtor Released Parties**: This term has the meaning given to it in section VII.F.2 below.

29. **Disputed Claim**: A Claim that the Debtor listed as unliquidated, disputed, or contingent in the FHA Schedules or the GH Schedules, as applicable, or to which an objection has been filed which has not been resolved by a Final Order.

30. **Dismissal Order**: This term shall mean the final non-appealable order entered dismissing the Investor Lawsuit with prejudice.

31. **Distributions**: This term shall mean any and all payments under the terms of the Amended Joint Plan.

32. **Distributable Cash**: This term has the meaning given to it in section V.F below.

33. **Distributable Enterprise Liquidation Proceeds**: This term has the meaning given to it in section V.F below.

34. **Distributable Net Refinancing Proceeds**: This term has the meaning given to it in section V.F below.

35. **Distributable Real Estate Proceeds**: This term has the meaning given to it in section V.F below.

36. **Distributable Proceeds of GH Retained Causes of Action**: This term has the meaning given to it in section V.F below.

37. **Dr. Johns**: This term shall mean Dr. Timothy Johns, the founder of both GH and FHA.

**38.** **Effective Date**: The date upon which the conditions to declaration of the Effective Date listed in sections VII.A & D below, have been met or waived listed no later than seven (7) calendar days following the date that orders in both the FHA Bankruptcy and the GH Bankruptcy confirming the Amended Joint Plan becomes final and non-appealable. If the Effective Date is not declared on or prior to seven (7) calendar days following the date that orders in both the FHA Bankruptcy and the GH Bankruptcy confirming the Amended Joint Plan becomes final and non-appealable it will be a technical default of the Amended Joint Plan.

**39.** **Effective Date Reserve**: This term has the meaning given to it in section V.D.4.a below.

**40.** **Effective Date Contract Notice**: This term has the meaning given to it in section VI.E below.

**41.** **Enterprise Liquidation Proceeds**: This term has the meaning given to it in section V.F below.

**42.** **Excluded Assets**: This term shall mean any asset of FHA or the FHA Estate that GH, at its election and in its sole discretion, shall identify prior to Confirmation of this Amended Joint Plan that it wishes to vest by operation of the Confirmation Order in the FHA Liquidating Trust instead of in Reorganized FHA.

**43.** **Exculpated Parties**: This term has the meaning given to it in section VII.E.4 below.

**44.** **FHA**: Florence Hospital at Anthem, LLC, an Arizona limited liability company.

**45.** **FHA 409A Claim**: This term shall mean a Claim for benefits under the FHA 409A Plan that arises from a qualifying event occurring after the FHA Petition Date.

**46.** **FHA 409A Plan**: This term shall mean the deferred compensation plan sponsored by FHA under Section 409A of the Internal Revenue Code of 1986, as amended.

**47.** **FHA 409A Plan Proceeds**: This term shall mean the cash value of the assets set aside to fund the benefits payable under the FHA 409A Plan.

**48.** **FHA Bankruptcy**: This term shall mean the bankruptcy case filed by FHA in the Bankruptcy Court and assigned Case No. 4:13-bk-03201-BMW.

**49.** **FHA Beneficiaries**: This term shall mean any and all beneficiaries under the FHA Trust Agreement.

**50.** **FHA Committee**: The Official Committee of Unsecured Creditors formed in the FHA Bankruptcy.

**51.** **FHA DE**: This term refers to an entry on the docket of the FHA Bankruptcy.

**52.** **FHA Estate**: The FHA bankruptcy estate created by the filing of the FHA Petition as identified and described in § 541 of the Bankruptcy Code.

**53. FHA Guarantors**: This term shall mean all individuals or entities, except GH, that have guarantied any debt owed to Bank SNB by FHA.

**54. FHA Healthcare Claims**: This term shall mean any Claim to reimbursement for health benefits approved by the FHA TPA.

**55. FHA Hospital**: The 36-bed, 96,000 square-foot general acute hospital located at 4545 North Hunt Highway in Florence, Arizona.

**56. FHA Hospital Property**: This term shall mean the hospital facility located at 4545 North Hunt Highway in Florence, Arizona.

**57. FHA Liquidating Trust**: This term shall mean the trust instrument created by Holdco to hold the FHA Trust Assets for the benefit of the FHA Beneficiaries.

**58. FHA Liquidating Trustee**: This term shall mean the trustee of the FHA Liquidating Trust. The FHA Liquidating Trustee as of the Effective Date shall be identified in the Plan Supplement.

**59. FHA MPT**: This term shall mean MPT of Florence, LLC, the counterparty to the MPT FHA Lease.

**60. FHA Petition**: The original voluntary petition for relief filed by the Debtor under Chapter 11.

**61. FHA Petition Date**: The date on which the FHA Petition was filed: March 6, 2013.

**62. FHA Professionals**: The term FHA Professionals shall refer to FHA's attorneys, accountants, ombudsmen, or other professionals approved by the Bankruptcy Court pursuant to §§ 327 through 333 of the Bankruptcy Code.

**63. FHA PTO Claims**: This term shall mean any Claims for paid time off benefits by either current or former GH employees.

**64. FHA Retained Causes of Action**: This term shall mean any claim, cause of action or right in action, chose in action or suit, the essential elements of which occurred, arose, or accrued prior to the FHA Petition Date in favor of FHA, and any claim, cause of action or right in action, chose in action or suit, that was created under the terms of the Bankruptcy Code, in favor of FHA, including but not limited to avoidance actions, preference claims, and fraudulent conveyance claims, with the exception of any cause of action FHA may have against GH or Bank SNB.

**65. FHA Schedules or Schedules and Statements**: The Schedules of Assets and Liabilities and Statement of Financial Affairs, and any amendments thereto, filed by FHA in the FHA Bankruptcy.

**66. FHA SNB Debt**: This term shall mean the Claims held by Bank SNB directly against FHA, excluding the LOC Claim.

**67.**     **FHA Third Party Guaranty Claim**:  This term shall mean any Claim timely filed in the FHA Bankruptcy by a third-party guarantor asserting a right to payment arising from a guaranty of any debt owed by FHA to Bank SNB.

**68.**     **FHA Trust Agreement**: This term shall mean the trust instrument that creates the FHA Liquidating Trust.

**69.**     **FHA Trust Assets**: This term shall mean the following assets that will vest in the FHA Liquidating Trust: 1) the FHA Claim Fund, 2) the proceeds of any Excluded Assets, 3) the proceeds of any FHA Retained Causes of Action, and 4) the FHA 409A Proceeds.

**70.**     **FHA TPA**: This term shall mean the third-party administrator hired to administer FHA's self-funded healthcare benefits program.

**71.**     **FHA Claim Fund**: This term shall mean the $1,000,000 in cash to be paid by GH to the FHA Liquidating Trust on the Effective Date for the benefit of the FHA Beneficiaries.

**72.**     **Final Order**: An order or judgment of the Bankruptcy Court as to which the time to appeal, petition for *certiorari*, or move for reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have expired or been waived in writing in form and substance satisfactory to the applicable Debtor or Reorganized Debtor or, in the event that an appeal, writ of *certiorari*, or reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or *certiorari*, reargument, or rehearing shall have been denied and the time to take any further appeal, petition for *certiorari,* or move for reargument or rehearing shall have expired; *provided, however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous Bankruptcy Rules, may be filed with respect to such order or judgment shall not cause such order not to be a Final Order.

**73.**     **Final Settlement Term Sheet**: This term shall mean the final executed settlement term sheet containing the terms of the Investor Settlement.

**74.**     **Foreclosure Dispute**: This term shall mean the dispute between GH and Bank SNB regarding the validity of the pre-GH Petition Date foreclosure of the deed of trust secured by the Adjacent Property.

**75.**     **General Unsecured Claim**: Any Claim that is not a Secured Claim, Administrative Claim, or Priority Claim.

**76.**     **GEMS**:  Gilbert Emergency Medicine Specialist, LLC, an Arizona limited liability company.

**77.**     **GH**: Gilbert Hospital, LLC, an Arizona limited liability company.

**78.**     **GH-41**: This term shall mean GH-41, LLC, a wholly-owned subsidiary of GH.

**79.** **GH 409A Claim**: This term shall mean a Claim for benefits under either of the GH 409A Plans that arises from a qualifying event occurring after the GH Petition Date.

**80.** **GH 409A Plans**: This term shall mean the two deferred compensation plans sponsored by GH under Section 409(a) of the Internal Revenue Code of 1986, as amended.

**81.** **GH 409A Proceeds**: This term shall mean the cash value of the assets held in the GH 409A Trusts.

**82.** **GH 409A Trusts**: This term means the grantor trusts established in connection with sponsorship of the GH 409A Plans.

**83.** **GH Bankruptcy**: This term shall mean the bankruptcy case filed by GH in the Bankruptcy Court and assigned Case No. 4:14-bk-01451-MCW.

**84.** **GH Committee**: The Official Committee of Unsecured Creditors formed in the GH case.

**85.** **GH DE**: This term shall refer to an entry on the docket of the GH Bankruptcy.

**86.** **GH Direct Indebtedness**: This term shall mean the Claim held by Bank SNB against GH, excluding the GH Guaranty.

**87.** **GH Estate**: The GH bankruptcy estate created by the filing of the GH Petition as identified and described in § 541 of the Bankruptcy Code.

**88.** **GH Guarantors**: This term shall mean all individuals or entities that have guarantied any debt owed to Bank SNB by GH.

**89.** **GH Guaranty**: This term shall mean the Claim held by Bank SNB against GH arising from GH's guaranty of the FHA SNB Debt.

**90.** **GH Healthcare Claims**: This term shall mean any Claim to reimbursement for healthcare benefits approved by the GH TPA.

**91.** **GH Hospital**: This term shall mean the 19-bed general acute hospital located at 5656 South Power Road, Gilbert, Arizona 85295.

**92.** **GH Hospital Property**: This term shall mean the hospital facility located at 5656 South Power Road, Gilbert, Arizona 85295.

**93.** **GH MPT**: This term shall mean MPT of Gilbert, LLC, the counterparty to the MPT GH Lease.

**94.** **GH Petition**: The original voluntary petition for relief filed by the Debtor under Chapter 11.

**95.** **GH Petition Date**: The date on which the GH Petition was filed: February 5, 2014.

**96.    GH Professionals**: The term GH Professionals shall refer to GH's attorneys, accountants, ombudsmen, or other professionals approved by the Bankruptcy Court pursuant to §§ 327 through 333 of the Bankruptcy Code.

**97.    GH PTO Claims**: This term shall mean any Claims for paid time off benefits by either current or former GH employees.

**98.    GH Retained Causes of Action**: This term shall mean any claim, cause of action or right in action, chose in action or suit, the essential elements of which occurred, arose, of accrued prior to the GH Petition Date in favor of GH, including but not limited to such claims, causes of action or right in action, chose in action or suit arising, created or existing under any federal or state law or statute, and any claim, cause of action or right in action, chose in action or suit, that was created under the terms of the Bankruptcy Code, in favor of GH, including but not limited to the claims for turnover of property, avoidance actions, preference claims, causes of action under Section 544, and fraudulent conveyance claims, with the exception of any cause of action GH may have against Bank SNB and excluding GH's ability to retain all rights and claims (and any proceeds thereof) held by it pursuant to the Investor Settlement.

**99.    GH Schedules or Schedules and Statements**: The Schedules of Assets and Liabilities and Statement of Financial Affairs, and any amendments thereto, filed by GH in the GH Bankruptcy.

**100.    GH/Bank SNB Compromise**: This term shall mean the agreed resolution of the Plan Proponents of the GH/Bank SNB Disputes, as described in section V.E below.

**101.    GH/Bank SNB Disputes**: This term shall mean the three (3) areas of dispute that GH and Bank SNB identified during the GH Bankruptcy: 1) the Guaranty Disputes; 2) the Foreclosure Dispute; and 3) the Sweep Dispute.

**102.    GH Third Party Guaranty Claim**: This term shall mean any Claim timely filed in the GH Bankruptcy by a third-party guarantor asserting a right to payment arising from a guaranty of any debt owed by FHA or GH to Bank SNB.

**103.    GH TPA**: This term shall mean the third-party administrator hired to administer GH's self-funded healthcare benefits program.

**104.    GH USC Lien**: This term has the meaning given to it in section IV.C.2 below.

**105.    GH USC Trust**: This term shall mean the liquidating trust established on the Effective Date for the benefit of the holders of Allowed General Unsecured Creditors of GH.

**106.    GH USC Trustee**: This term shall mean the trustee of the GH USC Trust. The GH USC Trustee as of the Effective Date shall be identified in the Plan Supplement.

**107.    GH USC Trust Advisory Board**: This term shall mean the three-person advisory board to the GH USC Trustee. The individuals comprising the GH USC Trust Advisory Board as of the Effective Date shall be identified in the Plan Supplement.

**108.	GH USC Trust Agreement**: This term shall mean the trust instrument that creates the GH USC Trust.

**109.	Investor Settlement**: This term shall mean the settlement reached of all claims in the Investor Lawsuit and the Wagner Lawsuit.

**110.	Guaranty Disputes**: This term shall mean the claims asserted by GH pursuant to 11 U.S.C. §§ 544 and 548 that the GH Guaranty, in whole or part, may be avoidable as a fraudulent transfer. GH further asserts that the GH Guaranty may be unsecured in nature. Bank SNB disagrees.

**111.	Holdco**: This term shall mean an Arizona limited liability company created through this Amended Joint Plan, the initial assets of which shall be 100% of the newly issued membership interests in Reorganized GH and no less than 90% of the newly issued membership interests in Reorganized FHA.

**112.	Insider**: A Person within the definition contained at § 101(31) of the Bankruptcy Code.

**113.	Interest**: Any equity interest in either of the Debtors.

**114.	Interest Holder**: Any Person owning an Interest in a Debtor.

**115.	Intercreditor Agreement**: The *Intercreditor Agreement* between FHA MPT and Bank SNB dated March 5, 2012.

**116.	Investor Lawsuit**: This term shall mean the 2012 lawsuit brought by numerous investors in GH against Dr. Johns and GH in the Maricopa County Superior Court for the State of Arizona, Case No. CV2012-002246.

**117.	LOC Claim**: This term shall mean the Contingent Claim in the amount of $1,200,000, plus additional interest, fees, expenses, and other charges, held by Bank SNB against FHA, related to a standby letter of credit issued by Bank SNB to FHA MPT.

**118.	LOC Collateral**:  This term has the meaning given to it in section V.E.1 below.

**119.	LOCs**:  This term has the meaning given to it in section V.E.1 below.

**120.	Maintenance Costs**:  This term has the meaning given to it in section V.E.1 below.

**121.	Maricopa County**: Maricopa County, Arizona, a governmental unit of the State of Arizona.

**122.	Mr. Calvert**: This term shall mean the former Chief Financial Officer of the Debtors, Randall Calvert.

**123.	Mr. Wanger**: This term shall mean the former Chief Executive Officer of the Debtors, David Wanger.

**124.    MPT FHA Lease**: The *Lease Agreement* between FHA and FHA MPT dated November 4, 2010, concerning the FHA Hospital Property.

**125.    MPT GH Lease**: The *Lease Agreement* between GH and FHA MPT dated as of April 5, 2007, as amended, concerning the GH Hospital Property.

**126.    Net GH 409A Proceeds**: This term shall mean the GH 409A Proceeds, net of the portion of the GH 409A Proceeds used to pay the Secured 409A Participants

**127.    New Value Election**: The option provided to current Interest Holders in FHA to purchase membership interests in Reorganized FHA.

**128.    New Value Member**: This term shall mean a Person who participates in the New Value Election in Reorganized FHA.

**129.    Operating Reserve**:  This term has the meaning given to it in section V.D.4.b. below.

**130.    Option**:  This term has the meaning given to it in section V.E.1 below.

**131.    Option Agreement**:  This term has the meaning given to it in section V.E.1 below.

**132.    Option Price**:  This term has the meaning given to it in section V.E.1 below.

**133.    Option Purchase Price**:  This term has the meaning given to it in section V.E.1 below.

**134.    Person**: Any individual, corporation, partnership, joint venture, association, joint stock company, trust, unincorporated association or organization, governmental agency, or associated political subdivision.

**135.    Peoria Property**: This term shall mean the 41 acres of real property owned by GH-41, commonly referred to as Lots 2 and 3 of a larger tract of land located at 26230 North Lake Pleasant Parkway, Peoria, Arizona.

**136.    Pinal County**: Pinal County, Arizona, a governmental unit of the State of Arizona.

**137.    Plan Benefit Claims**: This term shall include FHA Healthcare Claims, GH Healthcare Claims, FHA PTO Claims, GH PTO Claims, FHA 409A Claims, and GH 409A Claims. When used in reference to a single Debtor, the term includes only Claims against that Debtor.

**138.    Plan Rate**: The rate of interest to be paid with respect to Allowed Claims entitled to recover interest pursuant to this Amended Joint Plan, except when another rate is specified in this Amended Joint Plan for a particular Class of Claims.  The Plan Rate shall be 4.75% per annum, unless the Bankruptcy Court determines that the Plan Rate should be some other amount, in which case the Plan Rate shall be the rate determined by the Bankruptcy Court.

**139.    Plan Proponents**: This term shall mean GH and Bank SNB.

140.     **Priority Claim**: The Claim of a Claimant, to the extent that it is entitled to priority in payment under 11 U.S.C. §§ 507(a)(3) through (a)(10).  Priority Claims include Plan Benefit Claims, Priority Tax Claims, and Wage Claims.

