David D. Cleary (AZ Bar No. 011826)
GREENBERG TRAURIG, LLP
2375 East Camelback Road, Suite 700
Phoenix, AZ 85016
Telephone: 602-445-8000
Fax: 602-445-8100
Email: clearyd@gtlaw.com

Lenard Parkins (NY Bar No. 4579124) *(pro hac vice)*
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, NY 10166
Tel.: (212) 801-9200
Fax: (212) 801-6400
Email: parkinsl@gtlaw.com

and

1000 Louisiana, Suite 1700
Houston, TX 77002
Tel.: (713) 374-3500
Fax: (713) 374-3505
Email: parkinsl@gtlaw.com

and

Karl Burrer (TX Bar No. 24043584) *(pro hac vice)*
GREENBERG TRAURIG, LLP
1000 Louisiana, Suite 1700
Houston, TX 77002
Tel.: (713) 374-3500
Fax: (713) 374-3505
Email: burrerk@gtlaw.com

*Attorneys for Blue Wolf Capital Fund III, L.P.*

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re: | Chapter 11 |
| FLORENCE HOSPITAL AT ANTHEM, LLC, | Case No.: 4:13-bk-03201-BMW |
| Debtor. | **HEARING MEMORANDUM FILED BY BLUE WOLF CAPITAL FUND III, L.P.** |

HOU 408796983v6

Blue Wolf Capital Partners, III, L.P. ("Blue Wolf") hereby files this Hearing Memorandum (the "Memorandum") pursuant to the Evidentiary Hearing Scheduling Order [Dkt No. 1534] and respectfully states as follows:

### Introduction[1]

Florence Hospital at Anthem, LLC (the "Debtor") was an Arizona limited liability company (an "LLC") governed by Arizona law. Dr. Timothy Johns was the Debtor's sole manager. Through both affirmative misrepresentations and omissions of material fact, the Debtor induced Blue Wolf to pursue an acquisition of the Debtor's assets. The misrepresentations continued throughout negotiation of three key agreements between Blue Wolf and the Debtor.

Blue Wolf spent hundreds of thousands of dollars negotiating and entering into the Blue Wolf LOI and the Bid Procedures Order, performing diligence, and ultimately, entering into the Blue Wolf APA. Only after completing these agreements did the Debtor's sole manager declare, under penalty of perjury, that the economic terms of the Blue Wolf acquisition—which were *purportedly accepted and agreed to* by the Debtor as a prudent exercise of its business judgment in pursuit of the Bid Procedures Order—were *never presented to, or approved by,* the Debtor's manager and/or its members.

Based on the damages caused by the Debtor's negligent and/or fraudulent representations and omissions in this case, the Court should grant Blue Wolf's request for allowance of its administrative claim.

### Arguments and Authorities

In the Objection, the Debtor asserts a single predicate for the disallowance of the Blue Wolf Administrative Claim: that Blue Wolf did not provide a benefit to the estate. The Debtor's predicate is wrong. As explained in the Blue Wolf Response, the Blue Wolf Administrative Claim is based on the Debtor's post-petition torts of fraudulent and/or negligent misrepresentations under Arizona law. Pursuant to 28 U.S.C. § 959 and the Supreme Court's decision in *Reading Co. v. Brown*, Blue Wolf's damages arising from and caused by the Debtor's post-petition torts are entitled to administrative priority. Consequently, the Blue Wolf Administrative Claim should be allowed.

---

[1] All otherwise undefined terms have the meanings set forth in the Joint Pre-Trial Statement (the "Pre-Trial Statement" or "PTS").

HOU 408796983v6

2

### 1.    Blue Wolf is Entitled to an Administrative Expense Claim for its Tort Damages

The Debtor had a duty to provide honest, complete, and correct information to Blue Wolf and the Court at all times through the sale process. In dereliction of these duties, and despite representing to Blue Wolf and the Court to the contrary, the Debtor's counsel and its Chief Executive Officer *never* disclosed that they failed to request or obtain the requisite corporate authority to: (i) agree to the specific terms of the Blue Wolf acquisition; (ii) prosecute its Sale Motion, (iii) enter into the Blue Wolf LOI, (iv) to seek approval of the Bid Procedures Order embodying the Blue Wolf terms, or (v) enter into the Blue Wolf APA. Separately and equally troubling, the Debtor's sole manager, received timely notice of the Debtor's various actions in furtherance of the sale process, attended a hearing before the Court in which the Court addressed the sale process, was knowledgeable that the Blue Wolf transaction with the Debtor was proceeding in Court, and *never* uttered a timely word in protest to anyone or disclosed this lack of corporate authority as the Court conducted numerous hearings leading to the entry of the Bid Procedures Order requested by the Debtor, approving Blue Wolf as the stalking horse bidder.

Blue Wolf reasonably relied on the Debtor's misrepresentations and, as a result, spent significant sums of money on diligence and the negotiation of definitive documents. Blue Wolf is a victim of post-petition torts of the Debtor and is entitled to an administrative expense for the damages caused by the Debtor's conduct under Section 959 and *Reading*.

### a.    The Debtor is Required to Comply with Applicable Law

The Supreme Court and numerous other lower courts have ruled that "Congress has repeatedly expressed its legislative determination that the trustee is not to have carte blanche to ignore non-bankruptcy law". *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.*, 474 US. 494, 502 (1986). As such, a debtor in possession's post-petition activities are not prospectively exempt from applicable non-bankruptcy law. *See id.* at 505. In Section 959(b), Congress mandated a debtor in possession "shall manage and operate the property in his possession according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof." 28 U.S.C. § 959(b). This includes compliance with state law, and unremarkably, compliance with applicable tort law. *Carter v. Rodgers*, 220 F.3d 1249, 1254 (11th Cir. 2000) (observing that "section 959(a) is intended to 'permit actions redressing torts committed in

furtherance of the debtor's business, such as the common situation of a negligence claim'") (quoting *Lebovits v. Scheffel (In re Lehal Realty Assocs.)*, 101 F.3d 272, 276 (2d Cir. 1996)).

As noted by the Ninth Circuit, courts have interpreted Section 959(b) of the United States Code to "stand for the uncontroversial proposition that a trustee must carry out his duties in conformity with state law." *Hillis Motors Inc. v. Hawaii Automobile Dealers' Association*, 997 F.2d 581, 593 (9th Cir. 1993). Section 959(b) has consistently been read to apply to both federal and state laws; it "requires a debtor to conform with applicable federal, state, and local law in conducting its business". *Norris Square Civic Ass'n v. St. Mary Hosp. (In re St. Mary Hosp.)*, 86 B.R. 393, 398 (E.D. Pa. 1988); *see also In re Wengert Transportation, Inc.*, 59 B.R. 226, 231 (N.D. Iowa 1986). This proposition is incontrovertible as a fundamental part of Chapter 11 bankruptcy law.

Section 959(a) of the United States Code complements the congressional command of Section 959(b) by establishing a remedy if a debtor in possession violates applicable nonbankruptcy law while operating its business. 28 U.S.C. § 959(a).[2] Thus, "it makes sense that when a trustee or debtor in possession operates a bankruptcy estate, compliance with state law should be considered an administrative expense." *In re N.P. Min. Co., Inc.*, 963 F.2d 1449, 1458 (11th Cir. 1992); *see also Cumberland Farms, Inc. v. Florida Dep't of Envtl. Prot.*, 116 F.3d 16, 20 (1st Cir. 1997) ("[P]ayment of a fine for failing, during bankruptcy, to meet the requirements of … environmental protection laws is a cost 'ordinarily incident to operation of a business' in light of today's extensive environmental regulations".).

**b.    Damages from the Debtor's Post-Petition Torts are Entitled to Administrative Expense Priority**

Section 507(a)(1) of the Bankruptcy Code, provides that administrative expenses allowed under Section 503(b) of the Bankruptcy Code have first priority in distribution and payment. Section 503(b) of the Bankruptcy Code provides, in relevant part, that "[a]fter notice and hearing, there shall be allowed, administrative expenses, other than claims allowed under 502(f) of this title, including— (1)(A) the

---

[2] Section 959(a) provides: "Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury." 28 U.S.C. § 959(a).

actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b).