141.     **Priority Tax Claims**: Claims of governmental units that are entitled to priority pursuant to § 507(a)(8) of the Bankruptcy Code.

142.     **Pro Rata**: The ratio of an Allowed Claim or Allowed Interest in a particular Class to the aggregate amount of all Allowed Claims or Allowed Interests in that Class.

143.     **Quarterly Distributions**: The term Quarterly Distributions, as well as the related terms "Trust Quarterly Distribution", "FHA Quarterly Distribution", "GH Quarterly Distribution", "Bank SNB Quarterly Distribution" and "Minimum Trust Quarterly Distribution" shall have the meanings ascribed to them in Section IV.C, below.

144.     **Reorganized Debtors**: The Debtors after the Effective Date.

145.     **Reorganized FHA**: This term shall mean FHA after the Effective Date.

146.     **Reorganized FHA SNB Claim**: This term has the meaning given to it in section IV.B.1(b) below.

147.     **Reorganized GH**: This term shall mean GH after the Effective Date.

148.     **Reorganized GH Guaranty Claim**: This term has the meaning given to it in section IV.B.1(b) below.

149.     **Reorganized GH Guaranty Lien**: This term has the meaning given to it in section IV.B.1(b) below.

150.     **Reorganized GH SNB Claim**:  This term has the meaning given to it in section IV.B.2(b) below.

151.     **Reserves**: This term shall mean all reserves determined to be necessary or appropriate by Senior Management, including but not limited to the reserves discussed in section V.D.3 below.

152.     **Revolver**: This term shall refer to the new revolving line of credit to be extended by Bank SNB on the Effective Date, as described in section V.E.4 below.

153.     **Revolver Reserve**: This term has the meaning given to it in section V.F.2. below.

154.     **Secured 409A Participants**: This term means participants in the GH 409A Plans who do not meet the participation requirements for participation in a "top-hat plan" (as that phrase is used for purposes of 29 CFR §2520.104-23, regarding an alternative method of compliance for pension plans for certain selected employees).

**155.    Secured Claim**: A Claim (a) secured by a lien on collateral which is unavoidable, to the extent of the value of such collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code; or (b) to the extent that such Claim is subject to setoff under Section 553 of the Bankruptcy Code.

**156.    Senior Management**: This term shall mean, as of the Effective Date, the senior management of Holdco, which shall be Mr. Bryan Hargis, as chief executive officer, Mr. Dennis Rutherford, as chief financial officer, and Ms. Marla Meggers as chief nursing officer and chief operating officer. For the avoidance of any doubt, the current management of FHA, Mr. Art Doloresco, the FHA chief executive office and Mr. Patrick Clune, the FHA chief financial officer, shall not have any role in the management of Holdco, Reorganized GH, or Reorganized FHA.

**157.    Senior Management Equity Pool**: This term shall mean a portion of the membership interests in Holdco, as described in section V.A.5 below.

**158.    Somerset**: This term has the meaning given to it in section VI.E. below.

**159.    Sweep Dispute**: This term shall mean the dispute between Bank SNB and GH regarding whether the Swept Funds are recoverable by GH under 11 U.S.C. § 553(b), and, if so, whether the Swept Funds would remain cash collateral of Bank SNB.

**160.    Swept Funds**: This term shall mean the $1,085,084.09 swept by Bank SNB from GH's deposit accounts on February 3, 4, and 5, 2014.

**161.    Tax Distributions**: This term shall mean the amounts of cash that will be distributed to members of Holdco and New Value Members of Reorganized FHA for the purposes and in the amounts discussed in section V.A.6 below.

**162.    Third Defined Distribution**: This term has the meaning given to it in section IV.C.2 below.

**163.    Undersecured**: This term describes a holder of a Claim that is a Secured Claim in part and an Unsecured Claim in part.

**164.    Unsecured Claim**: A Claim to the extent that such Claim is not a Secured Claim.

**165.    Unliquidated**: The term describes the Claim of a Creditor when the value of the claim has not been determined or stated with finality.

**166.    Wage Claims**: Unsecured Claims of employees of a Debtor for wages, salaries or commissions, including vacation, severance, and sick leave pay earned by such employees within 180 days before the FHA Petition Date or the GH Petition Date, as applicable, but only to the extent of $11,725 per employee of FHA or $12,475 per employee of GH.

**167.    Wanger Lawsuit**: This shall mean the 2013 lawsuit brought by Mr. Wagner and Mr. Calvert in Maricopa County Superior Court for the State of Arizona, Case No. CV2013-001007.

# III.    CLASSIFICATION OF CLAIMS AND INTERESTS

Holders of Claims against, and Interests in, the Debtors, of whatever nature, whether or not scheduled, liquidated or unliquidated, absolute or contingent, direct or indirect, including all Claims arising from the rejection of executory contracts, and all Claims or Interests arising from the ownership of equity securities in the Debtors, shall be bound by the provisions of this Amended Joint Plan.  All Claims are classified as provided in this section.

Each Class of Claims against, or Interests in, the Debtors is identified by a three-part designation in the form "N.NN.L." The first number of the designation indicates the general priority category of the class: Priority Claim (designated "1.NN"), Secured Claim ("2.NN"), General Unsecured Claim ("3.NN") or Interest ("4.NN"). The second number identifies the specific Class within the general priority category. The letter of the designation indicates the Debtor the Claim is against or Interest is in: FHA Claims or Interests ("N.NN.FHA") and GH Claims or Interests ("N.NN.GH")

## A.    Priority Claims (Class 1—but not formally classified)
Priority Claims are classified as follows:

**1.    Class 1.1—Administrative Claims**
  **a.    Class 1.1.FHA—FHA Administrative Claims**
    Class 1.1.FHA shall consist of Administrative Claims in the FHA Bankruptcy.
  **b.    Class 1.1.GH—GH Administrative Claims**
    Class 1.1.GH shall consist of Administrative Claims in the GH Bankruptcy.

**2.    Class 1.2—Wage Claims**
  **a.    Class 1.2.FHA—FHA Wage Claims**
    Class 1.2.FHA shall consist of Wage Claims in the FHA Bankruptcy.
  **b.    Class 1.2.GH—GH Wage Claims**
    Class 1.2.GH shall consist of Wage Claims in the GH Bankruptcy.

**3.    Class 1.3—Plan Benefit Claims**
  **a.    Class 1.3.FHA—FHA Plan Benefit Claims**
    Class 1.3.FHA shall consist of Plan Benefit Claims in the FHA Bankruptcy.
  **b.    Class 1.3.GH—GH Plan Benefit Claims**
    Class 1.3.GH shall consist of Plan Benefit Claims in the GH Bankruptcy.

**4.    Class 1.4—Priority Tax Claims**
  **a.    Class 1.4.FHA—FHA Priority Tax Claims**
    Class 1.4.FHA shall consist of Priority Tax Claims in the FHA Bankruptcy that are not Secured Claims.
  **b.    Class 1.4.GH—GH Priority Benefit Claims**
    Class 1.4.GH shall consist of Priority Tax Claims in the GH Bankruptcy that are not Secured Claims.

## B.    Secured Claims (Class 2)
Secured Claims are classified as follows:

**1.    Class 2.1.FHA—FHA Bank SNB Debt and LOC Claim**
  Class 2.1.FHA shall consist of Bank SNB's Claim for the FHA SNB Debt and the LOC Claim.

2.      **Class 2.2.GH—GH Bank SNB Claim**
        Class 2.2.GH shall consist of Bank SNB's Claim for the GH Direct Indebtedness and its Claim on the GH Guaranty.

3.      **Class 2.3.FHA—FHA Pinal County, Arizona Claim**
        Class 2.3.FHA shall consist of the Secured Claim of Pinal County against FHA, if any, secured by an *ad valorem* tax lien on the FHA Hospital Property.

4.      **Class 2.4.GH—GH Maricopa County, Arizona Claim**
        Class 2.3.GH shall consist of the Secured Claim of Pinal County against GH, if any, secured by an *ad valorem* tax lien on the GH Hospital Property.

5.      **Class 2.5.FHA—FHA Covidien-Mallinckrodt Claim**
        Class 2.5.FHA shall consist of the Secured Claim of Covidien against FHA.

6.      **Class 2.6.FHA—FHA Johns Claim**
        Class 2.6.FHA shall consist of the Claim of Dr. Johns against FHA in the principal amount of $100,000, which has been asserted as a Secured Claim secured by a junior lien on certain assets of FHA, as described in the *Emergency Motion for Order Authorizing Debtor-in-Possession Financing* (FHA DE 154).

7.      **Class 2.7.GH—GH Iron Mountain Claim**
        Class 2.7.GH shall consist of the Claim of Iron Mountain Information Management, LLC against GH, which has been asserted as a Secured Claim.

8.      **Class 2.8.GH—GH Secured 409A Participants**
        Class 2.8.GH shall consist of the Claims of all Allowed GH Secured 409A Participants.


**C.      General Unsecured Claims (Class 3)**
General Unsecured Claims are classified as follows:

1.      **Class 3.1.FHA—Unsecured Claims against FHA**
        Class 3.1.FHA shall consist of all General Unsecured Claims against FHA.

2.      **Class 3.2.GH—Unsecured Claims against GH**
        Class 3.2.GH shall consist of all General Unsecured Claims against GH.


**D.      Membership Interests (Class 4)**
Interests are classified as follows:

1.      **Class 4.1.FHA—Membership Interests in FHA**
        Class 4.1.FHA shall consist of all Interests in FHA.

2.      **Class 4.2.GH—Membership Interests in GH**
        Class 4.2.GH shall consist of all Interests in GH.


## IV.      TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

This section describes the treatment of each Class of Claims and Interests classified in the Amended Joint Plan. Notwithstanding these provisions, the holder of a Claim or Interest may agree to a less favorable treatment of all or any portion of its Claim or Interest.

**A. Priority Claims (Class 1—but not formally classified)**
Priority Claims are treated as follows:

**1. Class 1.1—Administrative Claims**
    **a. Class 1.1.FHA—FHA Administrative Claims**
In the FHA Bankruptcy, there are three types of Class 1.01.A Claims:

(1) Class 1.1.FHA.i—Professional Fees
Allowed Claims for FHA professional fees and expenses will be paid in cash from the FHA Liquidating Trust in the amount awarded to such professionals in accordance with, and at such times as may be provided in, Final Orders entered pursuant to §§ 330 or 503(b)(2) through (6) of the Bankruptcy Code, less amounts paid previously.

Reorganized GH, with the consent of Bank SNB, shall provide $1,000,000[1] on the Effective Date to the FHA Liquidating Trust to be applied toward the satisfaction of all Allowed Class 1.1.FHA.i Administrative Claims, in cash, on the latest of (i) the Effective Date, (ii) the date on which the Claim becomes Allowed, or (iii) the date upon which such obligation becomes due in accordance with its terms. In addition, the other FHA Trust Assets shall be used to pay any Allowed Class 1.1.FHA.i Administrative Claims of the FHA Estate's Professionals before the any General Unsecured Claims are paid.

(2) Class 1.1.FHA.ii—Section 503(b) Ordinary-Course Claims
Allowed Administrative Claims for goods or services provided to FHA in the ordinary course of business after the FHA Petition Date and on or prior to the Effective Date shall be paid in the ordinary course of business by Reorganized FHA and, to the extent necessary, by Holdco through intercompany borrowing.

(3) Class 1.1.FHA.iii—Other Administrative Claims
All Administrative Claims of GH against FHA shall be deemed withdrawn on the Effective Date. Each holder of an Allowed Administrative Claim against FHA, other than Administrative Claims in Classes 1.1.FHA.i and 1.1.FHA.ii, shall receive, on account of such Claim, payment of the Allowed amount of such Claim, in cash, on the latest of (i) the Effective Date, (ii) the date on which the Claim becomes Allowed, or (iii) the date upon which such obligation becomes due in accordance with its terms, unless the holder of such Claim agrees to other treatment.

(4) Class 1.1.FHA.iv—Doloresco Severance
In connection with GH's pre-confirmation assumption of interim management responsibility for FHA, an agreement was reached with FHA's former chief executive officer, Arthur M. Doloresco, to provide a total of $308,000 in severance compensation and other consideration (the "Doloresco Severance"), in exchange for Mr. Doloresco: a) voluntarily resigning his position in favor of the interim management arrangement; b) cooperating in the transition of management of FHA; c) agreeing not to disparage GH, FHA or this Third Amended Joint Plan; d) agreeing to release any claims that he might otherwise have or assert against FHA; and, e) agreeing not to compete with FHA for a period of one year from his separation within a geographic area

---

[1] GH confirms its commitment to comply with 11 U.S.C. §1129(a)(9), and will provide sufficient funding to pay all FHA Allowed Administrative Claims on the Effective Date in full in cash, if the assets in the FHA Liquidating Trust are insufficient to pay all FHA Allowed Administrative Claims on the Effective Date.

comprising a 15-mile radius of the location of FHA. The Doloresco Severance shall be paid in cash on the Effective Date, and was separately escrowed prior to confirmation of the Amended Joint Plan for this purpose from FHA's cash then on hand. In exchange for receiving the Doloresco Severance, Mr. Doloresco will be obligated to enter into a written agreement memorializing the various covenants described above.

Class 1.1.FHA Claims are not impaired and, therefore, Claimants are deemed to accept the Amended Joint Plan.

### b. Class 1.1.GH—GH Administrative Claims

In the GH Bankruptcy, there are three types of Class 1.01.B Claims:

#### (1) Class 1.1.GH.i—Professional Fees

Allowed Claims for FHA professional fees and expenses will be paid in cash from Reorganized GH in the amount awarded to such professionals or entities in accordance with, and at such times as may be provided in, Final Orders entered pursuant to §§ 330 or 503(b)(2) through (6) of the Bankruptcy Code, less amounts paid previously.

#### (2) Class 1.1.GH.ii—Section 503(b) Ordinary-Course Claims

Allowed Administrative Claims for goods or services provided to GH in the ordinary course of business after the GH Petition Date and on or prior to the Effective Date shall be paid in the ordinary course of business by Reorganized GH.

#### (3) Class 1.1.GH.iii—Other Administrative Claims

All Administrative Claims of FHA against GH shall be deemed withdrawn on the Effective Date. Each holder of an Allowed Administrative Claim against FHA, other than Administrative Claims in Classes 1.1.GH.i and 1.1.GH.ii, shall receive, on account of such Claim, payment of the Allowed amount of such Claim, in cash, on the latest of (i) the Effective Date, (ii) the date on which the Claim becomes Allowed, or (iii) the date upon which such obligation becomes due in accordance with its terms, unless the holder of such Claim agrees to other treatment.

Class 1.1.GH Claims are not impaired and, therefore, Claimants are deemed to accept the Amended Joint Plan.

### 2. Class 1.2—Wage Claims
#### a. Class 1.2.FHA—FHA Wage Claims

Each holder of an Allowed Wage Claim against FHA shall receive, on account of such Claim, payment of the Allowed amount of such Claim, in cash, by the FHA Liquidating Trust on the latest of (i) the Effective Date, (ii) the date on which the Claim becomes Allowed, or (iii) the date upon which such obligation becomes due in accordance with its terms, unless the holder of such Claim agrees to other treatment. The Plan Proponents do not believe that there are any unpaid FHA Wage Claims.

Class 1.2.FHA Claims are not impaired and, therefore, Claimants are deemed to accept the Amended Joint Plan.

      **b.**      **Class 1.2.GH—GH Wage Claims**

      Each holder of an Allowed Wage Claim against GH shall receive, on account of such Claim, payment of the Allowed amount of such Claim, in cash, on the latest of (i) the Effective Date, (ii) the date on which the Claim becomes Allowed, or (iii) the date upon which such obligation becomes due in accordance with its terms, unless the holder of such Claim agrees to other treatment. The Plan Proponents do not believe that there are any unpaid GH Wage Claims.

      Class 1.2.GH Claims are not impaired and, therefore, Claimants are deemed to accept the Amended Joint Plan.

      **3.**      **Class 1.3—Plan Benefit Claims**
          **a.**      **Class 1.3.FHA—FHA Plan Benefit Claims**
      In the FHA Bankruptcy, there are three types of Class 1.3.FHA Claims:

      (1) <u>Class 1.3.FHA.i</u>—FHA Healthcare Claims

      Any unpaid FHA Healthcare Claims that have been adjudicated by the FHA TPA will be paid by the FHA Liquidating Trust in full in cash on the Effective Date. Unpaid FHA Healthcare Claims that have not been adjudicated will be adjudicated and paid in the ordinary course. Reorganized FHA reserves the right to audit such Claims and to seek compromises of such Claims as may be acceptable to the beneficial holders of such Claims. Any claims disallowed by the FHA TPA will be subject to non-bankruptcy law dispute and enforcement mechanisms. The Bankruptcy Court will not retain jurisdiction with respect to any FHA Healthcare Claims. Nothing in this Amended Joint Plan or the Confirmation Order shall impact, impair, limit, or alter any past or present employee's rights to have FHA Healthcare Claims paid, subject to the terms of the applicable healthcare benefits plan. The Plan Proponents do not believe that there are any unpaid FHA Healthcare Claims.

      (2) <u>Class 1.3.FHA.ii</u>—FHA PTO Claims

      All Allowed FHA PTO Claims owed to former employees of FHA will be paid by the FHA Liquidating Trust in full in cash on the Effective Date. All Allowed FHA PTO Claims owed to current FHA employees will be honored or paid in the ordinary course of business, subject to the policies of FHA as established from time to time, and subject to non-bankruptcy law dispute and enforcement mechanisms. The Bankruptcy Court will not retain jurisdiction with respect to any FHA PTO Claims. Nothing in this Amended Joint Plan or the Confirmation Order shall impact, impair, limit, or alter any past or present employee's rights under non-bankruptcy law to have his or her FHA PTO Claim honored under the terms of FHA's established polices. The Plan Proponents do not believe that there are any unpaid FHA PTO Claims.