Following Supreme Court precedent, the Ninth Circuit has ruled "[i]n addition to those kinds of 'standard' administrative expenses, *tort claims based on a trustee's post-petition negligence are granted administrative-expense priority*." *Kadjevich v. Kadjevich (In re Kadjevich)*, 220 F.3d 1016, 1019 (9th Cir. 2000) (emphasis added) (citing *Reading Co. v. Brown*, 391 U.S. 471 (1968)). "Such claims are deemed 'ordinarily incident to [the] operation of a business,' and are granted priority status so that the victims of a reorganizing business' torts will be compensated ahead of the creditors who sought reorganization." *Kadjevich*, 220 F.3d at 1019 (quoting *Reading*, 391 U.S. at 483). Accordingly, courts "have granted requests for administrative expense claims arising from a variety of tort actions." *In re Philadelphia Newspapers, LLC*, 690 F.3d 161, 173 (3d Cir. 2012), *as corrected* (Oct. 25, 2012); *see, e.g., Reading Co.*, 391 U.S. at 477 (negligence); *In re B. Cohen & Sons Caterers, Inc.*, 143 B.R. 27 (E.D. Pa. 1992) (negligence); *In re Women First Healthcare, Inc.*, 332 B.R. 115 (Bankr. D. Del. 2005) (negligent misrepresentation); *In re Hayes Lemmerz Int'l, Inc.*, 340 B.R. 461 (Bankr. D. Del. 2006) (property damage); *In re Enron Corp.*, 2003 WL 1562201 at 4 (Bankr. S.D.N.Y. 2003) (post-petition conversion is a type of tort covered under *Reading*); *Elsom v. Woodward & Lothrop Inc.*, 1997 WL 476091 at 3-4, (E.D. Pa. 1997) (granting administrative claims for torts committed post-petition by the DIP and for its violation of the Fair Debt Collection Practices Act); *c.f. UAL Corp.*, 297 B.R. 710, 720 (Bankr. N.D. Ill. 2003) (noting that injury, caused by the tortious misrepresentation of a DIP could give rise to an administrative claim if the creditor suffered damages).

In *Reading*, the Supreme Court recognized that a debtor in possession's post-petition liability for post-petition tort claims is an exception to the requirement that an administrative claimant show that the expense directly benefitted the estate. *Reading*, 391 U.S. at 482-83. Analyzing the rational for the *Reading* holding's exception to the requirement that an administrative claimant show that the expense directly and substantially benefitted the estate, the Bankruptcy Court for the Northern District of California followed the Supreme Court's precedent and explained that:

> Although the damage claim did not "benefit" or "preserve" the estate, the Court looked to equitable principles of "fairness to all persons having claims against the insolvent" and concluded that where a trustee operates a business for the benefit of the creditors, but ends up injuring others, the innocent third parties are entitled to recover their damages ahead of those for whose benefit the business was being operated. . . . In other words, the

Court found that principles of fundamental fairness dictate that the injuries caused by a trustee's post-petition wrongful conduct should be deemed an actual and necessary cost of "preserving" the estate despite the absence of any actual benefit to the estate.

*In re ComUnity Lending, Inc.*, 2010 WL 596445, at *6 (Bankr. N.D. Cal. Feb. 16, 2010) (citing *Reading*, 391 U.S. at 482-83).

Here, the Debtor's negligent and/or fraudulent misrepresentations were made post-petition in connection with a Court-approved sale process. This situation is analogous to the *In re Women First Healthcare* case where the court granted a stalking horse bidder's claim for tort damages arising from the debtor's negligent misrepresentation of the propriety of service of the underlying sale motion. *In re Women First Healthcare, Inc.,* 332 B.R. 115 (Bankr. D. Del. 2005). In *Women First,* the debtor conducted a court-approved sale process naming Sun Pharmaceuticals Industries, Ltd. ("Sun Pharmaceuticals") as the stalking horse bidder and granted a break-up fee of $50,000 and an expense reimbursement of $32,500. *Id*. at 118. The sale motion contained representations that notice of the sale process was proper under the bid procedures order. *Id*. at 124.

Subsequently, the sale was rescinded because of improper notice and a new auction was held. *Id*. at 119. At the new auction, a different party was the successful bidder and Sun Pharmaceuticals asserted a claim seeking payment of the break-up fee, the expense reimbursement and a post-petition administrative claim for reliance damages based on the Debtor's negligent misrepresentation of appropriate service. *Id*. at 118. Various parties objected asserting that Sun Pharmaceutical was required to demonstrate a benefit to the estate in order to recover.

Overruling the objections, the court granted the Sun Pharmaceutical's requests for recovery of the break-up fee, expense reimbursement and the post-petition administrative claim for reliance damages. *Id*. In granting the claim for administrative priority for reliance damages under *Reading*, the court began its analysis noting that "[c]ourts have applied *Reading* even where there is no discernible benefit to the debtor estate if fundamental fairness requires that the claimant's right take precedence over others." *Id*. at 123 (quotations omitted). The court then found that, based upon the Debtor's negligent misrepresentation to Sun Pharmaceuticals regarding adequate service of the debtor's sale procedures motion, the debtor's conduct constituted a post-petition tort. *Id*. at 123. Having found that

Sun Pharmaceuticals had relied on misrepresentations of the debtor with regard to the sale procedures motion, the court held that "[f]undamental fairness mandates that [the bidder] be compensated for that." *Id*.

Like Sun Pharmaceuticals, Blue Wolf relied on the Debtor's negligent and/or fraudulent misrepresentations concerning its authority to conduct the sale process and enter into the Blue Wolf LOI, the Bid Procedures Order, and the Blue Wolf APA. Accordingly, under *Reading*, fundamental fairness dictates that Blue Wolf is likewise entitled to recovery of its actual costs and expenses incurred as an administrative damage claim without the need to prove that such costs and expenses conferred a benefit to the estate.

**2. The Debtor Committed the Tort of Negligent Misrepresentation**

Arizona recognizes that the tort of misrepresentation "is committed by the giving of false information intended for the guidance of others and justifiably relied upon by them causing damages if the giver of the false information fails to exercise reasonable care or competence in obtaining or communicating the information." *St. Joseph's Hosp. and Medical Ctr. v. Reserve Life Ins. Co.*, 742 P.2d 808, 813 (Ariz. 1987) (internal quotes and citation omitted). Further, a failure to disclose a fact may serve as a misrepresentation where such failure to disclose "renders an existing statement of fact false or misleading." *Allstate Life Ins. Co. v. Robert W. Baird & Co.*, 756 F. Supp. 2d 1113, 1167 (D. Ariz. Nov. 3, 2010) (citation omitted); *see also* REST. OF TORTS § 551 ("One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.").

Under Arizona law, the elements of negligent misrepresentation are: (1) the defendant provided false information in a business transaction; (2) the defendant intended for the plaintiff to rely on the incorrect information or knew that it reasonably would rely; (3) the defendant failed to exercise reasonable care in obtaining or communicating the information; (4) the plaintiff justifiably relied on the incorrect information; and (5) resulting damage. See *Mur-Ray Mgmt. Corp. v. Founders Title Co.*, 819 P.2d 1003, 1008-09 (Ariz. Ct. App. 1991). Further a "claim for relief for negligent misrepresentation is

one governed by the principles of the law of negligence." *KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 236 Ariz. 326, 332-33 (Ariz. Ct. App. 2014) (internal quotes and citation omitted). "Thus, there must be 'a duty owed and a breach of that duty,' before one may be charged with the negligent violation of that duty.'" *Id.* (quoting *Van Buren v. Pima Cmty. Coll. Dist. Bd.* 546 P.2d 821, 823 (Ariz. 1976) (citation omitted)).

      a.      **The Debtor had a Duty to Provide Correct Information with Respect to the Sale Process and its Representations to Blue Wolf**

Throughout the entirety of the sale process, the Debtor had a duty, under both Arizona and bankruptcy law, to be honest and provide full, timely, and accurate representations to Blue Wolf.  In Arizona, the duty of care owed to the foreseeable user in supplying information for use in commercial transactions is a relative standard, "defined only in terms of the use to which the information will be put, weighed against the magnitude and probability of loss that might attend that use if the information proves to be incorrect." *St. Joseph's Hosp. & Med. Ctr. v. Reserve Life Ins. Co.,* 154 Ariz. 307, 313, 742 P.2d 808, 814 (1987) (citation omitted).