      (3) <u>Class 1.3.FHA.iii</u>—FHA 409A Claims.

      All Allowed FHA 409A Claims, entitled to priority treatment under 11 U.S.C. § 507, will be paid by the FHA Liquidating Trust in full in cash on the Effective Date. The Plan Proponents do not believe that any Allowed FHA 409A Claims are entitled to priority treatment.

      Class 1.3.FHA.Claims are not impaired and, therefore, Claimants are deemed to accept the Amended Joint Plan.

### b. Class 1.3.GH—GH Plan Benefit Claims

In the GH Bankruptcy, there are three types of Class 1.3.GH Claims:

(1) <u>Class 1.3.GH.i</u>—Healthcare Claims

Any unpaid GH Healthcare Claims that have been adjudicated by the GH TPA will be paid in full in cash on the Effective Date. Unpaid GH Healthcare Claims that have not been adjudicated will be adjudicated and paid in the ordinary course. Reorganized GH reserves the right to audit such Claims and to seek compromises of such Claims as may be acceptable to the beneficial holders of such Claims. Any claims disallowed by the GH TPA will be subject to non-bankruptcy law dispute and enforcement mechanisms. The Bankruptcy Court will not retain jurisdiction with respect to any GH Healthcare Claims. Nothing in this Amended Joint Plan or the Confirmation Order shall impact, impair, limit, or alter any past or present employee's rights to have GH Healthcare Claims paid, subject to the terms of the applicable healthcare benefits plan.

(2) <u>Class 1.3.GH.ii</u>—PTO Claims

All Allowed GH PTO Claims owed to former employees of GH will be paid in full in cash on the Effective Date. All Allowed GH PTO Claims owed to current GH employees will be honored or paid in the ordinary course of business, subject to the policies of GH as established from time to time, and subject to non-bankruptcy law dispute and enforcement mechanisms. The Bankruptcy Court will not retain jurisdiction with respect to any GH PTO Claims. Nothing in this Amended Joint Plan or the Confirmation Order shall impact, impair, limit, or alter any past or present employee's rights under non-bankruptcy law to have his or her GH PTO Claim honored under the terms of GH's established polices.

(3) <u>Class 1.3.GH.iii</u>—409A Claims.

All Allowed GH 409A Claims entitled to priority treatment under 11 U.S.C. § 507 will be paid in full in cash on the Effective Date. GH believes that, to the extent any holder of an Allowed GH 409A Claim could claim a priority status under 11 U.S.C. §507, the limits of any applicable priority status will be exhausted pursuant to the treatment of claims that such holders have in Class 2.8.GH and therefore, there will be no Allowed GH 409A Claims entitled to priority treatment.

Class 1.3.GH Claims are not impaired and, therefore, Claimants are deemed to accept the Amended Joint Plan.

### 4. Class 1.4—Priority Tax Claims
#### a. Class 1.4.FHA—FHA Priority Tax Claims

As provided in 11 U.S.C. § 1129(a)(9)(C), unless a Claimant holding a Claim in this Class agrees to an alternative form of treatment, each Claimant holding an Allowed Priority Tax Claim against FHA shall receive regular installment payments from the Liquidating Trust in cash a) of a total value, as of the Effective Date of the Amended Joint Plan, equal to the Allowed amount of such Claim, together with interest at the Plan Rate; b) over a period ending not later than 5 years after the FHA Petition Date; and c) in a manner not less favorable than the most favored non-priority unsecured claim provided for by the Amended Joint Plan.

Class 1.4.FHA Claims are not impaired and, therefore, Claimants are deemed to accept the Amended Joint Plan.

**b.** **Class 1.4.GH—GH Priority Tax Claims**

As provided in 11 U.S.C. § 1129(a)(9)(C), unless a Claimant holding a Claim in this Class agrees to an alternative form of treatment, each Claimant holding an Allowed Priority Tax Claim against GH shall receive regular installment payments in cash a) of a total value, as of the Effective Date of the Amended Joint Plan, equal to the Allowed amount of such Claim, together with interest at the Plan Rate; b) over a period ending not later than 5 years after the GH Petition Date; and c) in a manner not less favorable than the most favored non-priority unsecured claim provided for by the Amended Joint Plan.

Class 1.4.GH Claims are not impaired and, therefore, Claimants are deemed to accept the Amended Joint Plan.

**B.** **Secured Claims**

This section provides a description and treatment for the Secured Claims against both of the Debtors. The GH Schedules identify numerous leases as Secured Claims (GH DE 103), but any Claim not classified in this section, regardless of how it was scheduled, will be treated as an operating lease in accordance with section VI.E, below.

**1.** **Class 2.1.FHA—FHA Bank SNB Debt and LOC Claim**

**(a) Description:** Class 2.1.FHA consists of Bank SNB's Secured Claim against FHA. As of the FHA Petition Date, the FHA SNB Debt had a liquidated balance of $9,854,625.06, consisting of the following two loans:

  i.   Loan ending 8100, which had an FHA Petition Date balance of $4,827,944.50; and
  ii.  Loan ending 8200, which had an FHA Petition Date balance of $5,026,680.56.

In addition, Bank SNB holds the Contingent LOC Claim in the amount of $1,200,000, plus additional interest, fees, expenses, and other charges. The FHA SNB Debt and the LOC Claim are secured by a first-priority lien on substantially all of the assets of FHA.

**(b) Treatment:** Bank SNB shall have an Allowed Secured Claim against Reorganized FHA in amount determined by subtracting the amount of the Reorganized GH SNB Claim from $14 million (the "Reorganized FHA SNB Claim"), the repayment of which shall be collaterally secured by first-priority liens subject to the terms of the Intercreditor Agreement on the following:

  1.   all assets of Reorganized FHA, which shall remain subject to the Intercreditor Agreement; and,
  2.   the Peoria Property, which GH shall cause its wholly owned subsidiary, GH 41, LLC, to pledge as collateral.

In connection with delivering to Bank SNB a first-priority lien on the Peoria Property, Reorganized GH shall, prior to the Effective Date, take all necessary and appropriate measures to release and/or extinguish all existing lien interests in and to the Peoria Property, and execute such

other documents as necessary for Bank SNB to have a first and prior, validly perfected lien on the Peoria Property pursuant to, among other things, a recorded deed of trust. Reorganized GH shall also, prior to the Effective Date, establish an escrow account for real property taxes and other property expenses as reasonably required by Bank SNB.

The Reorganized FHA SNB Claim will be amortized at a simple, annual rate of interest of 8.75% for a period of 180 months, and shall mature 48 months after the Effective Date. The Reorganized FHA SNB Claim shall be paid in monthly fixed amounts consisting of accrued interest and principal payments according to a schedule that will be included in the Plan Supplement, with the first payment due on the first day of the first month following the Effective Date.

The Reorganized FHA SNB Claim shall be paid by Reorganized FHA. However, Reorganized GH and Holdco shall be required to subsidize Reorganized FHA's monthly payment obligations of the Reorganized FHA SNB Claim, as necessary, so that Bank SNB receives timely monthly debt service payments in full, but this subsidy requirement does not apply to repayment of the balance of the obligation upon maturity.

Reorganized GH, in addition to its subsidy obligation and delivery to Bank SNB of a first-priority lien interest in the Peoria Property, shall guaranty repayment in full of the Reorganized FHA SNB Claim by granting to Bank SNB, on the Effective Date, an allowed contingent guaranty claim in the amount of Three Million Dollars ($3,000,000.00) (the "Reorganized GH Guaranty Claim").

The Reorganized GH Guaranty Claim shall be collaterally secured by a lien against substantially all of the assets of Reorganized GH (the "Reorganized GH Guaranty Lien"), subject in priority only to (i) the presently-existing rights, liens, and interests of Bank SNB, and (ii) the USC Lien. The Reorganized GH Guaranty Lien shall be documented by (i) an intercreditor agreement between the GH USC Trust and Bank SNB, subject to approval by Bank SNB, and (ii) an appropriate security agreement, and shall be perfected as reasonable and necessary. The Reorganized GH Guaranty Lien shall be a valid lien against substantially all of the assets of Reorganized GH immediately upon perfection, notwithstanding the contingent nature of the Reorganized GH Guaranty Claim.

The Reorganized GH Guaranty Claim will become non-contingent upon the occurrence of any one of the following circumstances: (i) if prior to maturity of the Reorganized FHA SNB Claim, there is a default in the terms of the treatment for the Reorganized FHA SNB Claim, a liquidation of the Reorganized FHA assets, and a liquidation of the Peoria Property resulting in less than full recovery of the Reorganized FHA SNB Claim, (ii) the failure to pay in full at maturity the balance of the Reorganized FHA SNB Claim, or (iii) subsequent to maturity, of the Reorganized FHA SNB Claim, there is any default under the terms of the Reorganized FHA SNB Claim. For purposes of sub-part (i) of the first sentence of this paragraph, a liquidation of the Reorganized FHA assets will be deemed to occur upon the earlier of (a) the completion of a sale of all or substantially all of the Reorganized FHA assets, including without limitation any such sale conducted by or on behalf of any party with lien interests in the assets of Reorganized FHA, or (b) a voluntary bankruptcy filing or any other insolvency proceeding commenced or consented to by Reorganized FHA, or any involuntary bankruptcy or other involuntary insolvency proceeding of Reorganized FHA, that is not dismissed within sixty days of its commencement. For purposes of sub-part (i) of the first sentence of this paragraph, a liquidation of the Peoria Property will be deemed to occur upon the earlier of (x) completion of a judicial or non-judicial foreclosure, including without

limitation a trustee sale, of the Peoria Property and, if applicable, the entry of an order by a court of competent jurisdiction establishing the fair-market value of the Peoria Property as provided in Arizona Revised Statutes § 33-814, or (y) a voluntary bankruptcy filing or any other insolvency proceeding commenced or consented to by the owner of the Peoria Property, or any involuntary bankruptcy or other involuntary insolvency proceeding of the owner of the Peoria Property that is not dismissed within sixty days of its commencement. The amount of the Reorganized GH Guaranty Claim shall not exceed the amount necessary to satisfy in full the Reorganized FHA SNB Claim, including all principal, accrued interest, fees and expenses arising therefrom.

To the extent Reorganized GH and/or Reorganized FHA do not default on their respective obligations to Bank SNB under the Amended Joint Plan, Bank SNB shall forbear from further pursuing third-party guaranties of the existing FHA debts and GH debts, including but not limited to the GH Guaranty, of any third-party guarantor who has, in writing, irrevocably: (i) voted in favor of this Amended Joint Plan, (ii) agreed to toll any applicable statute of limitations on any claims Bank SNB may have with respect to such guaranty, and (iii) agreed to the voluntary waiver of any defenses, claims, or arguments that Confirmation of the Amended Joint Plan results in a modification, elimination, or waiver, or otherwise affects the enforceability of the applicable guaranties. However, in the event Reorganized GH and/or Reorganized FHA default on their respective obligations to Bank SNB under the Amended Joint Plan, Bank SNB's obligation to forbear from pursuing, enforcing, and/or collecting, in full, on the third-party guaranties of the existing FHA and GH debts shall terminate without further action or notice by Bank SNB.

The ballot for accepting or rejecting this Amended Joint Plan shall include an area for third-party guarantors of the existing FHA and GH debts to indicate (i) their acceptance of the Amended Joint Plan, (ii) their agreement to toll any applicable statute of limitations on any claims Bank SNB may have with respect to such guaranties, and (iii) their voluntary waiver of any defenses, claims, or arguments that Confirmation of the Amended Joint Plan results in a modification, elimination, or waiver, or otherwise affects the enforceability, of the applicable guaranties. In addition, to making the ballot election to accept the Amended Joint Plan and the offered forbearance third-party guarantors, electing the offered forbearance shall be obligated to execute a forbearance agreement in a form acceptable to Bank SNB.

Notwithstanding anything to the contrary herein, Bank SNB: (i) shall not be required to forbear from the enforcement of any settlements or compromise agreements reached with any third-party guarantors prior to Confirmation, nor from pursuing or enforcing any guaranties against third-party guarantors who, pursuant to their respective plan ballots, do not accept the Amended Joint Plan, toll any applicable statutes of limitations, and waive defenses, claims, and arguments based on Confirmation of the Amended Joint Plan as described herein; and (ii) shall not be required to forbear from pursuing entry of a final judgment in any pending third-party guarantor litigation in which the presiding court has issued a dispositive or partially dispositive ruling as to one or more issues.

The LOC Claim shall remain a Contingent Claim and shall be treated under the terms of the GH/SNB Compromise, as described in section V.E, below. The LOC Claim rights of Bank SNB shall be subject to the terms of the Intercreditor Agreement. The treatment of Bank SNB shall be further supplemented, as described in section V.E, below, and shall be subject to appropriate documentation in definitive loan and security documents acceptable to Bank SNB. Moreover, the Bank SNB Quarterly Distribution described in section III.C is hereby supplemented and clarified as follows. At any time the Bank SNB Quarterly Distribution is reduced to 10% of Net Distributable

Cash, then Holdco and/or the Reorganized Debtors shall use funds from the Operating Reserve as necessary to provide to Bank SNB an additional Cash payment equal to the 10% of Net Distributable Cash then payable to Bank SNB.

For the avoidance of doubt, the treatment of Bank SNB in Class 2.1.FHA shall be subject to the Intercreditor Agreement. Nothing in the Amended Joint Plan is intended to modify the rights of FHA MPT pursuant to the Intercreditor Agreement.

(c) **Impairment and Voting**: Class 2.1.FHA is impaired. Bank SNB, as a Plan Proponent, is deemed to have accepted the Amended Joint Plan.

2. **Class 2.2.GH—GH Bank SNB Claim**

(a) <u>Description</u>: Class 2.2.GH consists of Bank SNB's Secured Claim against GH. As of the GH Petition Date, the GH Direct Indebtedness had a balance of $3,534,264.50, consisting of the following three loans:

      i.  a land loan note with a balance of $838,102.42;
     ii.  a working capital loan with a balance of $1,182,395.74; and
   iii.  an equipment loan of $1,513,766.44.

The GH Direct Indebtedness is secured by a first-priority lien on substantially all of the assets of GH. Since the GH Petition Date, the GH Direct Indebtedness has grown as the result of interest accruals and reasonable attorneys' fees incurred, notwithstanding application of adequate protection payments made by GH during the pendency of the GH Bankruptcy. As of April 1, 2015, GH and Bank SNB estimate the GH Direct Indebtedness exceeds $4.9 million.

In addition, Bank SNB's Claim on the GH Guaranty, as of the GH Petition Date, was $11,388,845.71, less any application of the Swept Funds.

(b) <u>Treatment</u>: The GH Direct Indebtedness shall remain a direct claim against GH, the repayment of which is collaterally secured by a lien against all assets of Reorganized GH (the "<u>Reorganized GH SNB Claim</u>"). The Allowed amount of the Reorganized GH SNB Claim shall include all applicable interest, fees and costs incurred by Bank SNB through the Effective Date.

The Reorganized GH SNB Claim will be amortized at a simple, annual rate of interest of 8.75% for a period of 180 months, and shall mature 48 months after the Effective Date. The Reorganized GH SNB Claim shall be paid in monthly fixed amounts consisting of accrued interest and principal payments according to a schedule that will be included in the Plan Supplement, with the first payment due on the first day of the first month following the Effective Date.

To the extent Reorganized GH and/or Reorganized FHA do not default on their respective obligations to Bank SNB under the Amended Joint Plan, Bank SNB shall forbear from further pursuing third-party guaranties of the existing FHA debts and GH debts, including but not limited to the GH Guaranty, of any third-party guarantor who has, in writing, irrevocably: (i) voted in favor of this Amended Joint Plan, (ii) agreed to toll any applicable statute of limitations on any claims Bank SNB may have with respect to such guaranty, and (iii) agreed to the voluntary waiver of any defenses, claims, or arguments that Confirmation of the Amended Joint Plan results in a

modification, elimination, or waiver, or otherwise affects the enforceability, of the applicable guaranties. However, in the event Reorganized GH and/or Reorganized FHA default on their respective obligations to Bank SNB under the Amended Joint Plan, Bank SNB's obligation to forbear from pursuing, enforcing, and/or collecting, in full, on the third-party guaranties of the existing FHA and GH debts shall terminate without further action or notice by Bank SNB.

The ballot for accepting or rejecting this Amended Joint Plan shall include an area for third-party guarantors of the existing FHA and GH debts to indicate (i) their acceptance of the Amended Joint Plan, (ii) their agreement to toll any applicable statute of limitations on any claims Bank SNB may have with respect to such guaranties, and (iii) their voluntary waiver of any defenses, claims, or arguments that Confirmation of the Amended Joint Plan results in a modification, elimination, or waiver, or otherwise affects the enforceability, of the applicable guaranties. In addition, to making the ballot election to accept the Amended Joint Plan and the offered forbearance third-party guarantors, electing the offered forbearance shall be obligated to execute a forbearance agreement in a form acceptable to Bank SNB.