As a debtor in possession, the Debtor also acts as a trustee and as a fiduciary of the estate. Its representatives are also fiduciaries and officers of the Bankruptcy Court.  *See* 11 U.S.C. §§ 1101, 1107 and 1106; Exh. 25 (Sale Objection Reply, pg. 17) (quoting *In re Count Liberty, LLC*, 370 B.R. 259, 275-276 (Bankr. C.D. Calif. 2007) (citing *Thompson v. Margen (In re McConville),* 110 F.3d 47, 50 (9th Cir.1997) *cert. denied,* 522 U.S. 966, 118 S.Ct. 412, 139 L.Ed.2d 315 (1997); *Woodson v. Fireman's Fund Ins. Co. (In re Woodson),* 839 F.2d 610, 614 (9th Cir.1988); and *Devers v. Bank of Sheridan, Montana (In re Devers),* 759 F.2d 751, 754 (9th Cir.1985)). Moreover, "[w]hen the debtor is a corporation, the debtor in possession's fiduciary obligations to the corporation, its creditors and shareholders, fall upon the officers and directors." *Count Liberty,* 370 B.R. at 275-76 (citing *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355 (1985).

The Debtor, as a limited liability company, acted through its representatives. As fiduciaries of the estate and officers of the court, the Debtor's representatives had a duty to make "open, honest and straightforward disclosure to the Court and creditors." *In re Marvel Entm't Group, Inc.*, 140 F.3d 463, 474 (3d Cir. 1998) (punctuation and citation omitted). In addition, the Ninth Circuit has recognized a

debtor in possession's officers and directors – here Dr. Johns and Mr. Doloresco – as well as the Debtor's counsel are "officers of the court." *Gumport v. China International Trust and Investment Corp. (In re Intermagnetics America, Inc.)*, 926 F.2d 912, 917 (9th Cir. 1991) ("Officers of a debtor-in-possession are officers of the court because of their responsibility to act in the best interests of the estate as a whole and the accompanying fiduciary duties."). As officers of the court, the Debtor's representatives had a duty of transparency to the Court and all parties to the case. *See In re Davis*, 2007 Bankr. LEXIS 1514, at *20 (Bankr. N.D. Ala. Apr. 25, 2007) ("The protections of the Bankruptcy Code carry with them the duty of transparency…. Disclosure is the foundation stone for all. Courts have applied various remedies, some of them drastic, when disclosure problems are proven."). The Debtor therefore had an unambiguous duty to proceed truthfully and honestly with regard to the sale process. The Debtor, as a debtor in possession acting through its representatives, did not comply with these duties.

> **b.** **The Debtor Provided False Information in a Business Transaction**

Notwithstanding the Debtor's duty to provide voluntary, full, and correct information to Blue Wolf and the Court under Arizona and federal law, the undisputed facts in this case demonstrate that the Debtor hid the truth of the situation and misrepresented to Blue Wolf and the Court that the Debtor had the requisite corporate authority to pursue the Blue Wolf transaction. Specifically, the Debtor made the following representations to Blue Wolf (and the Court) that were incorrect:

***The Blue Wolf LOI***. On September 24, 2014, Art Doloresco, in his capacity as CEO of the Debtor, executed the Blue Wolf LOI. PTS, pg. 4, lns 4-14; Exh. 7. By virtue of his signature on the Blue Wolf LOI, the Debtor's CEO represented to Blue Wolf that the Debtor was in agreement on the broad terms of Blue Wolf's acquisition of the Debtor's operating assets. Indeed, as admitted by the Debtor, the "Debtor agreed to and accepted the terms of Blue Wolf's offer as an acceptable opening bid to be the stalking horse bidder." PTS, pg. 4, lns 12-14. Despite this representation, the Debtor never even provided a copy of the Blue Wolf LOI to its Manager for consideration and approval. Exh. 169 (Dr. Johns Deposition Transcript, pg. 39; lns 7-16). Nor did Dr. Johns ever authorize entry by the Debtor into the same. PTS, pg. 7-8.

As such, the entry into the Blue Wolf LOI misrepresented the Debtor's agreement to the terms of

9

the Blue Wolf LOI because the execution of the Blue Wolf LOI by the Debtor's CEO and agreement to its terms was never authorized by Dr. Johns.  There could not be a true and honest representation made to Blue Wolf and the Court of a prudent exercise of the Debtor' business judgment when the Debtor's sole manager was never even presented with the terms of the Blue Wolf acquisition.

*The Bid Procedures Order.* On September 25, 2015, the Debtor filed the Blue Wolf Notice with the Court. PTS, pg. 4; Exh. 8. At the hearings on October 2 and 6, the Debtor sought to have Blue Wolf approved as the stalking horse bidder and negotiated the terms of the Bid Procedure Order with Blue Wolf and all other significant parties to the case. The Bid Procedures Order was the entered by the Court pursuant to the relief requested in the Debtor's Sale Motion which provides, "under the 'business judgment rule,' there is a presumption that, where the *debtor's appropriate governing authority* implements and follows fair procedures in making a decision, it acts in good faith and for a *rational business purpose*." Exh. 6, Sale Motion, at pg. 25 lines 8-11 (citing *In re S.N.A. Nut Co.*, 186 B.R. 98, 102 (Bankr. N.D. Ill. 1995) (emphasis added)). The Sale Motion asserts that the business judgment standard has been met here based on what "the Debtor has prudently concluded." Upon obtaining Blue Wolf's agreement to the terms of the Bid Procedures Order, it was entered by the Court on October 17, 2014.

Paragraph 5 of the Bid Procedures Order, provides that "Blue Wolf is approved and designated as the Stalking Horse Bidder pursuant to the terms of the Blue Wolf LOI." Exh. 9. Bid Procedures Order, ¶ 5.

Notwithstanding each of these representations, the Debtor did not obtain corporate authorization for the filing of the Sale Motion, the Blue Wolf LOI or the Blue Wolf Notice. Exh. 10, Position Statement.  As set forth in the Position Statement to this Court by Dr. Johns, Dr. John's was never authorized or approved the Sale Motion or the Blue Wolf APA. PTS, pg. 8 lns. 8-10; *see also* Exh. 10.

*The Blue Wolf APA.*  After completing its confirmatory due diligence, Blue Wolf advised the Debtor that its due diligence review was acceptable and that Blue Wolf intended to proceed to buy the Debtor's assets. Pursuant to the requirements of paragraph 8 of the Bid Procedures Order, Debtor and Blue Wolf executed and entered into the Blue Wolf APA.

HOU 408796983v6

Like the form of APA filed by the Debtor on September 25, 2014,[3] in Section 5 of the Blue Wolf APA, the Debtor represented and warranted that:

- "Subject to final approval by the Bankruptcy Court pursuant to the Sale Order, *Seller has the full right, power and authority to enter into this Agreement* and the Related Agreements, as applicable, and to consummate the Transactions;"

- "Seller has duly executed and delivered this Agreement, and *this Agreement constitutes a legal, valid and binding obligation of Seller, enforceable against it in accordance with its terms*;" and

- "Subject to final approval by the Bankruptcy Court pursuant to the Sale Order, the execution, delivery and performance of this Agreement and the Related Agreement by Seller . . . *do not and will not violate, conflict with or result in the breach of any provision of Seller's article of organization or limited liability company agreement.*"

Exh. 32 (Blue Wolf APA, §§ 5.1-5.3 (emphasis added)).

Each of the forgoing representations by the Debtor was false. Dr. Johns did not approve the Blue Wolf APA. Ex 10 (Position Statement). Instead, the terms of the Blue Wolf acquisition, the Blue Wolf LOI and Blue Wolf APA were never even presented to the manager for approval.  Had the Debtor, through its representatives, made honest, full and timely disclosure of these facts and circumstances, Blue Wolf would have not pursued the transaction or incurred the damages now sought.