Notwithstanding anything to the contrary herein, Bank SNB: (i) shall not be required to forbear from the enforcement of any settlements or compromise agreements reached with any third-party guarantors prior to Confirmation, nor from pursuing or enforcing any guaranties against third-party guarantors who, pursuant to their respective plan ballots, do not accept the Amended Joint Plan, toll any applicable statutes of limitations, and waive defenses, claims, and arguments based on Confirmation of the Amended Joint Plan as described herein; and (ii) shall not be required to forbear from pursuing entry of a final judgment in any pending third-party guarantor litigation in which the presiding court has issued a dispositive or partially dispositive ruling as to one or more issues.

The treatment of Bank SNB shall be further supplemented as described in section V.E, below, and shall be subject to appropriate documentation in definitive loan and security documents acceptable to Bank SNB. Moreover, the Bank SNB Quarterly Distribution described in section III.C is hereby supplemented and clarified as follows. At any time the Bank SNB Quarterly Distribution is reduced to 10% of Net Distributable Cash, then Holdco and/or the Reorganized Debtors shall use funds from the Operating Reserve as necessary to provide to Bank SNB an additional Cash payment equal to the 10% of Net Distributable Cash then payable to Bank SNB.

**(c) Impairment and Voting**: Class 2.2.GH is impaired. Bank SNB, as a Plan Proponent, is deemed to have accepted the Amended Joint Plan.

### 3. Class 2.3.FHA—FHA Pinal County, Arizona Claim

The Allowed Secured Claim of Pinal County, if any, will be paid by Reorganized FHA in equal quarterly payments of principal and interest over a term of three (3) years. The first payment will be made on or before the ninetieth day after the Effective Date, and each payment thereafter will be made on the first business day of each succeeding quarter. Interest will accrue and will be paid at the statutory rate of 16% per annum. Pinal County will retain its existing lien on the FHA Hospital Property until its Allowed Secured Claim has been satisfied in full.

This Class is impaired, and the Claimant is entitled to vote to accept or reject the Amended Joint Plan.

#### 4. Class 2.4.GH—GH Maricopa County, Arizona Claim

The Allowed Secured Claim of Maricopa County, if any, will be paid by Reorganized GH in equal quarterly payments of principal and interest over a term of three (3) years. The first payment will be made on or before the ninetieth day after the Effective Date, and each payment thereafter will be made on the first business day of each succeeding quarter. Interest will accrue and will be paid at the statutory rate of 16% per annum. Maricopa County will retain its existing lien on the GH Hospital Property until its Allowed Secured Claim has been satisfied in full.

This Class is impaired, and the Claimant is entitled to vote to accept or reject the Amended Joint Plan.

#### 5. Class 2.5.FHA—FHA Covidien-Mallinckrodt Claim

This Class consists of the Allowed Secured Claim of Covidien, in the approximate amount of $4,324, secured by a lien against the Covidien Collateral used by FHA in connection with its business operations. This Claim will be Allowed as a Secured Claim in the amount of the outstanding balance of the Claim on the Effective Date. Covidien's Allowed Secured Claim will be treated as follows: (a) Covidien will retain its lien on the Covidien Collateral until its Allowed Secured Claim is paid in full; (b) on the Effective Date, Reorganized FHA will pay to Covidien the sum of $400, which amount will be applied to the principal balance of Covidien's Allowed Secured Claim; (c) the remainder of Covidien's Allowed Secured Claim will paid in full in equal quarterly installments of principal and interest, accruing at the rate of 6% per annum, over three (3) years, commencing on the ninetieth day after the Effective Date and ending on the third anniversary of the Effective Date; (d) Reorganized FHA will have the right, in its sole and absolute discretion, to pre-pay the full amount of Covidien's Allowed Secured Claim at any time without penalty; and (e) immediately upon payment in full of Covidien's Allowed Secured Claim, its security interest in the Covidien Collateral and any other collateral securing Covidien's Allowed Claim will be deemed satisfied, extinguished, and released in full.

This Class is impaired, and the Claimant is entitled to vote to accept or reject the Amended Joint Plan.

#### 6. Class 2.6.FHA—FHA Johns Claim

The Plan Proponents believe that senior lien(s) fully encumber the assets that secure the Claim of Dr. Johns, such that the junior lien of Dr. Johns has no value. Therefore, Dr. Johns' Claim against FHA shall be Allowed as a General Unsecured Claim in the amount of $100,000 and shall be treated as provided in Class 3.1.FHA, below.

This Class is impaired, and the Claimant is entitled to vote to accept or reject the Amended Joint Plan.

#### 7. Class 2.7.GH—GH Iron Mountain Claim

The total amount of the Claim asserted by Iron Mountain is $11,070.15, but only $1,376.00 of the Claim is secured by personal property held in a storage facility. This Claim shall be Allowed as a Secured Claim in the amount of $1,376.00 and as a General Unsecured Claim in the amount of $9,694.15. The Allowed Secured Claim shall be paid in full in cash on the Effective Date of the Plan. The Allowed General Unsecured Claim shall be treated as provided in Class 3.2.GH, below.

This Class is impaired, and the Claimant is entitled to vote to accept or reject the Amended Joint Plan.

**8.    Class 2.8.GH—GH Secured 409A Participants**

The GH Secured 409A Participants shall each have an Allowed secured claim for the value of their vested benefit in the GH 409A Plans. The aggregate Allowed claims for GH Secured 409A Participants is estimated at $1,812,242.27. On the Effective Date each of the Secured 409A Participants shall receive payment of the amount of their respective vested claim in the GH 409A Plans in full and final satisfaction of any and all claims against the GH 409A Plans and against GH

This Class is impaired, and the Claimant is entitled to vote to accept or reject the Amended Joint Plan.

**C.    General Unsecured Claims (Class 3)**

Allowed General Unsecured Claims against FHA and GH shall be treated in separate classes (Class 3.1.FHA and Class 3.2.GH). The below prefatory explanations and provisions shall be applicable to the treatment of Allowed Claims in both classes.

On the Effective Date of the Amended Joint Plan, a separate trust shall be formed for the benefit of the Allowed General Unsecured Claims of each individual estate: (1) the FHA Liquating Trust (as described in Class 3.1.FHA); and (2) the GH USC Trust (as described in Class 3.2.GH). On the Effective Date, certain assets shall vest in each trust as defined in more detail below.

In addition to the assets that will vest in each trust on the Effective Date, on a quarterly basis each trust and Bank SNB will receive a share of Holdco's Net Distributable Cash as follows (all of which collectively shall be referred to as the "Quarterly Distributions"):

- Eighty percent (80%) of the Net Distributable Cash shall be split *pro rata* between the GH USC Trust and the FHA Liquidating Trust based upon the total dollar value of Allowed Claims in each trust, until all Allowed Claims (plus interest at the Plan Rate) are paid in full. The FHA Liquidating Trust's *pro rata* share of the Quarterly Distributions shall be referred to herein as the "FHA Quarterly Distribution" and the GH USC Trust's *pro rata* share of the Quarterly Distributions shall be referred to herein as the "GH Quarterly Distribution", and collectively with the FHA Quarterly Distribution, the "Trust Quarterly Distribution".

- Twenty percent (20%) of the Net Distributable Cash shall be paid to Bank SNB as an additional principal reduction until all claims of Bank SNB have been paid in full. Bank SNB's share of the Quarterly Distributions shall be referred to as the "Bank SNB Quarterly Distribution".

- The minimum Trust Quarterly Distribution shall be $350,000 (the "Minimum Trust Quarterly Distribution"), and in the event that Holdco fails to meet this requirement in a given quarter, Holdco shall redirect as much of the Bank SNB Quarterly Distribution as may be required to meet this minimum requirement.

- The FHA Liquidating Trust shall not participate in Trust Quarterly Distributions of Net Distributable Cash until such point as the aggregate total of all Distributions to the GH USC

Trust and the FHA Liquidating Trust (not including the FHA Litigation Reserve, GH Litigation Reserve, GH Administrative Subsidy, and the FHA Administrative Subsidy) are proportionate.

- The Bank SNB Quarterly Distribution shall be reduced to 10% of Net Distributable Cash until such point as the aggregate total of all Distributions to the GH USC Trust and the FHA Liquidating Trust (not including the FHA Litigation Reserve, GH Litigation Reserve, GH Administrative Subsidy, and the FHA Administrative Subsidy) are proportionate.

- At any time the Bank SNB Quarterly Distribution is reduced to 10% of Net Distributable Cash, then Holdco and/or the Reorganized Debtors shall use funds from the Operating Reserve as necessary to provide to Bank SNB an additional Cash payment equal to the 10% of Net Distributable Cash then payable to Bank SNB.

<u>Initial Litigation Reserves</u>

On the Effective Date, GH shall fund an initial litigation reserve for both the FHA Liquidating Trust and the GH USC Trust. The GH USC Trust litigation reserve shall be funded with $150,000 (the "<u>GH Litigation Reserve</u>") and the FHA Liquidating Trust shall be funded with $25,000 (the "<u>FHA Litigation Reserve</u>"). To the extent that either litigation reserve is not consumed for its intended purposes, it shall be distributed to the beneficiaries of the respective trust. Neither Plan Proponents nor Reorganized Debtors shall be obligated to provide any additional funding to the GH USC Trust or the FHA Liquidating Trust for claim objections and litigation, and if any Distributions from Reorganized Debtors are used for such purposes, such Distributions shall nonetheless be credited toward Reorganized Debtors' obligations to pay the beneficiaries of the GH USC Trust and the FHA Liquidating Trust in full. Upon either litigation reserve's full consumption, the respective trust may spend additional funds towards pursuit of avoidance actions and/or claim objections. The Reorganized Debtor shall remain obligated to pay the full amount of allowed unsecured claims in each respective trust plus interest plus additional litigation costs in excess of the litigation reserves, so long as the recovery of assets from avoidance actions and claims disallowed are more than the amount of the litigation expenses incurred not counting the amount of fees spent from the litigation reserve.

<u>Administrative Expenses</u>

Reorganized Debtors shall provide $5,000 per month in funding to the GH USC Trust for the reasonable administrative expenses of the GH USC Trust (the "<u>GH Administrative Subsidy</u>") and $5,000 per month in funding to the FHA Liquidating Trust (the "<u>FHA Administrative Subsidy</u>"). Such administrative expenses shall include, but not be limited to, the costs of: accounting; oversight; preparing, filing and distributing periodic reports; making distributions to beneficiaries; preparing and filing tax returns (if required); and winding up. Remittance of the FHA Administrative Subsidy and the GH Administrative Subsidy shall be made on a quarterly basis in arrears. To the extent that any accrued balance of the FHA Administrative Subsidy and the GH Administrative Subsidy are not consumed for its intended purposes, it shall be distributed to the beneficiaries of the respective trusts.

<u>Pro Rata Distributions</u>

The calculation of the *pro rata* share of the Trust Quarterly Distribution that the FHA Liquidating Trust and the GH USC Trust are entitled to shall be done by the Chief Financial Officer of Holdco, by comparing the outstanding balances owed to each trust and calculating the *pro rata* share due. The Bankruptcy Court shall retain jurisdiction regarding any dispute that arises regarding the distributions of the Trust Quarterly Distribution.

## 1. Class 3.1.FHA—General Unsecured Claims against FHA

All General Unsecured Claims asserted by GH and Bank SNB against FHA shall be deemed withdrawn on the Effective Date. All other Claimants holding Allowed General Unsecured Claims and Allowed Priority Claims (to the extent not fully paid on the Effective Date) against FHA will become beneficiaries of the FHA Liquidating Trust, and (subject to priority) will receive Pro Rata distributions of cash derived from the assets of the FHA Liquidating Trust under the terms of the FHA Trust Agreement as described below.[2] The initial FHA Liquidating Trustee shall be Carolyn Johnsen, subject to her consent and the consent of Bank SNB and shall be disclosed in the form of the FHA Liquidating Trust Agreement as part of the Plan Supplement. The FHA Liquidating Trustee shall be the Disbursing Agent for all Allowed Priority and Unsecured Claims against FHA.

    a.  <u>Trust Assets</u>. On the Effective Date of the Amended Joint Plan, the following assets shall vest in the FHA Liquidating Trust:

        i.  The assets of the FHA 409A Plan (to be used to pay Allowed Administrative Claims of FHA);

        ii.  Sufficient funding from the FHA cash on hand on the Effective Date and the GH cash on hand on the Effective Date to pay all Allowed Administrative Claimants of FHA, in full and to reserve for any Administrative Claims that are disputed as of the Effective Date, after the application of the FHA 409A Plan assets;

        iii.  All FHA Retained Causes of Action;

        iv.  $600,000 to fund an Effective Date payment to Allowed FHA Unsecured Creditors (the "<u>First FHA Defined Distribution</u>"); and,

        v.  the right to receive the following additional distributions:

            1)  $200,000 of Holdco's Cash 180 days following the Effective Date (the "<u>FHA Second Defined Distribution</u>");

            2)  $200,000 of Holdco's Cash 240 days following the Effective Date (the "<u>FHA Third Defined Distribution</u>");

---

[2] Other than the initial litigation reserve and administrative expenses subsidies explicitly provided herein, Reorganized FHA/Holdco shall not, under any circumstances, be required to distribute cash to the FHA Liquidating Trust in an amount in excess of the total value of FHA Allowed General Unsecured Claims, plus interest as contemplated pursuant to the Amended Joint Plan, notwithstanding any expenses incurred by the FHA Liquidating Trust including, without limitation, expenses incurred in connection with pursing the FHA Retained Causes of Action.

3) $285,000 of Holdco's Cash 330 days following the Effective Date (the "FHA Fourth Defined Distribution");

4) the FHA Quarterly Distributions—subject to the restrictions above that the FHA Liquidating Trust shall not participate in Trust Quarterly Distributions of Net Distributable Cash until such point as the aggregate total of all Distributions to the GH USC Trust and the FHA Liquidating Trust are proportionate—until all Allowed Claims of the beneficiaries of the FHA Liquidating Trust have been paid in full plus interest at the Plan Rate (the FHA Quarterly Distributions, together with the FHA First Distribution, the FHA Second Distribution, the FHA Third Distribution, FHA Fourth Defined Distribution, the "FHA Trust Distributions"); and,

5) the right to receive any Distributable Net Refinancing Proceeds and Distributable Enterprise Liquidation Proceeds identified to Reorganized FHA as described in sections V.F.6 and V.F.7, below.

b. <u>Minimum Distribution Requirements</u>.  The following requirements shall apply to the FHA Trust Distributions:

i. In the first calendar quarter following the full funding of the Operating Reserve, Holdco shall be obligated to make the Minimum Trust Quarterly Distribution. If the Minimum Trust Quarterly Distribution is not met for two consecutive quarters, Holdco/Reorganized GH shall be required to market and sell the Adjacent Property, but subject to any liens, minimum release price, or other rights of Bank SNB. If this option is exercised, based upon a failure to meet the Minimum Trust Quarterly Distribution, the proceeds of the sale of the Adjacent Property shall be distributed pro rata between the FHA Liquidating Trust and the GH USC Trust. If the Adjacent Property has already been sold at the time that two consecutive minimum quarterly payments are missed then Reorganized GH shall be required to reduce the Operating Reserve sufficiently to cure any shortfall in meeting the minimum distribution requirements.

ii. If, by the fifth anniversary of the Effective Date, the FHA Trust Distributions do not equal or exceed the lesser of: (i) One Million Two Hundred Thousand Dollars ($1,200,000) or (ii) an amount sufficient to satisfy 80% of the total FHA Allowed General Unsecured Claims, and provided that the Reorganized FHA SNB Claim and the LOC Claim have been paid and satisfied in full, the FHA Liquidating Trust has the right to require Reorganized FHA to retain a broker and market the Reorganized FHA assets associated with the operations of the Reorganized FHA hospital, for the purpose of sale as a going concern, subject to all perfected liens. Further, if on the fifth anniversary of the Effective Date, the above described minimum distribution requirement has not been met, Reorganized FHA may at its option use funds from the Operating Reserve to cure and meet this minimum distribution requirement;

iii. If, by the sixth anniversary of the Effective Date, the FHA Trust Distributions do not equal or exceed the lesser of: (i) One Million Five Hundred Thousand Dollars ($1,500,000), or (ii) an amount sufficient to satisfy 100% of the total FHA Allowed General Unsecured Claims, the Trustee of the FHA Liquidating Trust shall have the powers of a receiver appointed over the collateral pledged to secure the claim of the FHA Trust Distributions Trust. Further, if on the sixth anniversary of the Effective Date the above-described minimum distribution requirement has not been met, Reorganized FHA may at its option use funds from the Operating Reserve to cure and meet this minimum distribution requirement.

c. <u>FHA MPT</u>. Nothing herein shall be deemed to impair all lien rights of FHA MPT pursuant to its security agreements and the Intercreditor Agreement. Further, any and all remedies provided herein to the FHA Liquidating Trust shall be subject to the rights of FHA MPT pursuant to its security agreements and the Intercreditor Agreement with Bank SNB, including but not limited to the right of the FHA Liquidating Trust to act as a receiver over the collateral pledged to secure FHA Trust Distributions.

d. <u>Lien</u>. Reorganized FHA's obligations to remit the FHA Trust Distributions sufficient to satisfy all Allowed Unsecured Claims against FHA in full plus interest at the Plan Rate shall be collaterally secured by a second-position lien against the Peoria Property subject in priority only to the existing rights, liens, and interests of Bank SNB. To further clarify, the transfer of funds to the FHA Liquidating Trust and any recovery received by the FHA Liquidating Trust are not encumbered by the liens and claims of FHA MPT or Bank SNB.