***Separately, Dr. Johns' Silence throughout the Process was a Misrepresentation by Omission that caused damage to Blue Wolf.***  As set forth in his declaration, Dr. John's *never* approved the Sale Motion, the Blue Wolf LOI, the Blue Wolf APA or any action taken by the Debtor in connection therewith.  PTS, pg. 10.  Notwithstanding this lack of approval, Dr. Johns, with full knowledge of the prosecution of the Blue Wolf acquisition by the Debtor's representatives, did not make a timely objection and took no timely action to inform Blue Wolf or the Court that such actions were unauthorized until he filed his Position Statement on December 12, 2014. Dr. Johns had full knowledge of the course being taken by the Debtor through its representatives as Dr. Johns:

- attended a meeting on April 23, 2014 with Blue Wolf at the Debtor's hospital to discuss Blue Wolf's possible interest in the Debtor and due diligence in connection with Blue

---

[3] *See* Exh. 8 (Initial Notice of Filing of Blue Wolf Letter of Intent, Proposed Asset Purchase Agreement, and Bid Procedures Order (Dkt No. 594)

HOU 408796683v6

Wolf's anticipated offer to purchase the hospital. Exh. 25 (*Debtor's Response*, pg. 10-11).

- received notice of all pleadings and hearings and was represented by Counsel. PTS, pg. 18.

- appeared at the October 6, 2014 Bid Procedures Hearing. PTS at 18; Exh 88 (Minute Entry of 10-6-14 Hearing).

Notwithstanding the myriad of opportunities to stop the masquerade, Dr. Johns did not inform any party—including Blue Wolf and the Court—the Debtor's CEO and Counsel were taking unauthorized positions with parties and the Court.

***The Sale Objection Reply.*** Finally, after Dr. Johns stated that he had not authorized the Blue Wolf transaction, the Debtor's representatives "doubled-down" on the misrepresentations to Blue Wolf and the Court by filing the Sale Objection Reply arguing that the Debtor did in fact have the corporate authority to proceed with the Blue Wolf Transaction. Exh. 88 (Response). In this process, counsel for the Debtor argued Blue Wolf and the Court that the authority issue was really just a negotiation tactic and would be withdrawn upon Blue Wolf taking further actions to resolve its conditions to closing, primarily for Blue Wolf to reach an agreement with MPT. *See* Exh. 70 (Miller 1-16-15 Email attaching Rudd Email, pg. 2). However, Dr. Johns, through his counsel, had specifically instructed Debtor's counsel that the negotiations between MPT and Blue Wolf would not resolve the authority issue and that making such representations to the Court was misleading the Court. *See* Exh. 79 (2-9-15 Hendricks and Rudd Emails re MPT Statement and Authority Issue, pg. 1).

Each of the forgoing representations were patently false because Dr. Johns—either under the Operating Agreement or the default Rules of the Arizona's Limited Liability Company Act ("Act")—was the sole manager of the Debtor. As such, he alone had the corporate authority of the Debtor and he did not authorize any of the actions being taken by the Debtor.

It is well-established that, absent an order of the court—such as the appointment of a trustee—the same principles of corporate governance that applied prior to a chapter 11 bankruptcy case in which the debtor remains in possession continue to apply after the petition date. *See Johns-Manville Corp. v. The Equity Security Holders Comm. (In re Johns-Manville Corp.)*, 801 F.2d 60 (2d Cir. 1986) ("The law

12

HOU 408796983v6

of this circuit directs that the shareholders' natural wish to participate in this matter of corporate governance be respected.") (citation omitted); *Fogel v. U.S. Energy Svs., Inc.*, 2008 WL 151857, at *1 (Del. Ch. Jan. 15, 2008) ("[T]his Court, the Delaware Supreme Court, and federal bankruptcy courts have held that corporate governance does not cease when a company files a petition under Chapter 11 and that issues of corporate governance are best left to the courts of the state of incorporation."); *In re mpX Technology, Inc.*, 310 B.R. 453, 454 (Bankr. M.D. Fla. 2004) ("The resolution of disputes involving corporate governance is generally not within the competence and jurisdiction of a Bankruptcy Court even if the corporation is a debtor under Chapter 11 of the Bankruptcy Code.") (citations omitted); *In re Marvel Entertainment Group*, 209 B.R. 832 (D. Del. 1997) (holding that the Code's automatic stay was not implicated by the exercise of shareholders' corporate governance rights).

Here, the Debtor is an Arizona limited liability company. Pursuant to the Act, members of a limited liability company may adopt an operating agreement to govern "relations among the members and the managers and between the members and managers and the limited liability company," including "the rights, duties or powers of its members, managers, officers, employees or agents." A.R.S. § 29-682(A).

Alternatively, in the absence of an operating agreement, the Act provides a set of default rules for governance of a limited liability company formed in Arizona. Under the Act's default rules, a limited liability company's management responsibilities vest in a manager if so designated in the company's articles of organization. A.R.S. § 29-681(B).[4]

Since its inception, the Debtor's sole manager has been Dr. Timothy A. Johns. *See* PTS, pg. 2; Exh. 81 (Articles). FHA Articles of Organization filed with the Arizona Corporation Commission on November 21, 2007 ("Articles"); Exh. 81 (Articles). FAH Operating Agreement dated June 20, 2008, as amended on April 1, 2011 ("Operating Agreement").

Under the Debtor's Operating Agreement or Articles of Formation, and absent the appointment of a trustee by this Court, only the manger (Dr. Johns), is vested with the approval power to authorize

---

[4] Section 29-681(B) provides: "If the *articles of organization* provide that management of the limited liability company is vested in one or more managers, management of the limited liability company *is vested in a manager or managers*, subject to any provisions in an operating agreement restricting or enlarging the management rights or responsibilities of one or more managers or classes of managers or reserving specified management rights to the members or classes of members. …" A.R.S. § 29-681(B) (emphasis added).

HOU 408796683v6

the Debtor to sell, exchange, or otherwise dispose of all or substantially all of the Company's assets. *See* Exh. 1, 125; Op. Agt. § 5.3(B). Further, to the extent the Operating Agreement does not control, the Act's default rules lead to the same result. *See* A.R.S. 29-681. Because the Debtor's Articles identify Dr. Johns as its sole manager, the default rules require that only Dr. Johns, as the manager, has authority to sell the assets of this manager-managed limited liability company. Debtor.

Consequently, Dr. Johns' consent, as the sole manager under the Operating Agreement and the Articles, was required to pursue to any of the forgoing actions. Therefore, because the Debtor's representatives did not seek consent for the Blue Wolf terms and Dr. Johns did not provide his consent to the Blue Wolf terms, each of the Debtor's representations to Blue Wolf and the Court regarding the same were false and Dr. Johns' silence was a material omission.

### c. The Debtor Intended for Blue Wolf to Rely on the False Representations

The entire purpose of the sale process was to induce Blue Wolf (and other bidders) to conduct diligence and acquire the Debtor's assets. As admitted in the Sale Motion, the Debtor knew that any bidder would be required to engage in significant diligence. Exh. 6 (Sale Motion pg. 23) ("Because of the complexity of the Debtor's business operations, debt and lease structure, revenue cycle and account receivable status, and regulatory oversight, *it is necessary for the Stalking Horse Bidder to engage in significant due diligence in connection with its decision to proceed with a purchase.*") (emphasis added).

Further, the Blue Wolf LOI was entered into for the purpose of evidencing the Debtor's acceptance of the broad terms of Blue Wolf's bid to induce Blue Wolf to conduct further diligence and pursue the acquisition. Indeed, the Blue Wolf LOI provided for the following:

> Blue Wolf's confirmatory due diligence review will include but not be limited to: completing a Quality of Earnings review of the Company's historical financials; reviewing all contracts, assets and liabilities among other standard legal due diligence; regulatory review of the Company's industry and markets; confirming the cost of an insurance and benefits programs for the Company; and conducting confirmatory conversations with customers and management. …
>
> a. Blue Wolf will seek to understand or confirm the following (without limitation):
>
> b. Recurring earnings, excluding the impact of non-recurring and/or extraordinary items;
>
> c. Volume trends, quality trends, sources of patients, and referral relationships;

14

d. Key performance indicators used to manage the Company and the impact of each on performance;

e. The Company's reimbursement environment and payor mix, including any contracts in place;

f. The quality of the Company's accounts receivable, including reserves in place;

g. The Company's recent history of, and near-term projections for, required capital expenditures;

h. The financial impact of and capital required to execute on management's strategic initiatives;

i. The competitive landscape in which the Company operates;

j. All material contracts and key third-party relationships;

k. The services historically, currently, and prospectively provided by Gilbert Hospital, and the terms on which those services have been and will be provided;

l. Any threatened or pending litigation;

m. Transferability of licenses, contracts and approvals required to operate the Company;

n. The assets being acquired; and

o. The liabilities being assumed.