e. <u>FHA Third Party Guaranty Claims</u>. If Bank SNB collects under any third-party guaranty whether as the result of the termination and/or revocation of Bank SNB's forbearance or otherwise, and as a result of such collection any FHA Third Party Guaranty Claim becomes non-contingent and liquidated, then the holder of such FHA Third Party Guaranty Claim shall be entitled to file a motion with the Bankruptcy Court seeking a determination that the FHA Third Party Guaranty Claim is a non-contingent, liquidated Allowed Claim. Any such motion shall be promptly served upon those individuals identified in section VII.G.4, the GH USC Trustee, the FHA Liquidating Trustee, and any other party entitled to notice. If no objection is timely filed thereto, or if an objection is timely filed thereto and overruled by the Bankruptcy Court, such FHA Third Party Guaranty Claim shall be deemed Allowed as of the date of the Bankruptcy Court order resolving the motion. Also preserved, is the ability to of GH USC Trustee, the FHA Liquidating Trustee, and any other party with standing to object to any motion filed seeking to a determination that the FHA Third Party Guaranty Claim is a non-contingent, liquidated Allowed Claim, seek an offset, potential affirmative recovery, or contribution claim. The holder of the Allowed FHA Third Party Guaranty Claim shall then be entitled to participate in distributions *pari passu* as a holder of an Allowed General Unsecured Claim under the terms of the FHA Liquidating Trust and shall be entitled to make-up distributions pursuant to the terms of the FHA Liquidating Trust, if cash is available. Previous distributions of the FHA Liquidating Trust shall not be subject to disgorgement.

f.  Discounted Payoff Option. Any Claimant may elect to receive a discounted payment of its Allowed Claim by making an irrevocable election on its ballot accepting or rejecting the Amended Joint Plan (the "Prepayment Election"). Such an election will entitle the Claimant, at the election of Holdco, to receive an amount equal to 75% of the original amount of its Allowed Claim, less any distributions previously made, in full and final satisfaction of its Allowed Claim, on the third anniversary of the Effective Date, if such a distribution is feasible given the Distributable Cash available on the third anniversary of the Effective Date. Holdco shall determine, in its sole discretion, whether there is sufficient Distributable Cash available on the third anniversary of the Effective Date to pay any Claimant who has made the discounted payment election. It should be noted that the Feasibility Projections attached as Exhibit "C" to the Amended Joint DS project that all FHA Allowed Unsecured Claims shall be paid in full with interest by the fourth anniversary of the Effective Date of Amended Joint Plan and that it is further projected that Allowed Claimants will receive Distributions sufficient to pay 80% of the Claimants Allowed Claim amount by the first anniversary of the Effective Date of the Amended Joint Plan. Any Claimant who makes the Prepayment Election, and if the on the third anniversary of Holdco determines, in its sole discretion, there is sufficient Distributable Cash available on the third anniversary of the Effective Date to pay any Claimant who has made the discounted payment election, then the Claimant shall receive the greater of the distributions received to date or 75% of the original amount of Allowed Claim.

g.  Additional Consideration to the FHA Estate

     i.  Cure Costs and Rejection Damages

The Amended Joint Plan shall provide for the payment in full of all Cure costs associated with assumed contracts and leases, and such payment shall not be made from distributions to the FHA Liquidating Trust. In the event that GH identifies any executory contracts or unexpired leases that it wishes to require FHA to reject, and such rejection gives rise to rejection or termination damages, GH shall be required to bear the cost of satisfying such Allowed Claims. Any rejection or termination damages resulting from the prior rejection of executory contracts or unexpired leases (to the extent Allowed) shall remain the responsibility of the FHA Liquidating Trust.

     ii.  Johns-Related Claims

GH shall use its best efforts to obtain the withdrawal or disallowance of any Claims asserted in the FHA Bankruptcy by Dr. Timothy Johns or any of his affiliated companies.

This Class is impaired, and Claimants are entitled to vote to accept or reject the Amended Joint Plan.

**2.  Class 3.2.GH—General Unsecured Claims against GH**

All General Unsecured Claims asserted by FHA against GH shall be deemed withdrawn on the Effective Date. All other Claimants holding Allowed General Unsecured Claims against GH will be paid in full with simple interest at the Plan Rate, during the term of the Amended Joint Plan as described below.

On the Effective Date the GH USC Trust shall be established for the benefit of the holders of Allowed General Unsecured Claims against GH, which will be administered by the GH USC Trustee. The GH USC Trustee will be advised by the GH Trust Advisory Board. The GH Committee and its counsel shall be responsible to develop a form of liquidating trust agreement and bylaws for the GH Trust Advisory Board, which shall be subject to reasonable approval of GH and Bank SNB and which shall be included in the Plan Supplement.

The GH USC Trustee will be the Distributing Agent for Allowed General Unsecured Claims against GH, but Reorganized GH will remain the Distributing Agent for holders of GH Allowed Priority Claims and GH Allowed Secured Claims.

The GH Retained Causes of Action shall vest in the GH USC Trust, on the Effective Date, and all proceeds shall inure directly to the benefit of the holders of Allowed General Unsecured Claims against GH through the GH USC Trust, rather than being incorporated into Distributable Cash.

To the extent that any GH Retained Causes of Action have not been pursued, or litigation concerning them remains pending at a point in time that Reorganized GH has fulfilled its required distributions of cash to the GH USC Trust, the GH USC Trust shall be dissolved and such GH Retained Causes of Action shall revert to Reorganized GH.

Reorganized GH shall retain all rights and claims (and any proceeds thereof) held by it pursuant to the Investor Settlement. Notwithstanding the foregoing sentence, the Parties intend that nothing in the Amended Joint Plan will limit the GH USC Trustee and FHA Litigation Trustee's rights under the Plan to pursue the avoidance actions and/or claim objections.

On the Effective Date of the Amended Joint Plan, the following assets shall vest in the GH USC Trust: (1) $1,000,000 funded by GH on the Effective Date of the Amended Joint Plan (the "GH First Defined Distribution");[3] (2) All GH Retained Causes of Action; and, (3) the right to receive the following additional distributions:

1. $666,666.67 of Holdco's Cash 180 days following the Effective Date (the "GH Second Defined Distribution");

2. $666,666.67 of Holdco's Cash 240 days following the Effective Date (the "GH Third Defined Distribution");

3. $667,666.67 of Holdco's Cash 330 days following the Effective Date (the "GH Fourth Defined Distribution");

4. The GH Quarterly Distributions, until all Allowed Claims of the beneficiaries of the GH have been paid in full plus the Plan Rate of interest (the GH Quarterly Distributions, together with the GH First Distribution, the

---

[3]  Other than the initial litigation reserve and administrative expense subsidy explicitly provided herein, Reorganized GH/Holdco shall not, under any circumstances, be required to distribute cash to the GH USC Trust in an amount in excess of the total value of GH Allowed General Unsecured Claims, plus interest as contemplated pursuant to the Joint Plan, notwithstanding any expenses incurred by the GH USC Trust including, without limitation, expenses incurred in connection with pursing the GH Retained Causes of Action.

GH Second Defined Distribution, the GH Third Defined Distribution, the GH Fourth Defined Distribution, the "GH USC Distributions"); and,

5. The GH USC Trust shall additionally be entitled to Distributable Net Refinancing Proceeds and Distributable Enterprise Liquidation Proceeds identified to Reorganized GH as described in section V.F.6 and V.F.7 to satisfy all Allowed General Unsecured Claims of GH.

The following requirements shall apply to the GH USC Distributions:

a. In the first calendar quarter following the full funding of the Operating Reserve, the Quarterly Periodic Distributions shall meet the Minimum Trust Quarterly Distribution. If the Reorganized Debtors/Holdco fail to meet the Minimum Trust Quarterly Distribution for two consecutive quarters, then Reorganized GH shall be required to market and sell the Adjacent Property, but subject to any liens, minimum release price, or other rights of Bank SNB. If this option is exercised, based upon a failure to meet the Minimum Trust Quarterly Distribution, the proceeds of the sale of the Adjacent Property shall be distributed pro rata between the FHA Liquidating Trust and the GH USC Trust. If the Adjacent Property has already been sold at the time that two consecutive minimum quarterly payments are missed then Reorganized GH shall be required to reduce the Operating Reserve sufficiently to cure any shortfall in meeting the minimum distribution requirements.

b. If, by the third anniversary of the Effective Date, the GH USC Distributions do not equal or exceed Three Million Five Hundred Thousand Dollars ($3,500,000) to the GH USC Trust, the GH USC Trust has the right to require Reorganized GH to market and sell the Adjacent Property subject to any liens, minimum release price, or other rights of Bank SNB, and to distribute the net proceeds of such sale to the GH USC Trust but subject to any liens, minimum release price, or other rights of Bank SNB;

c. If, by the fifth anniversary of the Effective Date, the GH USC Distributions do not equal or exceed the lesser of: (i) Five Million Five Hundred Thousand Dollars ($5,500,000), or (ii) an amount sufficient to satisfy 80% of the total GH Allowed General Unsecured Claims, and provided that the Reorganized GH SNB Claim and the Reorganized FHA SNB Claim have been paid and satisfied in full, the GH USC Trust has the right to require Reorganized GH to retain a broker and market the Reorganized GH assets associated with the operations of the Reorganized GH hospital, for the purpose of sale as a going concern, subject to all perfected liens. Further, if on the fifth anniversary of the Effective Date, the above described minimum distribution requirement has not been met, Reorganized GH may at its option use funds from the Operating Reserve to cure and meet this minimum distribution requirement;

d. If, by the sixth anniversary of the Effective Date,, the GH USC Distributions do not equal or exceed the lesser of: (i) Seven Million Five Hundred Thousand Dollars ($7,500,000), or (ii) an amount sufficient to satisfy 100% of the total GH Allowed General Unsecured Claims, the Trustee of the GH USC Trust shall have the powers of a receiver appointed over the collateral pledged to secure the claim of the GH USC Trust or the GH USC Trust at its option has the right to replace management of Holdco and/or the Reorganized Debtors. Further, if on the sixth anniversary of the Effective Date the above-described minimum distribution requirement has not been

met, Reorganized GH may at its option use funds from the Operating Reserve to cure and meet this minimum distribution requirement.

e. In addition, in the event that there is an uncured financial default of Holdco's and/or Reorganized GH's obligations to Bank SNB or GH MPT, and such uncured default presents an imminent risk of default of the Amended Joint Plan, the GH USC Trustee also shall have the right to assume the powers of a state-court receiver or to replace management of Holdco and/or Reorganized GH, subject to the following conditions:

    i. If, at the time that such default occurs, the GH USC Trust has received GH USC Distributions (not including the Litigation Reserve and Administrative Subsidy) insufficient to satisfy at least 75% of the Allowed Claims of the beneficiaries of the GH USC Trust, then the GH USC Trustee shall give written notice of the intent to elect the above remedy to Holdco and Reorganized GH, which shall have ten (10) calendar days in which to move the Bankruptcy Court to prevent the exercise of such remedy based upon a showing of adequate assurance of performance of the Amended Joint Plan.

    ii. If, at the time that such default occurs, the GH USC Trust has received GH USC Distributions (not including the Litigation Reserve and Administrative Subsidy) sufficient to satisfy at least 75% of the Allowed Claims of the beneficiaries of the GH USC Trust, then the GH USC Trustee shall be obligated to move the Bankruptcy Court for authorization to exercise such remedy based upon a showing of imminent harm arising from default of the Amended Joint Plan.

For the avoidance of doubt, except as expressly stated herein, the rights of the GH USC Trustee pursuant to this provision are not intended to supersede or have any adverse effect on Bank SNB's rights, liens, and interests under the Amended Joint Plan, the Reorganized GH SNB Claim, and the Reorganized FHA SNB Claim.

Reorganized GH's obligations to remit the Second and Third Defined Distributions and the GH Quarterly Distributions sufficient to satisfy all Allowed Unsecured Claims against GH in full plus interest at the Plan Rate shall be collaterally secured by a lien against all of the assets of Reorganized GH (the "GH USC Lien"), subject in priority only to the existing rights, liens, and interests of Bank SNB.

The GH USC Lien shall be documented by (i) an intercreditor agreement between the GH USC Trust and Bank SNB, subject to approval by Bank SNB, and (ii) an appropriate security agreement, and shall be perfected as reasonable and necessary. Such lien may be enforced only as specified in sub-paragraphs b, c, and d above, *provided however*, that the proceeds of a sale or refinancing of the encumbered assets shall be used to satisfy the outstanding balance of claims secured by the GH USC Lien, subject to senior liens and interests, expressly including Bank SNB's rights, liens, and interests.

If Bank SNB collects under any third-party guaranty whether as the result of the termination and/or revocation of Bank SNB's forbearance or otherwise, and as a result of such collection any GH Third Party Guaranty Claim becomes non-contingent and liquidated, then the holder of such GH Third Party Guaranty Claim shall be entitled to file a motion with the Bankruptcy Court seeking a determination that the GH Third Party Guaranty Claim is a non-contingent, liquidated

Allowed Claim. Any such motion shall be promptly served upon those individuals identified in section VII.G.4, the GH USC Trustee, the FHA Liquidating Trustee, and any other party entitled to notice. If no objection is timely filed thereto, or if an objection is timely filed thereto and overruled by the Bankruptcy Court, such GH Third Party Guaranty Claim shall be deemed Allowed as of the date of the Bankruptcy Court order resolving the motion. Also preserved is the ability of the GH USC Trustee, the FHA Liquidating Trustee, and any other party with standing to object to any motion filed seeking to a determination that the FHA Third Party Guaranty Claim is a non-contingent, liquidated Allowed Claim, seek an offset, potential affirmative recovery, or contribution claim. The holder of the Allowed GH Third Party Guaranty Claim shall then be entitled to participate in distributions *pari passu* as a holder of an Allowed General Unsecured Claim under the terms of the GH USC Trust and shall be entitled to make-up distributions pursuant to the terms of the GH USC Trust.

Any Claimant may elect to receive a discounted payment of its Allowed Claim by making an irrevocable election on its ballot accepting or rejecting the Amended Joint Plan (the "Prepayment Election"). Such an election will entitle the Claimant, at the election of Holdco, to receive an amount equal to 75% of the original amount of its Allowed Claim, less any distributions previously made, in full and final satisfaction of its Allowed Claim, on the third anniversary of the Effective Date, if such a distribution is feasible given the Distributable Cash available on the third anniversary of the Effective Date. Holdco shall determine, in its sole discretion, whether there is sufficient Distributable Cash available on the third anniversary of the Effective Date to pay any Claimant who has made the discounted payment election. It should be noted that the Feasibility Projections attached as Exhibit "C" to the Amended Joint DS project that all GH Allowed Unsecured Claims shall be paid in full with interest by the fourth anniversary of the Effective Date of the Amended Joint Plan. Any Claimant who makes the Prepayment Election, and if on the third anniversary of Holdco determines, in its sole discretion, there is sufficient Distributable Cash available on the third anniversary of the Effective Date to pay any Claimant who has made the discounted payment election, then the Claimant shall receive the greater of the distributions received to date or 75% of the original amount of Allowed Claim.

This Class is impaired, and Claimants are entitled to vote to accept or reject the Amended Joint Plan.

**D.    Equity Interests (Class 4)**

**1.    Class 4.1.FHA—Membership Interests in FHA**

All Interests in FHA shall be cancelled on the Effective Date. All of the membership interests in Reorganized FHA shall be issued to Holdco, subject only to the opportunity of Interest Holders with Allowed Interests to participate in the New Value Election, discussed in section V.A.4.c below. Distributions to New Value Members in Reorganized FHA will be limited during the term of the Amended Joint Plan, as described in section V.A.4.c below.

This Class is impaired, and Interest Holders are entitled to vote to accept or reject the Amended Joint Plan.

### 2.    Class 4.2.GH—Membership Interests in GH

All Interests in GH shall be cancelled on the Effective Date.  All of the membership interests in Reorganized GH shall be issued to Holdco.  Interest Holders with Allowed Interests in GH will receive, on account of their Allowed Interests in GH, their Pro Rata share of the new membership interests in Holdco available after the allocation of the 11% of such interests to the Senior Management Equity Pool.  Distributions to holders of membership interests in Holdco will be limited during the term of the Amended Joint Plan, as described in section V.A.4.a below.

This Class is impaired, and Interest Holders are entitled to vote to accept or reject the Amended Joint Plan.

## V.    IMPLEMENTATION OF THE AMENDED JOINT PLAN

### A.    Restructuring of FHA and GH

#### 1.    Creation of Holding Company

Holdco shall be formed on or prior to the Effective Date.  Each of Reorganized FHA and Reorganized GH will amend its operating agreements on the Effective Date to provide that it will be managed by Holdco and to include other provisions consistent with the Amended Joint Plan. The proposed new operating agreement of Holdco, Reorganized GH, and Reorganized FHA are appended to the Amended Joint DS as an Exhibit.

#### 2.    Corporate Governance

Holdco, Reorganized GH, and Reorganized FHA will each be managed by a five-member board of managers consisting of four members of GH's current board of managers, Dr. M.M. Salim, Dr. Brad Newswander, Mr. Bryan McCormick, and Dr. Robert Mead, with the addition of Mr. Bryan Hargis, GH's current chief executive officer.  Appropriate board bylaws and/or board member codes of conduct will be established.

The composition of the board of managers shall not be altered during the term of the Amended Joint Plan, subject only to the resignation, incapacity, or other inability of a member to serve.  In the event of resignation, incapacity, or other inability to serve, the first replacement member of the board of managers shall be Mr. Dennis Rutherford, GH's current chief financial officer, provided Mr. Rutherford is still employed by Holdco as a member of its Senior Management. If Mr. Rutherford is no longer employed by Holdco, as a member of its Senior Management, the replacement board member shall be selected by majority vote of the remaining members of the board; provided, however, that under no circumstances may Dr. Johns serve on the board during the term of the Amended Joint Plan.  Further, any subsequent replacement member shall be selected by majority vote of the remaining members of the board; provided, however, that under no circumstances may Dr. Johns serve on the board during the term of the Amended Joint Plan.