*Id.* at pg. 5.

Finally, the Blue Wolf LOI clearly explained that a significant diligence team of professionals (in addition to Blue Wolf's internal staff) would be retained by Blue Wolf consisting of: "a quality of earnings accounting review conducted by a team from Cohn Reznik, or a similar firm; a regulatory and compliance review; a legal review led by Haynes & Boone, or a similar firm; a systems review led by West Monroe or a similar firm; an insurance and benefits review by Corporate Risk Solutions, LLC or a similar firm and a review, physical inspection and evaluation of physical assets by other professionals engaged by Blue Wolf." *Id.* at 12.

The Debtor's intent to induce Blue Wolf to rely on its misrepresentations is confirmed by the structure of the Bid Procedures Order which provided that: "[Blue Wolf's] due diligence period shall end on December 4, 2014" and "[i]f Blue Wolf proceeds with the purchase of the Debtor's assets, the

HOU 408796983v6

Debtor shall file an executed Asset Purchase Agreement, with all exhibits, on or before December 5, 2014." Exh. 9 (Bid Procedures Order, ¶¶ 8, 19).

Finally, through the Debtor's Sale Objection Reply and subsequent statements to the Court, the Debtor intended that Blue Wolf continue expending funds to negotiate resolutions of issues with MPT. *See* Exh. 183 (01-16-15 Rudd to Parkins E-Mail) (Mr. Rudd stating "As we discussed yesterday and this morning, an absolute prerequisite for Florence Hospital at Anthem to proceed with a sale of its assets to Blue Wolf (or its nominee) is for Blue Wolf to reach an agreement with MPT with respect to the Debtor's assignment of MPT's lease to Blue Wolf. … In fact, such an agreement could very well help resolve the "authority issue" with Dr. Johns."). As described above, however, the MPT issue was unrelated to corporate authority issue. *See* Exh. 79 (2-9-15 Hendricks and Rudd Emails re MPT Statement and Authority Issue, pg. 1) (Mr. Hendricks stating to Mr. Rudd: "[j]ust so there is no confusion, let me make this clear. From Dr. Johns' perspective, the key to the authority issue is not MPT.").

As such, the Debtor's representatives knew and intended that Blue Wolf would reasonably rely on the assertion that the Debtor had the requisite corporate to submit its pleadings and enter into the Blue Wolf LOI, the Bid Procedures and the Blue Wolf APA.

### d.    The Debtor Failed to Exercise Reasonable Care in Making the Misrepresentations to Blue Wolf

The Debtor failed to exercise reasonable care in making its representations to Blue Wolf because it did not disclose that it did not obtain (or even seek) the approval of the manager or members of the Debtor of the Blue Wolf transaction. Prior to filing pleadings with the Court, Rule 11 requires a party is to make reasonable inquiry into whether factual contentions have evidentiary support, examining all available documents that are relevant to the pleading before filing, and check any available public records to verify facts.

Here, the Debtor filed multiple pleadings, orders and agreements with the Court without even showing or discussing the pleadings with the Debtor's sole manager – much less obtaining his approval. Indeed, the evidence will prove that for many months before signing the Blue Wolf LOI, the Debtor's CEO was not communicating at all with Dr. Johns about the sale process, the bankruptcy case generally,

the operation of the hospital or the specific Blue Wolf terms in particular embodied in the Blue Wolf LOI which the CEO signed on behalf of the Debtor. The evidence will further show that the specific Blue Wolf terms were not presented to Dr. Johns by counsel for the Debtor for consideration and approval prior to Debtor signing the Blue Wolf LOI and prosecuting the Sale Motion. During Blue Wolf's months of diligence and negotiation, none of these material facts were disclosed to Blue Wolf or the Court. These omissions were material. The disclosures actually made were not made with reasonable care, and since these individuals were fiduciaries and officers of the court, the representations made and omissions verge on reckless conduct. The Debtor, through its representatives, failed to fulfill its legally obligated duties prior to filing the misrepresentations with the Court or making them to Blue Wolf. As such, the Debtor failed to exercise reasonable care in making the misrepresentations to Blue Wolf.

**e.    Blue Wolf Justifiably Relied on the False Information**

Blue Wolf was justified on relying on the representations made by the Debtor's representatives because, under Arizona and bankruptcy law, the representatives had an absolute duty to deal honestly and openly with Blue Wolf. Blue Wolf was justified in relying on the Debtor's representations because the Debtor was mandated to make honest and full disclosure to Blue Wolf, the Court and Creditors as follows:

- the Debtor made such representations in a signed pleading filed under Federal Rule of Bankruptcy Procedure 9011, which requires a party to make reasonable efforts to investigate the facts contained therein;
- the Debtor was a debtor in possession charged with the duties of a trustee, which include investigation of any matter relevant to the case; and
- the Debtor's representatives were fiduciaries and officers of the court and therefore obligated to provide voluntary and honest disclosure of material information.

Based on these duties, it was reasonable for Blue Wolf and the Court to expect that fiduciaries be truthful would and it was reasonable for Blue Wolf and the Court to rely on the statements and representations of the Debtor under these circumstances.

### f. Blue Wolf was Damaged from the Debtor's Conduct in Providing the False Information

In reliance on the Debtor's affirmative representations of authority and the silence and omissions with respect to the Debtor's failure to obtain authority under the Debtor's corporate governance documents and applicable law, Blue Wolf expended hundreds of thousands of dollars in diligence costs. These costs were incurred, *inter alia*, to comply with the terms of the Bid Procedures Order to negotiate, document and diligence the Blue Wolf APA for a transaction and process that was never authorized by the Debtor.

As set forth in the Blue Wolf Administrative Claim, Blue Wolf incurred $693,157 in costs in diligence and negotiations relating to the proposed transaction. These costs solely represent Blue Wolf's out-of-pocket costs. They do not include the internal costs of the Blue Wolf team assigned to the project or the lost opportunity costs incurred by Blue Wolf.

As such, the Debtor is liable to Blue Wolf for its costs in pursuing the transaction.

### 3. The Debtor Committed the Tort of Fraudulent Misrepresentation Under Arizona Law Against Blue Wolf

Under Arizona law, the elements of fraud are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the right to rely on it; (9) his consequent and proximate injury. *Echols v. Beauty Built Homes*, 647 P.2d 629, 631 (Ariz. 1982) (citing *Nielson v. Flashberg*, 419 P.2d 514 (Ariz. 1966)).

As shown above, the Debtor made (1) representations or non-disclosures: (2) that were false; (5) that the Debtor intended Blue Wolf to act on; (6) that Blue Wolf did not know were false; (7) that Blue Wolf did rely on; (8) that Blue Wolf had the right to rely on; and (9) that Blue Wolf was damaged.

The remaining required elements of proof are the materiality of the misrepresentation and the Debtor's knowledge of its falsity or ignorance of its truth.