#### 3.    Reorganized Debtors' Management

Senior Management will exercise operational control of the Reorganized Debtors.  Under no circumstances during the term of the Amended Joint Plan may Dr. Johns have any management

position involving direct or indirect control of the business operations or finances (as distinct from the clinical operations) of Holdco or either Reorganized Debtor. Senior Management will be subject to industry-appropriate oversight by the boards of managers.

### 4. Cancellation of Existing Membership Interests and Issuance of New Membership Interests

#### a) GH

All Interests in GH shall be cancelled on the Effective Date. All of the membership interests in Reorganized GH shall be issued to Holdco. Interest Holders with Allowed Interests in GH will receive, on account of their Allowed Interests in GH, their Pro Rata share of the new membership interests in Holdco net of the 11% of such interests to be placed in the Senior Management Equity Pool. During the term of the Amended Joint Plan, distributions to holders of membership interests in Holdco shall be limited to the Tax Distributions, and holders shall be permitted to vote only to approve the sale of all or substantially all of the assets of Holdco, the equity interests in either Reorganized Debtor, or the assets of either Reorganized Debtor.

#### b) FHA

All Interests in FHA shall be cancelled on the Effective Date. All of the membership interests in Reorganized FHA shall be issued to Holdco, subject only to the opportunity of Interest Holders with Allowed Interests in FHA to participate in the New Value Election.

#### c) New Value Election

Any Interest Holder with an Allowed Interest in FHA shall be entitled to subscribe to purchase a Pro Rata share of ten percent (10%) of the newly issued membership interests in FHA, and thereby to become a New Value Member in Reorganized FHA, by making an irrevocable election on its ballot accepting or rejecting the Amended Joint Plan. The total subscription price of the new membership interests available for subscription shall be $500,000, and an Interest Holder's election to participate in the New Value Election will require the Interest Holder to tender its Pro Rata portion of that amount to GH's attorneys in immediately available funds within ten (10) business days following Confirmation of the Amended Joint Plan. To the extent that Interest Holders do not make the New Value Election or do not make timely payment in fulfillment of their subscriptions, the membership interests otherwise available shall be issued to Holdco. The total proceeds of the New Value Election shall be used to fund the Amended Joint Plan.

#### d) Excluded Assets

GH may, at its election and in its sole discretion, identify prior to the Confirmation Hearing on this Amended Joint Plan any assets of FHA that it wishes to denominate as Excluded Assets. Title to the Excluded Assets shall vest in the FHA Liquidating Trust on the Effective Date, subject to existing liens.

### 5. Senior Management Equity Pool and Employment Contracts

As an inducement for Senior Management to remain in the employ of Holdco and responsible for the operations of the Reorganized Debtors during the term of this Amended Joint Plan, 11% of the newly issued membership interests in Holdco shall be earmarked for the Senior Management Equity Pool for Senior Management. The Senior Management Equity Pool shall

include a requirement of continuing employment and a reasonable vesting schedule. The specific terms of the Senior Management Equity Pool have been approved by the existing board of GH, and are append to the Amended Joint DS as an Exhibit.

Each member of Senior Management also shall be offered an employment contract by Holdco. The terms of the Senior Management employment contracts with Holdco, have been approved by the existing board of GH, and are append to Amended Joint DS as an Exhibit.

### 6. Tax Distributions

Distributions to holders of membership interests in Holdco and, to the extent that Interest Holders make the New Value Election, distributions to New Value Members in Reorganized FHA, shall be limited during the term of this Amended Joint Plan to annual distributions of 40% of the I.R.S. Form K-1 income reported to the holders of such membership interests ("Tax Distributions"). Such distribution rate may be adjusted in the event of legislative or regulatory changes to marginal tax rate structures during the term of the Amended Joint Plan. Notwithstanding any other provision, in the Amended Joint Plan, Holdco, Reorganized GH, and Reorganized FHA shall be allowed and obligated to make Tax Distributions as and when required to protect holders of membership interests from negative tax consequences, including tax liability, during the pendency of the Amended Joint Plan. This shall include negative tax consequences arising from operation of the business of the Reorganized Debtors, increase in Reserves, sale of any real estate, including the sale of the Adjacent Land or the Peoria Property, the Swept Funds, the 409A Plans, the GH Retained Causes of Action or FHA Retained Causes of Action, refinancing or sale or liquidation of the either Holdco or the Reorganized Debtors or substantially all of their assets of equity. Such Tax Distributions shall be subordinate only to the a) making of required Effective Date payments; b) satisfying ordinary operating expenses of Holdco and the Reorganized Debtors; and c) making required payments to Bank SNB on both the GH SNB monthly amortized payments and the FHA SNB monthly amortized payments ("SNB Monthly Payments").

### B. Impact of the Settlement of the GH Lawsuits

Confirmation of the Amended Joint Plan shall not impact the enforceability of the Investor Settlement and the Dismissal Order on the signatories to the Final Settlement Term Sheet. In the event of any conflict, however, between the terms of the Dismissal Order and the Investor Settlement (on the one hand), and this Amended Joint Plan and the Confirmation Order (on the other), the Amended Joint Plan and the Confirmation Order shall control. Capitalized terms used in this section and not defined in this Amended Joint Plan have the meanings given to them in the Amended Joint DS.

### C. Interdebtor Claims

GH has filed a General Unsecured Claim against FHA in the amount of $11,209,683.12, plus interest. GH has also sought payment of an Administrative Claim against FHA in the amount of at least $1,300,000. FHA has filed a General Unsecured Claim against GH, alleging that GH received not less than $2,263,341.58 in alleged preferential payments in the year prior to the FHA Petition Date. All of these Claims will be deemed withdrawn on the Effective Date.

**D.** **Operation of Holdco and the Reorganized Debtors During the Term of the Amended Joint Plan**

**1.** **Operation of the Businesses of the Reorganized Debtors**

During the term of this Amended Joint Plan, the Holdco board, Reorganized GH board, Reorganized FHA board and Senior Management shall operate the businesses of the Reorganized Debtors in the ordinary course. They shall be entitled to exercise such business discretion as is reasonable given the history, industry, finances, market conditions, and geographic locations of the operations of the Reorganized Debtors. They shall act in good faith and with reasonable best efforts i) to comply with applicable non-bankruptcy laws; ii) to operate the businesses of the Reorganized Debtors efficiently, effectively, and profitably; and iii) to carry out the provisions of this Amended Joint Plan.

**2.** **Maintenance of Separate Financial Statements**

During the term of this Amended Joint Plan, Holdco shall cause each of the Reorganized Debtors to maintain separate financial and accounting records. Notwithstanding the foregoing, Holdco may allocate expenses for shared assets and services between and among the Reorganized Debtors, as appropriate.

**3.** **Accountability Provisions**

During the term of this Amended Joint Plan, the Reorganized Debtors shall abide by the following accountability structures to insure that the terms and intent of the Amended Joint Plan are complied with in the best interest of the creditors of both estates:

- First, Holdco shall at all times be required to maintain a Six and a Half Percent (6.5%) annual net operating margin.
- Second, all shared expenses between the Reorganized Debtors shall be allocated on a Pro Rata basis based upon the net patient revenues of each hospital.
- Third, other than in the first six months following the Effective Date, and as to the required subsidy by Reorganized GH/Holdco to Reorganized FHA, provided for in Class 2.1.FHA of the required debt service to Bank SNB on the Reorganized FHA SNB Claim and the required guaranty and related relief required by FHA MPT, Reorganized GH/Holdco shall not subsidize Reorganized FHA.

**4.** **Establishment, Maintenance, and Increase of Reserves**

On the Effective Date, Senior Management shall establish such Reserves as it deems reasonably necessary for operational expenses and capital expenditures of the Reorganized Debtors. From time to time thereafter, Senior Management shall replenish or increase such Reserves as they in good faith deem reasonably necessary, and subject to the restrictions and requirements for funding of the Amended Joint Plan set forth in Section V.F, below, including but not limited to, as necessary, the following:

### a) Effective Date Reserve

On the Effective Date, a reserve may be established for any Administrative Claims or Priority Claims that are not yet Allowed, and for disputed Cure Payments (the "Effective Date Reserve"). The amount of the Effective Date Reserve shall be established in the sole discretion of the Reorganized Debtors and shall be adjusted as necessary to meet the needs of the Reorganized Debtors under the Amended Joint Plan.

### b) Operating Reserve

Holdco shall establish one or more operating reserves to fund the Reorganized Debtors' ongoing operations (the "Operating Reserve"). The Operating Reserve shall be deemed fully funded at $10,000,000. Except for the Second Periodic Distribution and the Third Periodic Distribution, which shall be funded as set forth in Class 3.2.GH, the Bank SNB Quarterly Distribution, as necessary, as set forth in Class 2.2.FHA and Class 2.2.GH, and except as otherwise expressly provided herein, any Cash that otherwise would be Net Distributable Cash will be used to fund the Operating Reserve in full before making any Quarterly Distributions.

### c) Revolver Reserve

As discussed in section V.F.2 below, there may be a need for the Reorganized Debtor to establish a Revolver Reserve.

### E. Settlement and Compromise of GH Claims against Bank SNB and Consolidation and Restructuring of Bank SNB Claims

As described in the Amended Joint DS, GH maintains that it has valid legal claims against Bank SNB to recover the Swept Funds, and to avoid the pre-petition foreclosure of Bank SNB's deed-of-trust lien on the Adjacent Property. GH also maintains that the GH Guaranty is an unsecured claim and that it may be avoided in whole or in part as a fraudulent conveyance. Bank SNB disagrees with each of these claims and legal positions. GH and Bank SNB have reached an omnibus agreement to compromise these claims and legal disputes, and to provide for Bank SNB's claims in Classes 2.1.FHA and 2.2.GH in connection with the restructuring of FHA and GH, subject to the rights of FHA MPT under the Intercreditor Agreement. The GH/Bank SNB Compromise is not intended to modify the rights of FHA MPT pursuant to the Intercreditor Agreement. The GH/Bank SNB Compromise consists of the following terms which supplement the treatment received by Bank SNB in Classes 2.1.FHA and 2.2.GH:

### 1. Resolution of GH/Bank SNB Disputes

The GH/Bank SNB Disputes will be resolved as follows:

i. Sweep Dispute. On the Effective Date, Bank SNB will return the full balance of the Swept Funds to Reorganized GH. Reorganized GH will waive and release any claim that it has asserted or may have under 11 U.S.C. § 553, including but not limited to any argument that the Swept Funds are not the cash collateral of Bank SNB, and all other claims it may have relating to the Swept Funds. The Swept Funds will be maintained with Bank SNB in a certificate of deposit or other interest-bearing instrument or account, which will serve as collateral for the LOC Claim (the

"LOC Collateral").  In addition, Reorganized GH will provide additional funds as necessary to fund the LOC Collateral in an amount that fully cash collateralizes (i) the full amount of the LOC Claim, (ii) any increases to the amount of the LOC, and (iii) any additional letter(s) of credit issued by Bank SNB for Reorganized GH, Reorganized FHA, or Holdco (collectively, the "LOCs").  To the extent any of the LOCs is drawn, Bank SNB will have the right immediately to liquidate the LOC Collateral to the extent necessary to satisfy its claims on the LOCs.  To the extent the LOCs are not drawn, and upon Reorganized GH, Reorganized FHA, and/or Holdco fully replacing the LOCs through another banking institution or fully retiring the LOCs, Bank SNB will release the LOC Collateral and its security interest therein, and Holdco will be entitled to the LOC Collateral as well as any interest accrued thereon.  In consideration for the pledge of the Swept Funds to secure the LOCs and the other terms and provisions of the Amended Joint Plan, Bank SNB will agree to extend a revolving line of credit, as provided in section V.E.2 below. If, at the maturity of the Reorganized FHA SNB Claim and the Reorganized GH SNB Claim, either of the LOCs remain outstanding, Holdco shall replace the outstanding LOC.

     ii.       Foreclosure Dispute.  On the Effective Date, Reorganized GH will waive and release any claims that it has asserted or may have relating to the Foreclosure Dispute.  On the Effective Date, Bank SNB and Reorganized GH will enter into an agreement in form acceptable to Bank SNB (the "Option Agreement") granting to Reorganized GH an exclusive option to purchase the Adjacent Property (the "Option"), which said Option must be exercised no later than two years from the date of the Option Agreement.  The consideration paid for the Option will be $2 million (the "Option Price"), which Reorganized GH shall pay in cash on the Effective Date or in monthly installments in the amount of $48,826 per month beginning on the ninety-first day after the Effective Date.  GH may pay the unpaid balance of the Option Price at any time during the Option's term without penalty.  As long as no uncured default exists under the Reorganized FHA SNB Claim, Reorganized GH SNB Claim or the Option Agreement, and upon payment of the Option Price in full to Bank SNB, Reorganized GH may exercise the Option to purchase the Adjacent Property for the total purchase price of $2,343,640, which consists of the Option Price paid plus an additional cash payment of $343,640 (the "Option Purchase Price").  Reorganized GH will be responsible for and shall pay all property tax, maintenance, security, and other costs associated with the Adjacent Property (collectively, the "Maintenance Costs") during the Option's term, and agrees to indemnify and hold harmless Bank SNB for, from, and against any such Maintenance Costs.  In the event that Reorganized GH elects to exercise the Option, the monthly Option Price payments, but not payments of the Maintenance Costs, will be credited against the Option Price and the overall Option Purchase Price.  In the event of an uncured default under the Reorganized FHA SNB Claim, Reorganized GH SNB Claim or the Option Agreement, or in the event that Reorganized GH does not exercise the Option prior to the expiration of the Option's term, the Option will be deemed automatically terminated without further action or notice by Bank SNB, and Bank SNB will be entitled to retain all of the payments made under the Option Agreement up to and including the termination date but will not have further recourse against Reorganized GH for any unpaid balance of the Option Price.

     Neither the Option Purchase Price nor any payments of the Option Price shall reduce the balance of the Restructured Bank SNB Loan.

     If Reorganized GH exercises the Option and purchases the Adjacent Property, the Adjacent Property will secure the Reorganized GH SNB Claim pursuant to a deed of trust in favor of Bank SNB.  Reorganized GH will be entitled to a release of the deed of trust upon the payment to Bank

SNB of 25% of the net proceeds from the sale of the Adjacent Property in excess of the Option Purchase Price, which payment will be applied to the Reorganized GH SNB Claim. In the event of a "double escrow" of title to the Adjacent Property to (i) Reorganized GH pursuant to the Option Agreement and (ii) a buyer of the Adjacent Land from Reorganized GH, 25% of the net sales proceeds above the Option Purchase Price will be paid to Bank SNB and applied to the Reorganized GH SNB Claim.

iii.    Guaranty Disputes. On the Effective Date, GH will waive and release any claims or defenses that it has asserted or may have relating to the GH Guaranty, including but not limited to any claim that the GH Guaranty, in whole or in part, is an avoidable fraudulent transfer under 11 U.S.C. § 544 and 548, or other applicable law; or that the GH Guaranty is an unsecured obligation.

## 2.    New Revolving Line of Credit

On the Effective Date, Bank SNB will extend a new revolving line of credit in the amount of $750,000 to Holdco and the Reorganized Debtors (the "Revolver"). The Revolver will be secured by all of the assets of Holdco, the Reorganized Debtors, and GH-41, including the Swept Funds, and will be documented pursuant to definitive loan and security documents acceptable to Bank SNB. The Revolver will bear interest at the rate of 8.75% per annum, payable monthly as principal and interest. Any draws on the Revolver will be conditioned upon, and subject to, Holdco's compliance with borrowing base certificate requirements and other covenants described generally in the Amended Joint DS. The Revolver will mature on the last day of the twelfth (12th) month following the Effective Date. If the Revolver is not renewed or extended by Bank SNB, the balance, if any, of the Revolver on the maturity date will convert to term debt, amortized and payable over 24 months of principal and 8.75% simple, annual interest.

## 3.    Pre-payment Option

Holdco and the Reorganized Debtors will have the option to prepay the Reorganized FHA SNB Claim and the Reorganized GH SNB Claim at any time. If, within 18 months after the Effective Date, the Reorganized FHA SNB Claim, the Reorganized GH SNB Claim, and the Revolver are all paid in full; and if, within 18 months after the Effective Date, the LOC Claim has been extinguished, fully satisfied, and/or paid in full, then the combined principal balance of the Reorganized FHA SNB Claim and the Reorganized GHS SNB Claim will be discounted by $1,500,000.

## F.    Funding for the Amended Joint Plan

The Amended Joint Plan will be funded, including for purposes of making required Effective Date payments, establishment of Reserves, payment of Allowed Claims, and funding the day-to-day operations of Holdco and the Reorganized Debtors, through the application and use of any of the following sources of funding. All Distributable Cash shall be used to fund the Amended Joint Plan Distributions as provided in the Amended Joint Plan.

## 1.    Operational Cash Flows and Distributable Cash

During the term of this Amended Joint Plan, all cash generated from the operation of the businesses of the Reorganized Debtors shall be applied to the following obligations, in this order: a)

making required Effective Date payments; b) satisfying ordinary operating expenses of Holdco and the Reorganized Debtors; c) making required payments to Bank SNB; and, e) establishing, replenishing, or increasing Reserves. Any surplus of cash after satisfying the foregoing obligations shall be deemed "Distributable Cash."