"A misrepresentation is material if a reasonable person would attach importance to its existence or nonexistence in determining his or her choice of action in the transaction in question." *Sitton v.*

*Deutsche Bank Nat. Tr. Co.*, 311 P.3d 237, 243 (Ariz. Ct. App. 2013) (quoting *Caruthers v. Underhill*, 287 P.3d 807, 815 (Ariz. Ct. App. 2012) (internal citations and punctuation omitted)). "In other words, a misrepresentation is material to a person if she could reasonably rely on it." *Id.*

Here, the Debtor's corporate authority to agree to and prosecute the approval of the Blue Wolf transaction was undoubtedly material. Indeed, Blue Wolf (and presumably the Court) would not have engaged in the sale process if disclosures had been made of the fact that the Debtor had made no request for approval or consent of the Debtor's manger to the specific terms of the Blue Wolf bid and transaction. Further, had there been disclosure by the CEO or counsel that for months prior to and during the entire sale process, the CEO had stopped having any communications with Dr. Johns, including no dialogue whatsoever with respect to the sale of all Debtor's assets, the terms of the Blue Wolf bid, or the negotiation and execution of the Blue Wolf LOI, Blue Wolf (and presumably the Court) would not have engaged in the sale process or pursued the Blue Wolf acquisition. Blue Wolf reasonably relied on the representations made by the Debtor and attached importance to the representations, as corporate authority was always required for Blue Wolf to pursue the transaction. As such, the misrepresentations were material. Moreover, had full and honest disclosure been made by the Debtor's representatives of any or all of the foregoing material facts, such disclosure would have set off an alarm bell of material corporate governance impropriety and dysfunction within the Debtor that would have caused Blue Wolf to stop work and not incur the damages now requested.

With respect to the final element of a fraudulent representation claim, in determining the party's knowledge of the falsity of a representation courts examine if the party: (a) knows or believes that the matter is not as he represents it to be, (b) does not have the confidence in the accuracy of his representation that he states or implies, or (c) knows that he does not have the basis for his representation that he states or implies. *Glob. Collections Corp. v. Maxim Limousine Servs.*, LLC, No. 1 CA-CV 10-0426, 2011 WL 2119002, at *3 (Ariz. Ct. App. May 24, 2011) (citing REST. OF TORTS § 526 (1977)).

Here, the Debtor, through its representatives, fiduciaries of the estate, officers of the court, and as a sworn party making a filing under Federal Rule of Bankruptcy Procedure 9011, knowingly made the misrepresentations or hid the truth through omission and non-disclosure of material facts. They

simply did not tell the truth of what was going on with Dr. Johns.  The representations of authority when the CEO and counsel were not even disclosing the terms of the Blue Wolf transaction to the Debtor's manager demonstrate that the Debtor's representatives had no basis for the representation. Indeed, the evidence at the trial on this matter will confirm that the Debtor's CEO had ceased reporting to the manager in any capacity for months.  As such, the Debtor could not have had confidence in the accuracy of the representations made, and they knew they were hiding the truth.

Therefore, when combined with the elements proven above, the Debtor committed the tort of fraudulent misrepresentation under Arizona law against Blue Wolf, and therefore is liable to Blue Wolf for its damages as requested.

**4.     Blue Wolf is Entitled to Attorney's Fees for its Prosecution of Allowance of its Administrative Claim**

To the extent Blue Wolf prevails on the Blue Wolf Administrative Claim, Blue Wolf requests an award of attorney's fees under A.R.S. § 12-341.01(A).  Section 12-341.01(A) provides that, "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." *Id*. The purpose of an award under Section 12-341.01(A) is to "mitigate the burden of the expense of litigation to establish a just claim or a just defense." *Id*. at § 12-341.01(B). Fees awarded under the statute "need not equal or relate to the attorney fees actually paid or contracted, but … may not exceed the amount paid or agreed to be paid." *Id*.

For purposes of Section 12-341.01(A), the determination of whether a claim arises under contract requires courts to look to the "nature of the action and the surrounding circumstances," regardless of the form of the pleadings.  *Marcus v. Fox*, 723 P.2d 682, 684 (Ariz. 1986) (citation omitted). As such, Arizona courts have interpreted the words "arising out of a contract" to describe an action in which a contract was a primary factor in causing or defining the dispute, as opposed to a contract ancillary to the heart of the dispute. *Id*.; *Lamb v. Arizona Country Club*, 124 Ariz. 32, 601 P.2d 1068 (App. 1979) (prevailing party entitled to fees under statute even though action was styled as a suit to quiet title as opposed to an action on the contract).  Thus, as used in Section 12-341.01, the words "arising out of a contract" describe an action in which a contract was a factor causing the dispute.

In *Marcus v. Fox*, a party to a contract sued another party to a contract, alleging fraudulent

HOU 408796883v6

inducement. The Arizona Supreme Court held that where the validity of a contract was challenged on grounds of fraudulent inducement, the claim was one "arising out of contract" within the meaning of A.R.S. § 12-304.01(A). *Id*. at 684-85.

Like the facts and circumstances in *Marcus*, the Debtor's tortious misrepresentations and omissions to Blue Wolf were made during the negotiation of three separate *ad seriatim* agreements over a period of 6-7 months. First, during the negotiation and execution of the Blue Wolf LOI. Second, the representations continued during the negotiation of, and agreement to, the terms and agreements embodied in the Bid Procedures Order. Finally, the Debtor's tortious misrepresentations and omissions incident to the negotiation and execution by Blue Wolf of the Blue Wolf APA.

These misrepresentations and omissions would not exist but for the Debtor's negotiation and execution of the three interrelated agreements made in the progression of the Blue Wolf transaction. These tortious misrepresentations and omissions against Blue Wolf "arise out of the contract" because they could not exist "but for" the contracts and orders negotiated and agreed to by Blue Wolf. *See Hanley v. Pearson*, 61 P.3d 29, 33 (Ariz. Ct. App. 2003). As such, the "the essence of the action" demonstrates that Blue Wolf has an appropriate contract-based foundation for its claims. *See ASH, Inc. v. Mesa Unified School Dist. No. 4*, 673 P.2d 934, 937 (App. 1983).

Like the tortious fraudulent inducement approach of *Marcus*, "[w]hen the duty breached is one implied by law based on the relationship of the parties, that claim sounds fundamentally in tort, not contract. . . . The test is whether the defendant would have a duty of care under the circumstances even in the absence of a contract." *Ramsey Air Meds, L.L.C. v. Cutter Aviation, Inc.,* 6 P.3d 315, 321 (Ariz. Ct. App. 2000); *see also Assyia v. State Farm Mut. Auto. Ins. Co.*, 273 P.3d 668, 673 (Ariz Ct. App. 2012) ("An action sounds in tort when a 'mere bystander' could recover because the liability exists without a contract.") (citation omitted).

Here, Blue Wolf initiated this action for tort damages due to the misrepresentations of the Debtor inducing Blue Wolf to negotiate and execute the Blue Wolf LOI, the Bid Procedures Order, and the Blue Wolf APA. None of these claims could exist absent the underlying agreements. Each of these successive agreements was heavily negotiated and the Debtor's tortious misrepresentations and omissions relative to the three agreements constitute the foundation of this matter. Had the Debtor not

sought to induce Blue Wolf to negotiate and enter into the Blue Wolf LOI, Bid Procedures Order and Blue Wolf APA, the Debtor would have had no duty to be honest to Blue Wolf. Based on these contracts and the misrepresentations and omissions made by the Debtor incident to them, the Debtor owed a duty to Blue Wolf, which duty, sounding in tort, was breached. Accordingly, the foundation of Blue Wolf's tort claims arises under a contract for purposes of Section 12-341.01.

In exercising its discretion to award fees, the Court considers: (1) the merits of the unsuccessful party's claim or defense; (2) the chances that litigation could have been avoided or settled and whether the successful party's efforts were superfluous in achieving the result; (3) whether assessing fees against the unsuccessful party would cause an extreme hardship; (4) whether the successfully party prevailed with respect to all relief sought; (5) the novelty of the questions presented; and (6) whether a fee award would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues for fear of incurring liability for fees. *Associated Indem. Corp. v. Warner*, 694 P.2d 1181, 1184 (Ariz. 1985). Here, Blue Wolf asserts each of the factors weigh in favor of the award of Blue Wolf's full fees.

First, the Debtor has not proffered a justifiable defense to Blue Wolf's claims. Instead, the Debtor has attempted to evade the binding Supreme Court authority of *Reading* by casting Blue Wolf's claims as those of a party that was outbid at an auction. This is not true. It was not acceptable conduct for fiduciaries of a debtor in possession and officers of the court to not make timely full disclosure to Blue Wolf and the Court of material facts, including facial corporate governance dysfunction in the pursuit of the Blue Wolf transaction.