### 2. Swept Funds

To the extent all LOCs are replaced through another banking institution, fully retired, or otherwise satisfied without being drawn as set forth in section V.E, above, and subject to the Revolver Reserve as defined below, Reorganized GH will use the Swept Funds returned to it by Bank SNB to fund the Amended Joint Plan, by application to the following obligations, in this order: a) making required Effective Date payments; b) satisfying ordinary operating expenses of Holdco and the Reorganized Debtors; c) making required payments to Bank SNB; and d) establishing, replenishing, or increasing Reserves.

To the extent the Revolver has not been retired and paid in full when all LOCs are replaced, fully retired, or otherwise satisfied without being drawn as set forth herein, Reorganized GH shall reserve from the Swept Funds the sum of $750,000 plus accrued unpaid interest, fees and expenses (the "Revolver Reserve"), which shall secure repayment of all amounts due and owing under the Revolver. Once the Revolver has been retired and paid in full, the Revolver Reserve may be used by Reorganized GH as Swept Funds consistent with the uses described in this section.

Any surplus of cash after satisfying the foregoing obligations and conditions shall be deemed "Distributable Cash."

### 3. Net Assets of the GH 409A Plans

On or before the Effective Date, and from time to time thereafter during the term of this Amended Joint Plan, GH or Reorganized GH may cause the Net GH 409A Proceeds to be withdrawn to fund the Amended Joint Plan. The Net GH 409A Proceeds shall be used to fund the Amended Joint Plan and each participant with a vested claim pursuant to the GH 409A Plans, which claim is enforceable under applicable non-bankruptcy law, shall have an Allowed General Unsecured Claim in the amount of the value of his or her such claim, which shall be treated under the terms of Class 3.2.GH of this Amended Joint Plan.

Net GH 409A Proceeds shall be applied to the following obligations, in this order: a) making required Effective Date payments; b) satisfying ordinary operating expenses of Holdco and the Reorganized Debtors; c) making required payments to Bank SNB; and d) establishing, replenishing, or increasing Reserves. Any surplus of Net GH 409A Proceeds after satisfying the foregoing obligations shall be deemed "Distributable Cash."

### 4. New Value Election

All cash generated from New Value Election offered in section V.A.4.c shall be applied to the following obligations, in this order: a) making required Effective Date payments; b) satisfying ordinary operating expenses of Holdco and the Reorganized Debtors; c) making required payments to Bank SNB; and d) establishing, replenishing, or increasing Reserves. Any surplus of cash after satisfying the foregoing obligations shall be deemed "Distributable Cash."

### 5. Distributable Real Estate Proceeds

From and after the Effective Date, and on such terms as the Holdco Board may find reasonable, and in compliance with the terms of the GH/Bank SNB Compromise, GH may cause the Adjacent Property or the Peoria Property to be sold, the proceeds of which shall be applied to the following obligations, in this order: a) satisfying ordinary operating expenses of Holdco and the Reorganized Debtors; b) making required payments to Bank SNB; and c) establishing, replenishing, or increasing Reserves. Any surplus of the proceeds of sale of such real estate after satisfying the foregoing obligations shall be deemed "Distributable Real Estate Proceeds."

### 6. Distributable Net Refinancing Proceeds

To the extent that Holdco or the Reorganized Debtors obtain new financing to satisfy the Reorganized FHA SNB Claim, Reorganized GH SNB Claim, and there are excess proceeds of such a refinancing transaction, such excess proceeds shall be applied to the following obligations, in this order: a) satisfying ordinary operating expenses of Holdco and the Reorganized Debtors; and b) establishing, replenishing, or increasing Reserves. Any surplus of the proceeds of such a refinancing transaction after satisfying the foregoing obligations shall be deemed "Distributable Net Refinancing Proceeds." Distributable Net Refinancing Proceeds shall be distributed *pro rata* based upon the value attributed to Reorganized FHA and Reorganized GH in the refinancing transaction to the FHA Liquidating Trust and the GH USC Trust, for distribution to satisfy the Allowed General Unsecured Claims in Class 3.1.FHA and Class 3.2.GH

### 7. Enterprise Liquidation Proceeds

To the extent that Holdco or the Reorganized Debtors enter into one or more transactions whereby all or substantially all of the equity or assets of Holdco or either Reorganized Debtor is sold, the proceeds of such transaction or transactions shall be deemed "Enterprise Liquidation Proceeds," and shall be applied to the following obligations, in this order: a) payment of any transactional costs, including attorney fees and costs and commissions; b) satisfaction of any Allowed Secured Claim or other lien on the assets being sold; c) satisfaction of all indebtedness to Bank SNB); d) satisfaction of any ordinary operating expenses or liabilities not assumed by the buyer and that relate to the assets or equity being sold; e) satisfying ordinary operating expenses of Holdco or either Reorganized Debtor; f) establishing, replenishing, or increasing Reserves; and g) satisfaction of Allowed General Unsecured Claims in Class 3.1.FHA and Class 3.2.GH, "Distributable Enterprise Liquidation Proceeds". Distributable Enterprise Liquidation Proceeds shall be distributed *pro rata* based upon the value attributed to Reorganized FHA and Reorganized GH in the refinancing transaction to the FHA Liquidating Trust and the GH USC Trust, for distribution to satisfy the Allowed General Unsecured Claims in Class 3.1.FHA and Class 3.2.GH

Any surplus Enterprise Liquidation Proceeds shall be retained or distributed by Reorganized FHA or Holdco, as applicable, to holders of their membership interests.

### G. Establishment of the FHA Liquidating Trust

On or prior to the Effective Date, FHA shall execute the FHA Trust Agreement to establish the FHA Liquidating Trust, consisting of the FHA Trust Assets. The FHA Trust Agreement shall appoint the FHA Liquidating Trustee, who shall administer the FHA Liquidating Trust for the benefit of the FHA Beneficiaries.

The FHA Liquidating Trust shall be created and administered solely to implement the Amended Joint Plan. The FHA Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes and the FHA Liquidating Trustee shall operate and maintain the FHA Liquidating Trust in compliance with the guidelines for liquidating trusts as set forth in Internal Revenue Service Revenue Procedure 94-45, 1994-2 C.B. 684, and Treasury Regulation Section 1.671-4(a) and all subsequent guidelines regarding liquidating trusts issued by the Internal Revenue Service. For United States federal and applicable state income tax purposes, the transfer of FHA Trust Assets to the FHA Liquidating Trust pursuant to the Amended Joint Plan shall be reported as a disposition of the FHA Trust Assets directly to and for the benefit of the FHA Beneficiaries immediately followed by a contribution of the FHA Trust Assets by the FHA Beneficiaries to the FHA Liquidating Trust for the benefit of the FHA Beneficiaries. The FHA Beneficiaries will be treated as the grantors and deemed owners of the FHA Liquidating Trust.

At the reasonable discretion of the FHA Liquidating Trustee to facilitate preserving the status of the FHA Liquidating Trust as a "grantor trust," the FHA Liquidating Trustee may establish a separate bank account for the FHA Liquidating Trust to hold the proceeds of the liquidation of FHA Trust Assets, but may as appropriate transfer such funds for the purpose of making distributions to the FHA Beneficiaries or paying necessary expenses of administration of the FHA Liquidating Trustee.

To the full extent permitted by law, all rights of the FHA Estate under Section 365 of the Bankruptcy Code (including without limitation Section 365(f) thereof) are preserved for the benefit of the FHA Beneficiaries, and may be exercised by the FHA Liquidating Trustee with the approval of the Bankruptcy Court.

Pursuant to §§ 1123(a)(5)(B), 1123(b)(3)(B), 1141, and 1145 of the Bankruptcy Code, the Confirmation Order shall authorize the establishment of the FHA Liquidating Trust, the appointment of the FHA Liquidating Trustee, the issuance of the beneficial interests therein, and shall authorize and direct FHA and Holdco to take all actions necessary to consummate the FHA Trust Agreement and to establish the FHA Liquidating Trust, including the transfer of the FHA Trust Assets to the FHA Liquidating Trust. Prior to the Effective Date, the terms and provisions of the FHA Trust Agreement shall be submitted to the Bankruptcy Court by the Plan Proponents and shall be subject to approval of the Bankruptcy Court.

The initial FHA Liquidating Trustee shall be Carolyn Johnson (subject to her consent and the approval of Bank SNB) or such other person as may be appointed by Holdco as of the Effective Date. Holdco shall have authority to appoint a successor FHA Liquidating Trustee should the initial FHA Liquidating Trustee resign or be terminated prior to fully administering the assets of the FHA Liquidating Trust.

The FHA Liquidating Trustee shall take such actions as are required under the FHA Trust Agreement and may make such determinations and take such actions as are permitted thereunder. As soon as practicable after the Effective Date, or following the transfer of the FHA Trust Assets after the Effective Date, the FHA Liquidating Trustee may, if reasonably deemed necessary by the FHA Liquidating Trustee, make a good faith valuation of the FHA Trust Assets, or cause a good faith valuation of the FHA Trust Assets to be made by such professionals as the FHA Liquidating Trustee may, in its sole discretion, retain for such purposes. Such valuation shall be made available from time to time to the extent relevant as reasonably determined by the FHA Liquidating Trustee

and shall be used consistently by all parties (including the Reorganized Debtors, the FHA Liquidating Trustee, and the FHA Beneficiaries) for all purposes, including federal and applicable state income tax purposes. Notwithstanding the foregoing, any such valuation shall not be binding upon the FHA Liquidating Trustee with respect to liquidation of assets or any other action taken pursuant to the Plan.

The FHA Liquidating Trustee shall be entitled to compensation for services rendered as set forth in the FHA Trust Agreement. The FHA Liquidating Trustee shall be entitled to reimbursement from the FHA Liquidating Trust for actual and reasonable out-of-pocket expenses incurred, and any dispute over such reimbursement shall be subject to review by the Bankruptcy Court. Except as provided in the FHA Trust Agreement, the FHA Liquidating Trustee shall be entitled to indemnification from the FHA Liquidating Trust for any loss, claims, or damages occasioned by the FHA Liquidating Trustee in the good faith performance of his or her rights, powers and duties hereunder and under the FHA Trust Agreement. Except as provided in the FHA Trust Agreement or applicable law, the FHA Liquidating Trustee will not be liable for any act or omission, except to the extent that the act or omission is determined by a court of competent jurisdiction to be the result of gross negligence, fraud, or willful misconduct (this limitation on liability applies equally to the agents, employees, and professionals acting behalf of the FHA Liquidating Trustee or the FHA Liquidating Trust).

## H.     Establishment of GH USC Trust

On or prior to the Effective Date, GH shall execute the GH Trust Agreement to establish the GH USC Trust and appoint the GH USC Trustee, who shall administer the GH USC Trust.   The GH USC Trust shall be created and administered solely to implement the Amended Joint Plan.

The GH USC Trust is intended to qualify as a "grantor trust" for federal income tax purposes and the GH USC Trustee shall operate and maintain the GH USC Trust in compliance with the guidelines for liquidating trusts as set forth in Internal Revenue Service Revenue Procedure 94-45, 1994-2 C.B. 684, and Treasury Regulation Section 1.671-4(a) and all subsequent guidelines regarding liquidating trusts issued by the Internal Revenue Service. For United States federal and applicable state income tax purposes, the transfer of assets to the GH USC Trust shall be reported as a disposition of trust assets directly to and for the beneficiaries of the GH USC Trust. The beneficiaries of the GH USC Trust will be treated as the grantors and deemed owners of the GH USC Trust.

At the reasonable discretion of the GH USC Trustee to facilitate preserving the status of the GH USC Trust as a "grantor trust," the GH USC Trustee may establish a separate bank account for the GH USC Trust to hold the proceeds of the trust assets, but may as appropriate transfer such funds for the purpose of making distributions or paying necessary expenses of administration of the GH USC Trust.

Pursuant to §§ 1123(a)(5)(B), 1123(b)(3)(B), 1141, and 1145 of the Bankruptcy Code, the Confirmation Order shall authorize the establishment of the GH USC Trust, the appointment of the GH USC Trustee, the issuance of the beneficial interests therein, and shall authorize and direct GH and Holdco to take all actions necessary to consummate the GH Trust Agreement and to establish the GH USC Trust. Prior to the Effective Date, the terms and provisions of the GH USC Trust

Agreement shall be submitted to the Bankruptcy Court by the Plan Proponents and shall be subject to approval of the Bankruptcy Court.

Except as provided in the GH Trust Agreement, the GH USC Trustee shall be entitled to indemnification from the GH USC Trust for any loss, claims, or damages occasioned by the GH USC Trustee in the good faith performance of his or her rights, powers and duties hereunder and under the GH USC Trust Agreement. Except as provided in the GH USC Agreement or applicable law, the GH USC Trustee will not be liable for any act or omission, except to the extent that the act or omission is determined by a court of competent jurisdiction to be <u>the result of gross negligence, fraud, or willful misconduct (this limitation on liability applies equally to the agents, employees, and professionals acting behalf of the GH USC Trustee or the GH USC Trust.</u>

## I.  Consummation of the Amended Joint Plan

Upon the satisfaction of all Allowed Claims pursuant to this Amended Joint Plan, the Amended Joint Plan shall be deemed fully consummated. Thereafter, any restrictions placed by this Amended Joint Plan upon distributions to holders of membership interests in Holdco or the Reorganized Debtors, or upon the exercise of voting rights by the holders of such membership interests, shall be of no further force or effect.

## VI.  CLAIMS

### A.  Objections and Deadlines

An objection to a Claim must be filed and served by the deadline for such objections set by order of the Bankruptcy Court. Any party in interest may file an objection to a Claim, but the primary responsibility for objecting to claims shall be with the GH USC Trustee, the FHA Liquidating Trustee, and Reorganized GH.

### B.  Settlement of Claims

Settlement of any objection to a Claim whereby the resulting Allowed Claim would not exceed $5,000 shall be permitted on the 11th day after notice of the settlement has been provided to the Reorganized Debtors, the settling party, and other persons specifically requesting such notice, and if on such date there is no written objection filed, whereupon such settlement shall be deemed approved.

In the event that a settlement of any claim objection is proposed by the GH USC Trustee, the FHA Liquidating Trustee, or Reorganized Debtors, reasonable, good-faith efforts will be exercised to reach accord between Reorganized Debtors, the GH USC Trustee, and the FHA Liquidating Trustee as to such settlement terms. In the event that agreement cannot be reached, the party proposing the contested settlement will be obligated to seek approval of the Bankruptcy Court for the proposed settlement, and the party opposing the settlement will have an opportunity to object. The settlement shall be effective upon the entry of a Final Order resolving the objection to the settlement.

Notwithstanding any of the foregoing provisions of this Section B, the Reorganized Debtors shall not have the power to compromise the two respective Trustee's rights in avoidance actions

against a Claimant, without first obtaining the consent of the respective Trustee whose rights would be so impaired by such settlement.

### C.      Calculation and Payment of Pro Rata Distributions

If the Amended Joint Plan provides for a distribution Pro Rata to holders of Claims in a particular Class or group of Classes, the amount potentially distributable to each holder shall be determined by prorating the payment due among all Allowed Claims and the estimated or reserved value of Disputed Claims. The GH USC Trustee or the FHA Liquidating Trustee shall make the distributions so calculated to holders of Allowed Claims and shall not make the distributions so calculated to holders of Disputed Claims.

### D.      Penalties and Fines

Except as specifically provided by order of the Bankruptcy Court, no distribution shall be made on account of any fine, penalty, exemplary or punitive damages, late charges, or other monetary charges relating to or arising from any default or breach by FHA or GH, and any Claim on account thereof shall be treated hereunder as such and disallowed to the extent of such fine, penalty, exemplary or punitive damages, late charges, or other default-related charge, whether or not an objection is filed to it.

### E.      Leases and Executory Contracts

Both FHA and GH are, or may be, a party to and/or beneficiary of several executory contracts relating to the provision of goods and/or services, and unexpired equipment leases as identified in Schedule G as amended of the FHA Bankruptcy and GH Bankruptcy respectively (the "Contracts"). As discussed above, there are some Contracts where neither Debtor is a party; rather, Visionary, an entity established by Dr. Johns to manage both FHA and GH, is the entity which signed the Contract. The Debtors are in the process of analyzing and evaluating which of the Contracts should be assumed and which it should rejected as authorized by the Bankruptcy Code. GH estimates that FHA will have up to $500,000 in Cure Payments due under assumed Contracts on the Effective Date and GH will have $412,150 in Cure Payments due under assumed Contracts on the Effective Date. GH is working to reach stipulations with counterparties to the Contracts regarding Cure Payments.

Due to the lack of ability to negotiate contracts related to FHA until after confirmation of the Amended Joint Plan, and because until GH cannot conduct a thorough review of all Contracts of FHA and GH until the Amended Joint Plan has been confirmed, it will not be able to put together a complete list of Contracts it intends to assume until after confirmation of the Amended Joint Plan.

GH will as a condition of the Amended Joint Plan Effective Date provide a list of Contracts that both FHA and GH intend to assume with proposed cure amounts, to which all counter-parties to the contracts will receive notice and have an opportunity to object ("Effective Date Contract Notice"). This will also give Holdco, an opportunity through the Reorganized FHA and Reorganized GH to negotiate cure stipulations over time for the contracts that ultimately are kept. The Effective Date Reserve provides for the full amount of the scheduled cure amounts.