Second, it is Blue Wolf's position that while the Debtor should have avoided litigating these claims—especially in light of the fact that the Plan provided for the full payment of claims—the Debtor's litigation position required Blue Wolf to exert substantial efforts in prosecuting the claims including responding to the substantial discovery served by the Debtor. As such, Blue Wolf does not believe that its efforts were superfluous in achieving the result.

Third, assessing fees against the Debtor in this case would *not* cause an extreme hardship. The Debtor caused Blue Wolf to incur its damages through its tortious conduct and further contributed to the cost of litigation herein through substantial discovery and questionable litigation tactics. For example,

HOU 408796883v6

notwithstanding the Bar Date Notice in this case and the fact that the Adversary Rules were never applied, the Debtor filed its Rule 14 motion seeking to bring its prior law firm into the case as a defendant. These unnecessary tactics required Blue Wolf not only to respond, but to travel to Arizona for hearings on the matter.  In this regard, Blue Wolf notes that the Debtor has questioned the hourly rate of Blue Wolf's law firm.   Such criticism is unwarranted. The Debtor solicited Blue Wolf to purchase the Debtor's assets.  Blue Wolf is based in New York and routinely hires New York firms for both transactional and litigation matters. Blue Wolf should not be deprived of counsel of its choice in order to maintain an action for fees—especially when the Debtor caused the very damages Blue Wolf now seeks to recover through its manipulation of Blue Wolf through its repeated misrepresentations.

Fourth, Blue Wolf asserts that the legal and factual issues involved herein were both novel and fact intensive. Blue Wolf is unaware of any situation where a Debtor has engaged in the unbridled level of factual misrepresentations as it has witnessed in this case. These issues have required substantial legal review, research and factual development of the case.

Finally, Blue Wolf believes that the final factor—"whether a fee award would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues for fear of incurring liability for fees"—supports a fee award in the case.  The failure to award fees in this case to Blue Wolf would discourage parties from bringing claims to vindicate their rights in similar situations of post-petition fraud and negligent misrepresentation because the estate could simply make the case uneconomic, like here, by insisting on a trial of a matter in which (like most misrepresentation cases) is not susceptible to summary judgment.  Therefore, Blue Wolf asserts that the Court should grant its fee request in full, including the full costs of the trial on the merits of this contested matter.

**5.      The Court Should not Consider the Defenses that were not Included in the Debtor's Objection**

As described above, the Debtor has filed a single pleading where it asserted on objection to Blue Wolf's Administrative Claim—that the Claim does not provide a benefit to the estate. Exh. 15 (Objection). In the Pre-Trial Statement, however, the Debtor raised additional defenses a mere four (4) business days before the trial on this matter by asserting such issues were "contested issues of law" in the Pre-Trial Statement. These consist of:

- May Blue Wolf recover against the Debtor under theories of tort when it had entered into a contract with the Debtor?
  …

- If the Debtor is liable for negligent misrepresentation of its authority, to what extent is Blue Wolf contributorily negligent?

- If Blue Wolf was damaged by the Debtor's conduct, did that conduct constitute a breach of contract for which recovery is limited?

PTS, pg. 24.

Notwithstanding the fact that this matter has been pending for over 2 1/2 years, none of these defenses were asserted in the Debtor's Objection and no discovery was taken or could have been taken by Blue Wolf with respect to the defenses. In this regard, the Debtor was well aware of the fact that a bar date for objections to claims was set for January 29, 2016. *See* Dkt No. 1290 (Bar Date Notice for Blue Wolf Administrative Claim). The Bar Date Notice apprised all parties as to when defenses could be raised to claims asserted. As such, Blue Wolf asserts that the Court should refuse to consider these defenses.

As a general matter, parties are required to act promptly to assert affirmative defenses rather than "lie behind a log" and ambush a plaintiff with an unexpected defense. *Venters v. City of Delphi*, 123 F.3d 956, 967-68 (7th Cir. 1997); *see also* Fed. R. Civ. P 8(c) ("a party shall set forth affirmatively … *contributory negligence* … and any other matter constituting an avoidance or affirmative defense.") (emphasis added). More specifically, "a party, with limited exceptions, is required *to raise every defense* in its first responsive pleading, and defenses not so raised are deemed waived." *Morrison v. Mahoney*, 399 F.3d 1042, 1046 (9th Cir. 2005) (emphasis added).

In this regard, Bankruptcy Rule 3007(a) provides "[a]n objection to the allowance of a claim shall be in writing and filed." FED. R. BANKR. P. 3007(a). "A copy of the objection with notice of the hearing thereon shall be mailed or otherwise delivered to the claimant, the debtor or debtor in possession, and the trustee at least 30 days prior to the hearing." *Id.* Based on the requirements set forth in Rule 3007, the filing of an amended objection—as the Debtor has attempted to do through the insertion of new legal theories in the Pre-Trial Statement—has been denied. *In re Lawler*, 75 B.R. 979, 982 (Bankr. N.D. Tex. 1987) *aff'd*, 106 B.R. 943 (N.D. Tex. 1989) (denying amended objection to claim

24

HOU 408796883v6
Case 4:13-bk-03201-BMW    Doc 1574    Filed 09/26/17    Entered 09/26/17 12:11:21    Desc
Main Document    Page 24 of 29

filed shortly before the hearing based on the violation of Bankruptcy Rule 3007 notice provisions); *see also In re Ambassador Park Hotel. Ltd.*, 61 B.R. 792, 798 (N.D. Tex. 1986) (finding eight days' notice of a hearing on the debtor's objection to the creditor's claim was not adequate under Rule 3007); *In re Lomas Fin. Corp.*, 212 B.R. 46, 56 (Bankr. D. Del. 1997) (vacating order disallowing claim where, inter alia, debtor's notice of objection "fell substantially short of the 30-day period [required by Rule 3007] and therefore was not in compliance with the Rule"); *In re Owens*, 67 B.R. 418, 421-23 (Bankr. E.D. Pa. 1986) (order disallowing claim was reconsidered because, inter alia, the claim was disallowed less than 30 days following service of debtor's objection in violation of Rule 3007). As set forth in Collier, while the 30-day time period may be shortened, "the claimant should have an opportunity to be heard on notice of the defects in the claim." 9 Collier on Bankruptcy ¶ 3007.01 (16th Ed. 2016). Here, there is no reason for the Court to permit the debtor to assert new objections to the Blue Wolf Administrative Claim through the assertion of Contested Legal Issues in the Pre-Trial Statement. As such, the new objections should be denied.

Respectfully submitted this 26th day of September, 2017.

/s/*David D. Cleary*
David D. Cleary
GREENBERG TRAURIG, LLP
2375 East Camelback Road, Suite 700
Phoenix, AZ 85016
Telephone: 602-445-8000
Fax: 602-445-8100
Email: clearyd@gtlaw.com

Lenard Parkins (NY Bar No. 4579124) (*pro hac vice*)
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, NY 10166
Tel.: (212) 801-9200
Fax: (212) 801-6400
Email: parkinsl@gtlaw.com

and

HOU 408796883v6

1000 Louisiana, Suite 1700
Houston, TX 77002
Tel.: (713) 374-3500
Fax: (713) 374-3505
Email: parkinsl@gtlaw.com

and

Karl Burrer (TX Bar No. 24043584) *(pro hac vice)*
GREENBERG TRAURIG, LLP
1000 Louisiana, Suite 1700
Houston, TX 77002
Tel.: (713) 374-3500
Fax: (713) 374-3505
Email: burrerk@gtlaw.com

*Attorneys for Blue Wolf Capital Fund III, L.P.*

**CERTIFICATE OF SERVICE**

The foregoing document was e-filed
on September 26, 2017 with the
U.S. Bankruptcy Court and copies served
via e-mail the same day (or served via U.S.
First-Class Mail, as indicated hereon.)