GH is party to a contract with Gilbert Emergency Medicine Specialist, LLC ("GEMS") for the provision of physician coverage for the emergency department. The GEMS Contract as amended is appended to the Amended Joint DS, and shall be assumed by GH upon confirmation of the Amended Joint Plan. GH shall also assume as amended all the Senior Management employment contracts, the term of which are included in an Exhibit to the Amended Joint DS as Exhibit and the shall assume as amended the contract for Dr. Johns to act as Chief Medical Officer, the terms of which are included in the Amended Joint DS.

GH is a party to a contract with Somerset Leasing Corp., VIII ("Somerset") that was assumed by stipulation of the parties at GH DE 764. Nothing in this Amended Joint Plan is intended to alter the terms of the assumption agreement between Somerset and GH.

The Effective Date Contract List will designate the Debtors' intentions regarding all unexpired leases and executory contracts to the extent they were not assumed or rejected prior to the date of the Effective Date Contract List. As discussed in the Amended Joint Plan, any contract not specifically assumed through the bankruptcy process or as part of the Effective Date Contract List shall be deemed rejected.

Both Debtors lease the real property on which their respective hospitals conduct operations from an MPT entity. Both Debtors have entered into Bankruptcy-Court-approved stipulations to assume their respective leases with FHA MPT and GH MPT (respectively, at FHA DE 494 and GH DE 531). Nothing in this Amended Joint Plan is intended to alter the terms of the assumption agreements between the Debtors and the MPT entities, including FHA MPT's rights under the Intercreditor Creditor.

**Any Claim arising from rejection of an unexpired lease or executory contract must be asserted in a proof of claim filed with the Court in the appropriate case within 28 days after the entry of an order approving the Effective Date Contract Notice.**

## VII. OTHER PROVISIONS

### A. Conditions Precedent to Effective Date

The Amended Joint Plan shall not become effective unless and until the following conditions have been satisfied or waived by the Plan Proponents:

(a) The Confirmation Order shall have been entered, in both the FHA Bankruptcy and the GH Bankruptcy, if a Confirmation Hearing occurs separately in the FHA Bankruptcy and GH Bankruptcy, then the Confirmation Order in the first-heard case shall be contingent upon a Confirmation Order having been entered in the second-heard case, in short, a Confirmation Order shall not be entered in either the FHA Bankruptcy or the GH Bankruptcy, unless and until the Amended Joint Plan is confirmed in both cases, and there shall be no stay or injunction that would prevent the occurrence of the Effective Date;

(b) The Confirmation Order shall authorize the Debtors and the Reorganized Debtors to take all actions necessary or appropriate to consummate the Amended Joint Plan and to enter into, implement, and effectuate the loan and security documents, contracts, instruments, releases, leases, and other agreements necessary to consummate the Amended Joint Plan;

(c)     The statutory fees owing to the United States Trustee shall have been paid in full;

(d)     All exhibits to the Plan, including those to be contained in a supplement, shall be in a form satisfactory to the Plan Proponents;

(e)     The amended organizational documents and operating agreements of Holdco and the Reorganized Debtors, in form and substance satisfactory to the Plan Proponents, shall have been filed, effected, or executed, as required;

(f)     All other actions, authorizations, consents, and regulatory approvals (if any) necessary to implement the provisions of the Plan shall have been obtained, effected, or executed in a manner acceptable to the Plan Proponents, or, if waivable, waived by the Person or Persons entitled to the benefit thereof;

(g)     The FHA Trust Agreement, in form and substance satisfactory to the Plan Proponents, shall have been entered into by all parties thereto, and the FHA Liquidating Trust shall have been created thereunder;

(h)     The GH USC Trust Agreement, in form and substance satisfactory to the Plan Proponents and the GH Committee, shall have been entered into by all parties thereto, and the GH USC Trust shall have been created thereunder;

(i)     The Effective Date Contract Notice shall have been completed and filed;

(j)     The new equity interests in Holdco and the Reorganized Debtors shall have been duly authorized and, with the occurrence of the Effective Date, shall be validly issued and outstanding; and

(k)     The Reorganized Debtors shall have sufficient funds on hand with which to pay all Allowed Claims required to be paid on the Effective Date, except to the extent that Claimants have agreed to less favorable treatment.

## B.     Retention of Jurisdiction

The Bankruptcy Court will retain jurisdiction to insure that the purposes and intent of the Amended Joint Plan are carried out. To insure efficient adjudication of any issues raised under the Bankruptcy Court's retention of jurisdiction contained herein, any party in interest will bring any issues related to the purposes and intent of the Amended Joint Plan in front of the Bankruptcy Judge assigned to the lowered numbered Bankruptcy Case, i.e., the FHA Bankruptcy. Without limiting the generality of the foregoing, the Bankruptcy Court will retain jurisdiction, until the Amended Joint Plan is fully consummated, for the following purposes:

### 1.     Claims Determination

The Bankruptcy Court shall retain jurisdiction to determine the classification, allowance, subordination, and liquidation of Claims (including Administrative Claims) and Interests, and the reexamination of Allowed Claims for purposes of determining acceptances at the time of Confirmation, and the determination of such objections as may be filed. The failure by the Debtors to object to or to examine any Claim for the purpose of determining acceptance of the Amended Joint Plan shall not be deemed to be a waiver of any right to object to or reexamine any Claim in whole or in part.

### 2.     Estate Assets

The Bankruptcy Court shall retain jurisdiction to determine all questions and disputes regarding title to the assets of both FHA/Reorganized FHA and GH/Reorganized GH, and all causes of action, controversies, disputes, or conflicts, known or unknown, whether or not subject to action pending as of the Confirmation Date, between Reorganized FHA or Reorganized GH and

any other Person, including but not limited to such Reorganized Debtor's right to recover assets, avoid transfers, recover fraudulent transfers, offset claims, recover money or property from any Person, or return assets which were or are the property of the Bankruptcy Estates as defined in the Bankruptcy Code.

### 3. Executory Contracts

The Bankruptcy Court may determine all matters relating to the assumption, assignment, or rejection of executory contracts and unexpired leases, including claims for damages from the rejection of any executory contract or unexpired lease.

### 4. Unliquidated Claims

The Bankruptcy Court may liquidate or estimate damages or determine the manner and time for such liquidation or estimation in connection with any Contingent, Disputed, or Unliquidated Claims.

### 5. Plan Corrections

The Bankruptcy Court may authorize the correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in the Amended Joint Plan, the Confirmation Order, or any and all documents executed or to be executed in connection therewith, as may be necessary to carry out the purposes and the intent of the Amended Joint Plan, on such notice as the Bankruptcy Court shall determine to be appropriate.

### 6. Plan Modifications

The Bankruptcy Court shall have jurisdiction to authorize a modification of the Amended Joint Plan after Confirmation pursuant to the Bankruptcy Rules and the Bankruptcy Code.

### 7. Adversary Proceedings

The Bankruptcy Court may adjudicate all claims, controversies, contested matters, or adversary proceedings arising out of any purchases, sales, agreements, or obligations made or undertaken by and between a Debtor and any other Person during the pendency of the FHA Bankruptcy or the GH Bankruptcy, and such jurisdiction shall continue after the closing of these cases.

### 8. Plan Interpretation

The Bankruptcy Court may enforce and interpret the terms and conditions of the Amended Joint Plan and all controversies and disputes that may arise in connection with the enforcement, interpretation, or consummation of the Amended Joint Plan.

### 9. Deadlines

The Bankruptcy Court may shorten or extend, for cause, the time fixed for doing any act or thing under the Amended Joint Plan, on such notice as the Bankruptcy Court shall determine to be appropriate.

### 10. Enforcement of Discharge; Other Injunctive Relief

The Bankruptcy Court may enter any order, including injunctions, necessary to enforce the title, rights, and powers of the Reorganized Debtors and the FHA Liquidating Trustee, and to impose such limitations, restrictions, terms, and conditions on such title, rights, and powers as the Bankruptcy Court may deem appropriate.

### 11.    Additional Matters

The Bankruptcy Court may determine such other matters as may be provided in the Confirmation Order or as may be authorized under the Bankruptcy Code.

### 12.    Case Closing

The Bankruptcy Court may enter a final decree closing the FHA Bankruptcy or the GH Bankruptcy at any time after substantial consummation of the Amended Joint Plan.  Unless otherwise ordered by the Bankruptcy Court, the closing of the case shall not affect the Bankruptcy Court's jurisdiction of any adversary proceeding or contested matter and shall not limit the Bankruptcy Court's reserved jurisdiction under this Amended Joint Plan or under the Bankruptcy Code or other applicable statute.

### C.    Modification of the Plan

In addition to the modification rights under Section 1127 of the Bankruptcy Code, the Plan Proponents may propose amendments to, or modifications of, this Amended Joint Plan at any time prior to entry of the Confirmation Order, with leave of the Bankruptcy Court, upon such notice as may be prescribed by the Bankruptcy Court. After entry of the Confirmation Order, the Plan Proponents may, with the approval of the Bankruptcy Court, and so long as it does not materially or adversely affect the interest of creditors, cure any omission, correct any defect, or reconcile any inconsistencies in the Amended Joint Plan, the Confirmation Order, or any and all documents executed or to be executed in accordance therewith, in such manner as may be necessary to carry out the purposes and intent of this Amended Joint Plan.

### D.    Conditions to Confirmation and Occurrence of the Effective Date

#### 1.    Confirmation

It shall be a condition to confirmation of this Amended Joint Plan that the Amended Joint Plan be confirmed in both the GH Bankruptcy and the FHA Bankruptcy.

#### 2.    Effective Date

Notwithstanding satisfaction of the condition specified above, it shall be a condition to the occurrence of the Effective Date of the Amended Joint Plan in both the GH Bankruptcy and the FHA Bankruptcy that GH shall be satisfied in its discretion with the results of its legal, accounting, and regulatory due diligence investigations. The parties shall use their commercially reasonable efforts to take or cause to be taken all such actions required to consummate the transactions contemplated hereby including, without limitation, such actions as may be necessary to obtain, prior to the occurrence of the Effective Date, all necessary governmental or other third party approvals and consents required to be obtained by each party in connection with the consummation of the transactions contemplated by this Amended Joint Plan.

### E.    Effect of Confirmation

#### 1.    Discharge of Claims

Except as otherwise provided in the Amended Joint Plan or the Confirmation Order, entry of the Confirmation Order acts as a discharge, effective as of the Effective Date, of any and all debts, obligations, liabilities, Claims, and Interests, whether contingent or otherwise, of GH and FHA that arose at any time before the Effective Date, pursuant to Section 1141(d)(1) of the

Bankruptcy Code. The discharge of GH and FHA shall be effective as to each Claim and Interest, regardless of whether a proof thereof was filed, whether or not the Claim or Interest is Allowed, or whether the holder thereof voted to accept the Amended Joint Plan.

## 2. Vesting of Assets in the Reorganized Debtors

Except as otherwise provided in the Amended Joint Plan or the Confirmation Order, entry of the Confirmation Order shall vest in the applicable Reorganized Debtor, as of the Effective Date, all assets acquired or retained by it pursuant to this Amended Joint Plan, free and clear of all liens, claims, and encumbrances, with the exception that FHA MPT and GH MPT shall retain all of their respective liens and security interests under the leases and all related documents, including, without limitation, interests in security deposits and reserves, and liens and security interests granted to FHA MPT by FHA pursuant to the security agreement executed in accordance with the lease and the Intercreditor Agreement.

## 3. Plan-Based Injunction

From and after the Effective Date, all Claims against and Interests in the Debtors shall be treated under the terms of this Amended Joint Plan. The Holder of any Claim that is non-dischargeable under 11 U.S.C. § 1141(d)(6) shall not have any right to collect or enforce any right or remedy against the Reorganized Debtors or assets of the Reorganized Debtors during the term of the Amended Joint Plan. Specifically, during the term of the Amended Joint Plan, distributions on account of Allowed Claims are limited to the provisions of the Amended Joint Plan.

## 4. Exculpation of Plan Proponents and Others

Neither the Debtors, the Reorganized Debtors, Holdco, the FHA Committee, the GH Committee, Bank SNB, the FHA Liquidating Trustee, the GH USC Trustee, nor any of their respective members, officers, directors, agents, financial advisors, attorneys, employees, equity holders, partners, affiliates, and representatives (the "Exculpated Parties") shall have or incur any liability to any holder of a Claim or an Interest or any other Person for any act or omission in connection with, related to, or arising out of, the FHA Bankruptcy, the GH Bankruptcy, the Amended Joint Plan, the pursuit of confirmation of the Amended Joint Plan, the consummation of the Amended Joint Plan, the administration of the Amended Joint Plan, or the property to be distributed under the Amended Joint Plan, except for (i) any express contractual obligation owing by any such Person or (ii) willful misconduct or gross negligence, as determined by a Final Order, and, in all respects, the Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Amended Joint Plan; *provided, however*, that nothing in the Amended Joint Plan shall, or shall be deemed to, release the Exculpated Parties, or exculpate the Exculpated Parties with respect to, their respective obligations or covenants arising pursuant to this Amended Joint Plan.

## F. Releases

## 1. Debtors' Release of Bank SNB

Except with respect to Bank SNB's obligations under this Amended Joint Plan, on the Effective Date Bank SNB and its present and former directors, shareholders, officers, employees, agents, representatives, attorneys, successors, assigns, and affiliates (collectively, the "Bank Released Parties") will be fully released and discharged from any and all actions, causes of action, claims, debts, damages, demands, liabilities, obligations, suits, and expenses of any and every character, now known or unknown, which any of the Debtor Released Parties, as defined below,

have asserted or could yet assert against the Bank Released Parties based on or related to any event or transaction occurring or existing prior to entry of the Confirmation Order.

### 2. Bank SNB's Release of Debtors

Except with respect to the obligations of the Debtors, the Reorganized Debtors, Holdco, and GH-41 (the "Debtor Released Parties") under this Amended Joint Plan, on the Effective Date the Debtor Released Parties and their present and former directors, shareholders, officers, employees, agents, representatives, attorneys, successors, assigns, and affiliates will be fully released and discharged from any and all actions, causes of action claims, debts, damages, demands, liabilities, obligations, suits, judgments, executions, and expenses of any and every character, now known or unknown, which any of the Bank Released Parties have or could assert against the Debtor Released Parties based on or related to any event or transaction occurring or existing prior to entry of the Confirmation Order. Notwithstanding any language to the contrary set forth herein, this release shall not impact, in any way, any third-party guaranty of any debt owed to Bank SNB by GH or FHA.

## G. Administrative Claims Bar Date

All Administrative Claims in both the FHA Bankruptcy and GH Bankruptcy shall be filed no later than 30 days following the Effective Date.

## H. Miscellaneous

### 1. Time of the Essence

Time is of the essence in the interpretation and enforcement of this Amended Joint Plan. Without limiting the generality of such statement, the rights provided hereunder are intended to expire immediately upon the expiration of the period provided for herein, and are intended not to be extended under Sections 362 or 105 of the Bankruptcy Code for any reason.

### 2. Headings

The headings used in the Amended Joint Plan are inserted for convenience only and shall not affect the interpretation of the Amended Joint Plan.

### 3. Exemption from Transfer Taxes

Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Amended Joint Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Amended Joint Plan, shall not be subject to, or give rise to, any stamp, real estate transfer, mortgage recording, or other similar tax.

### 4. Notices

All notices, requests, or demands for payment provided for in the Amended Joint Plan shall be in writing and shall be deemed to have been delivered when personally delivered by hand, or deposited in any general or branch post office of the United States Postal Service, or received by telecopy. Notices, requests, and demands for payment prior to the Effective Date shall be addressed to the attention of the Plan Proponents and sent postage prepaid or delivered to:

| Gilbert Hospital, LLC | Bank SNB |
|---|---|
| c/o Bryan Hargis, CEO<br>5656 South Power Road<br>Gilbert, AZ 85295 | c/o Rick Thompson, Senior Vice President<br>5950 Berkshire Lane, Suite 350<br>Dallas, Texas 75225 |
| With copies to:<br><br>Daniel E. Garrison, Esq.<br>Jessica Kenney Bonteque, Esq.<br>Andante Law Group, PLLC<br>4110 North Scottsdale Road, Suite 330<br>Scottsdale, Arizona 85251 | With copies to:<br><br>Bryce A. Suzuki, Esq.<br>Kyle S. Hirsch, Esq.<br>Bryan Cave LLP<br>Two North Central Avenue, Suite 2200<br>Phoenix, Arizona 85004-4406 |

On or after the Effective Date, such notices, requests, and demands for payment shall be addressed the attention of the GH USC Trustee or the FHA Liquidating Trustee as provided in the Confirmation Order. The addresses provided for above may be changed, at any time and from time to time, by a notice filed with the Bankruptcy Court in these proceedings.

### 5. Confirmation without Acceptance of all Classes

GH and Bank SNB will request the Bankruptcy Court to confirm the Amended Joint Plan notwithstanding the rejection of the Amended Joint Plan by an impaired Class, pursuant to the provisions of 11 U.S.C. § 1129(b) of the Bankruptcy Code.

RESPECTFULLY SUBMITTED this 18th day of August, 2015.

**ANDANTE LAW GROUP, PLLC**

By: */s/ Daniel E. Garrison (021495)*
      Daniel E. Garrison
      Jessica Kenney Bonteque
      *Attorneys for Gilbert Hospital, LLC*

**BRYAN CAVE LLP**

By: */s/ Bryce A. Suzuki (022721)*
      Bryce A. Suzuki
      Kyle S. Hirsch
      *Attorneys for Bank SNB, an Oklahoma state banking corporation, successor by conversion to Bank SNB, National Association, formerly known as Stillwater National Bank and Trust*