| | | |
|---|---|---|
| Andre Carman<br>acarman@lawwmc.com | Hillary Barnes<br>hbarnes@allenbarneslaw.com | Edward Bernatavicius<br>edward.k.bernatavicius@usdoj.gov |
| Margaret Gillespie<br>mgillespie@maypotenza.com | Mark Chernoff<br>office@azfirm.net<br>mchernoff@azfirm.net | Bradley Gardner<br>bdg@udallshumway.com |
| Robert Harris<br>Lori Winkleman<br>robert.harris@quarles.com<br>lori.winkelman@quarles.com<br>Walter.ashbrook@quarles.com | Bryce Suzuki<br>Kyle Hirsch<br>bryce.suzuki@bryancave.com<br>kyle.hirsch@bryancave.com | Gerald Shelley<br>Nancy March<br>Anthony W. Austin<br>gshelley@fclaw.com<br>nmarch@fclaw.com<br>aaustin@fclaw.com |
| Patrick Howell<br>phowell@whdlaw.com | Ligee Gu<br>lgu@halperinlaw.net | Carolyn Johnsen<br>CJJohnsen@dickinsonwright.com |
| Chad Miesen<br>chad@carpenterhazelwood.com | Andrew Harnisch<br>andy@mhlawaz.com | Pernell McGuire<br>pmcguire@davismiles.com |
| Philip Rudd<br>Wesley Denton Ray<br>rudd@sacksstierney.com<br>wesley.ray@sacksstierney.com | Rob M. Charles, Jr.<br>Jeffrey L. Sklar<br>rcharles@lrlaw.com<br>jsklar@lrlaw.com | Thomas Salerno<br>Thomas.salerno@stinsonleonard.com |
| Clint Smith<br>staceywork@hotmail.com<br>st@cwspclaw.com | Benjamin Reeves<br>breeves@swlaw.com | Gary Ringler<br>garyvringler@earthlink.net |
| Rafael Zahralddin-Aravena<br>Shelley Kinsella<br>Cameron Fee<br>rxza@elliottgreenleaf.com<br>sak@elliottgreenleaf.com<br>cmf@elliottgreenleaf.com | William Fife<br>Daniel Greenberg<br>az@brinkmanlaw.com | Daren Brinkman<br>Laura Portillo<br>Kevin Ronk<br>daren@brinkmanlaw.com<br>az@brinkmanlaw.com<br>laura@brinkmanlaw.com<br>brinkmanlaw@ecf.inforuptcy.com |
| Kami Hoskins<br>khoskins@gordonrees.com | Teddy M. Kapur<br>smaizel@pszjlaw.com<br>tkapur@pszjlaw.com | Daniel E. Garrison<br>Jessica Kenney Bonteque<br>dan@andantelaw.com<br>jessica@andantelaw.com |
| Brian Weinberger<br>bkfilings@fhlawaz.com | Keith Hendricks<br>khendricks@law-msh.com | Jill Perrella<br>Jonathan Saffer<br>jperrella@swlaw.com<br>jmsaffer@swlaw.com |
| Jordan Kroop<br>jkroop@perkinscoie.com | Michael W. Carmel<br>michael@mcarmellaw.com | Dean Dinner<br>ddinner@ngdlaw.com |
| Bradley D. Weech<br>bweech@jacksonwhitelaw.com | Joshua Carden<br>joshua@cardenlawfirm.com | Donald Powell<br>d.powell@cplawfirm.com |
| Tamalyn E. Lewis<br>tel@eblawyers.com | William Fife<br>William@williamfifelaw.com | Robert T. Luttrell, III<br>Louis Price<br>bob.luttrell@mcafeetaft.com<br>louis.price@mcafeetaft.com |

27

HOU 408796983v6
Case 4:13-bk-03201-BMW    Doc 1574    Filed 09/26/17    Entered 09/26/17 12:11:21    Desc
Main Document    Page 27 of 29

| | | |
|---|---|---|
| Rick N. Bryson<br>G. Gregory Eagleburger<br>rick.bryson@sandersparks.com<br>Greg.Eagleburger@sandersparks.com | Brian J. Pollock<br>bpollock@lrlaw.com | Thomas O. Kolb Jr.<br>tkolb@bakerdonelson.com |
| Stacia A. Danielsen<br>sdanielson@sw-cpa.com | Robert M. Moss<br>rmoss@medicalpropertiestrust.com | Bryan A. Albue<br>balbue@shermanhoward.com |
| Thomas C. Axelsen<br>taxelsen@shermanhoward.com | Bruce J. Borrus<br>Joseph E. Shickich<br>bborrus@riddellwilliams.com<br>jshickich@riddellwilliams.com | Brian M. Blum<br>Fay Marie Waldo<br>brian@andantelaw.com<br>fay@andantelaw.com |
| Rob A. Justman<br>Kurt M. Zitzer<br>rjustman@meagher.com<br>kzitzer@meagher.com | Randy J. Aoyama<br>Michael R. Ayers<br>raoyama@hinshawlaw.com<br>mayers@hinshawlaw.com | Michael A. Jones<br>mjones@ambazlaw.com |
| Lawrence D. Hirsch<br>lhirsch@psazlaw.com | Adam D. Melton<br>amelton@l-llp.com | Sean O' Brien<br>spobrien@gustlaw.com |
| Nat Palaniappan<br>natpalaniappan@yahoo.com | Lori A. Lewis<br>LewisL01@mcao.maricopa.gov | Michael Bach<br>michaelb@dehaan-bach.com |
| Joseph Wm. Kruchek<br>Lisa Peters<br>joseph.kruchek@kutakrock.com<br>lisa.peters@kutakrock.com | Amanda Cartwright<br>amanda.cartwright@bryancave.com | Dean Waldt<br>Grant L. Cartwright<br>waldtd@ballardspahr.com<br>cartwrightg@ballardspahr.com |
| Brian Huben<br>Dustin Branch<br>Jessica Mickelsen<br>brian.huben@kattenlaw.com<br>dustin.branch@kattenlaw.com<br>jessica.mickelsen@kattenlaw.com | Warren J. Stapleton<br>wstapleton@omlaw.com | David Ira Weissman<br>dweissman@roselawgroup.com |
| Mark D. Svejda<br>mark@azrealestatelawyers.com | Marvin D. Mitchell<br>Mitch22@cox.net | Ivan Esteban<br>ivanestebanc@gmail.com |
| GE Healthcare<br>Gaurav Malik<br>Gaurav.Malik@ge.com | Lamar Advertising Company<br>Attn: Robert S. Bewick<br>bbewick@lamar.com | Anderson & Associates, Inc.<br>Attn: Roger Sompson<br>ras@andersonexecsearch.com |
| Insight Direct USA, Inc.<br>Attn: Michael Walker<br>Michael.walker@insight.com | Wesley Loy<br>wsl@bowwlaw.com | Joseph Corrigan<br>Bankruptcy2@ironmountain.com |
| Cynthia Switzer<br>Switzer.Cynthia@principal.com | Alysse M. Medina<br>Oliver J. Davis<br>amedina@maypotenza.com<br>odavis@maypotenza.com | Jennifer J. Axel<br>jaxel@polsinelli.com |
| Dale C. Schian<br>bkdocket@biz.law<br>dale@biz.law | Dale Danneman<br>DDanneman@lrrc.com | Rachel A. Smith<br>United Healthcare<br>rasmith@uhc.com |

**AND SENT BY FIRST-CLASS U.S. MAIL:**

| | | |
|---|---|---|
| Medical Properties Trust, Inc.<br>Robert M. Moss<br>1000 Urban Center Drive, Ste. 501<br>Birmingham, AL 35242 | Stryker Endoscopy<br>c/o Lori L. Purkey<br>Purkey & Associates, PLC<br>5050 Cascade Road, SE, Ste. A<br>Grand Rapids, MI 49546 | Stryker Orthopeadics<br>c/o Lori L. Purkey<br>Purkey & Associates, PLC<br>5050 Cascade Road, SE, Ste. A<br>Grand Rapids, MI 49546 |
| Pinal County Treasurer<br>P.O. Box 729<br>Florence, AZ 85132 | Marvin D. Mitchell<br>512 W. Claremont Ave.<br>Phoenix, AZ 85013 | |

By: _/s/ Ishmael Taylor-Kamara_

HOU 408796983v6